

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 2163 (PAC)

................................................

GENWORTH LIFE INSURANCE
COMPANY OF NEW YORK
f/k/a AMERICAN MAYFLOWER LIFE
INSURANCE COMPANY OF NEW
YORK

Case No.:

     Plaintiff,

v.



MICHELLE GLASSBERG
IRREVOCABLE TRUST, ANDREW
DAVID GLASSBERG IRREVOCABLE
TRUST, LAUREN DANA GLASSBERG
IRREVOCABLE TRUST, BRIAN L.
COOPER IRREVOCABLE TRUST, LOLA
LEIGH COOPER IRREVOCABLE
TRUST, CHLOE MARIELLE COOPER
IRREVOCABLE TRUST; LAWRENCE
COOPER GLASSBERG IRREVOCABLE
TRUST, DR. KENNETH I. GLASSBERG
IRREVOCABLE TRUST, KENNETH I.
GLASSBERG, M.D., in his capacity as the
Trustee of the MICHELLE GLASSBERG
IRREVOCABLE TRUST, ANDREW
DAVID GLASSBERG IRREVOCABLE
TRUST, LAUREN DANA GLASSBERG
IRREVOCABLE TRUST, BRIAN L.
COOPER IRREVOCABLE TRUST, LOLA
LEIGH COOPER IRREVOCABLE
TRUST, CHLOE MARIELLE COOPER
IRREVOCABLE TRUST; LAWRENCE
COOPER GLASSBERG IRREVOCABLE
TRUST, and DR. KENNETH I.
GLASSBERG IRREVOCABLE TRUST,
and U.S. BANK, N.A., AS SECURITIES
INTERMEDIARY,

**COMPLAINT FOR INTERPLEADER
AND INJUNCTIVE RELIEF**

     Defendants.



Plaintiff, Genworth Life Insurance Company of New York f/k/a American Mayflower Life Insurance Company of New York ("GLICNY"), alleges the following for its complaint for interpleader and related injunctive relief against defendants: Michelle Glassberg Irrevocable Trust, Andrew David Glassberg Irrevocable Trust, Lauren Dana Glassberg Irrevocable Trust, Brian L. Cooper Irrevocable Trust, Lola Leigh Cooper Irrevocable Trust, Chloe Marielle Cooper Irrevocable Trust; Lawrence Cooper Glassberg Irrevocable Trust, Dr. Kenneth I. Glassberg Irrevocable Trust (collectively, the "Trust Defendants"), Kenneth I. Glassberg, M.D., in his capacity as the Trustee of the Michelle Glassberg Irrevocable Trust, Andrew David Glassberg Irrevocable Trust, Lauren Dana Glassberg Irrevocable Trust, Brian L. Cooper Irrevocable Trust, Lola Leigh Cooper Irrevocable Trust, Chloe Marielle Cooper Irrevocable Trust; Lawrence Cooper Glassberg Irrevocable Trust, and Dr. Kenneth I. Glassberg Irrevocable Trust ("Trustee Defendant"), and U.S. Bank, N.A., as Securities Intermediary ("USB") (hereinafter the Trust Defendants, the Trustee Defendant and USB shall be collectively referred to as "Defendants").  This action arises from a dispute among Defendants as to the proper disposition of the proceeds of three life insurance policies.

## THE PARTIES

1.      GLICNY is, and at all times hereafter mentioned was, a life insurance company organized and existing under the laws of the State of New York, authorized to do business in New York among other jurisdictions, and having a principal place of business at 3100 Albert Lankford Drive, Lynchburg, VA 24506.

2.      Upon information and belief, Defendant Michelle Glassberg Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Michelle Glassberg Irrevocable Trust by suing its trustee.

3.      Upon information and belief, Defendant Andrew David Glassberg Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Andrew David Irrevocable Trust by suing its trustee.

4.      Upon information and belief, Defendant Lauren Dana Glassberg Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Lauren Dana Glassberg Irrevocable Trust by suing its trustee.

5.      Upon information and belief, Defendant Brian L. Cooper Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Brian L. Cooper Irrevocable Trust by suing its trustee.

6.      Upon information and belief, Defendant Lola Leigh Cooper Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Lola Leigh Cooper Irrevocable Trust by suing its trustee.

7.      Upon information and belief, Defendant Chloe Marielle Cooper Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Chloe Marielle Cooper Irrevocable Trust by suing its trustee.

8.      Upon information and belief, Defendant Dr. Kenneth I. Glassberg Irrevocable Trust is, and at all times hereafter mentioned was, a trust and this action may be brought against Dr. Kenneth I. Glassberg Irrevocable Trust by suing its trustee.

9.     Upon information and belief, Defendant Dr. Kenneth I. Glassberg is an individual citizen of the State of New York and is the trustee of each of the Trust Defendants.

10.     Defendant U.S. Bank, N.A. is, and at all times hereafter mentioned was a National Banking Association formed under the laws of the United States, authorized to do business in the State of New York among other jurisdictions, and having a principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

11.     This is an action arising under the provisions of the Federal Interpleader Act, Title 28, United States Code, Sections 1335, 1397, and 2361, to compel Defendants to interplead their claims in this matter in compliance with the provisions of the Act, as more fully set forth below.

12.     Jurisdiction is conferred on this Court by Title 28 United States Code, Section 1335 because two or more of the adverse claimants are of diverse citizenship, and the amount in controversy exceeds $500.00, all as more fully set forth below.

13.     Venue is proper in this judicial district pursuant to Title 28, United States Code, Section 1397 because this action is brought in a judicial district in which one or more of the claimants reside.

## COMMON ALLEGATIONS

14.     As a result of applications submitted by Herman A. Cooper to GLICNY for individual life insurance policies, on February 10, 1997 and November 13, 1997, GLICNY's predecessor in interest issued life insurance policies Nos. M227250,

M227251 and M235733 (the "Policies"), with face amounts of $1,600,000.00, $7,400,000.00 and $3,000,000.00 respectively, to the Trust Defendants as sole owners. The insured under each of the Policies was Herman A. Cooper ("Insured"), and benefits thereunder were payable to the Trust Defendants. True and correct copies of each of the Policies are attached hereto as Exhs. 1, 2 and 3 and incorporated by reference herein.

15.     By the terms of each of the Policies, the Trust Defendants reserved the rights to transfer ownership of each Policy and to change the beneficiary or beneficiaries named in each Policy. Exh. 1 at p. 5, Exh. 2 at p. 5, Exh. 3 at p. 5.

16.     On or about August 30, 2005, GLICNY received forms for the change of ownership and beneficiaries for each of the Policies (the "Transfers of Ownership and Beneficiary"), requesting that each of the Policies' ownership be transferred to Defendant USB and that the designated beneficiary for each of the Policies also be changed to "U.S. Bank, N.A., as Securities Intermediary". True and accurate copies of the Transfers of Ownership and Beneficiary are attached hereto as Exhs. 4, 5 and 6 and incorporated by reference herein.

17.     On or about September 1, 2005, GLICNY acknowledged receipt of the Transfers of Ownership and Beneficiary for each Policy and the identity of the owner and beneficiary(ies) of each Policy were modified as requested. True and accurate copies of GLICNY's correspondence acknowledging the changes to GLICNY's records for each of the Policies are attached as Exhs. 7, 8 and 9 and incorporated herein by reference.

18.     Upon information and belief, the Insured under each of the Policies died on or about December 4, 2007.  A true and correct copy of a Certificate of Death for the Insured is attached hereto as Exh. 10 and incorporated by reference herein.

19.     As a result of the Insured's death, an aggregate sum of $12,000,000.00 plus applicable accrued interest became payable under the Policies to the Policies' rightful beneficiary or beneficiaries.

20.     On or about December 17, 2007, GLICNY received correspondence from counsel purporting to represent Defendants Michelle Glassberg Irrevocable Trust, Andrew David Glassberg Irrevocable Trust, Lauren Dana Glassberg Irrevocable Trust, Brian L. Cooper Irrevocable Trust and Dr. Kenneth I. Glassberg Irrevocable Trust stating that, notwithstanding a "Life Insurance Policy Purchase Agreement" that the Trust Defendants had entered into "conveying [its] interests in the [Policies] … to Coventry First, LLC, the Trust Defendants "have conducted an investigation into the facts and circumstances surrounding the negotiation and execution of the Life Insurance Purchase Agreement and concluded that the [Trust Defendants] have various legal claims and causes of action against First Coventry, LLC… including various claims for rescission of the Life Insurance Policy Purchase Agreement in the entirety".  A true and correct copy of the foregoing correspondence is attached hereto as Exh. 11 and incorporated by reference herein.  The correspondence attached hereto as Exh. 11 further demanded that "[GLICNY] cease and desist from making any payout of any proceeds of the above referenced policies… to any person or entity until such time as the claims against First Coventry, LLC can be instituted".  See Exh. 11.  The

correspondence reference in this ¶23 concludes by stating that "[a]ny disposition or distribution of the proceeds of the above referenced policies… that is inconsistent with the foregoing demand will be undertaken at the sole peril of [GLICNY]". See Exh. 11.

21.     The correspondence from counsel purporting to represent the Trust Defendants referenced a fourth policy, the identity of which is unknown to GLICNY at this time.

22.     On February 11, 2008, GLICNY received a Proof of Loss Claimant's Statement requesting payment of the Proceeds in a single lump sum payment to Defendant USB, as beneficiary under each of the Policies. A true and accurate copy of the Proof of Loss Claimant's Statement is attached hereto as Exh. 12 and incorporated by reference herein.

23.     On February 20, 2008, GLICNY acknowledged receipt of the Proof of Loss Claimant's Statement, and advised Defendant USB that GLICNY had previously been put on notice of a potential claim dispute with respect to the Policies and/or the Proceeds. A true and accurate copy of GLICNY's acknowledgement of receipt of the Proof of Loss Claimant's Statement is attached hereto as Exh. 13.

24.     GLICNY is unable to determine whether Defendant USB, as securities intermediary, one or more of the Trust Defendants, or some combination of them is or are or may be due the proceeds of the Policies.

## PLEA IN INTERPLEADER

25.    GLICNY realleges and incorporates herein by reference each and every allegation contained in the above paragraphs 1 through 24, inclusive, as though fully set forth herein.

26.    GLICNY is in possession of the $12,000,000 death benefits payable under the Policies, plus applicable accrued interest thereon (such amounts, together, "the Proceeds").

27.    Defendants have made conflicting demands on GLICNY for the Proceeds.

28.    GLICNY is unable to determine the validity of Defendants' competing claims to the Proceeds, cannot determine who rightfully is entitled to the Proceeds, but is prepared and willing to pay the same to the person or persons determined to be entitled to receive said funds.  GLICNY is unable to make that determination, in light of the competing claims, without hazard to itself.

29.    Unless and until Defendants' competing claims are resolved, GLICNY cannot distribute the Proceeds without creating a potential for and risk of multiple and duplicative liabilities under the Policies.

30.    There is no collusion now, nor has there been collusion at any time between GLICNY and Defendants or any of them, as to this action or as to disposition of the Proceeds.

31.     GLICNY plans to deposit the Proceeds with applicable accrued interest with the Clerk of the Court pursuant to 28 USC §1335 at an early opportunity after filing this Complaint, upon proper motion and order of this Court.

32.     Following service of this Complaint, GLICNY will file a motion for an order of discharge from any and all liability to Defendants with respect to the Policies and the benefits thereunder, including specifically all Proceeds.

33.     Further, unless Defendants are restrained and enjoined from prosecuting suits against GLICNY, and from any effort to collect from GLICNY any judgments rendered in any such suits, GLICNY will be subjected to multiple or vexatious claims and potentially inconsistent judgments, and will be prejudiced in the premises and subjected to numerous suits, the outcome of which will not be properly determinative of how the Proceeds should be distributed.  Therefore, this matter falls within the purview of Title 28, United States Code, Section 2361.

34.     GLICNY has incurred costs and reasonable attorney fees in connection with these proceedings in an amount to be proven by way of motion and will incur additional fees and costs hereafter, for which it will seek recovery.

WHEREFORE, GLICNY prays for judgment as follows:

1.     That process or summons be issued for each and all of the Defendants, directed to the Marshal of the district of the residence of each Defendant, requiring them to appear and answer this Complaint;

2.     That Defendants, and each of them, appear in this action and claim or disclaim their respective rights to the Proceeds, and litigate between themselves their rights or claims to the Proceeds described in this Complaint;

3.     That Defendants, and each of them, be enjoined and restrained from instituting any proceeding in any other state or federal court against GLICNY on account of or relating to the Policies or the Proceeds thereunder;

4.     That GLICNY be fully and finally discharged from all further liability to each of said Defendants with respect to the Policies and all Proceeds thereunder;

5.     That an award be made to GLICNY out of the Proceeds to be deposited in this Court to pay for costs, counsel fees, and other expenses GLICNY is compelled to expend in instituting and prosecuting this suit; and

6.     For such other and further relief as the Court deems just and equitable.

Dated:  March 4, 2008                    SQUIRE, SANDERS & DEMPSEY L.L.P.

By: _Richard L. Mattiaccio_

Richard L. Mattiaccio (RM 4764)
350 Park Avenue, 15th Floor
New York, NY 10022
(212) 872-9800
rmattiaccio@ssd.com

Steven Skulnik (SS 7821)
350 Park Avenue, 15th Floor
New York, NY 10022
(212) 872-9800
sskulnik@ssd.com

Stephen D. Lerner (SL 7598)
SQUIRE, SANDERS & DEMPSEY L.L.P.
221 E. Fourth St., Suite 2900
Cincinnati, Ohio 45202-4095
(216) 479-8500
slerner@ssd.com

Tim J. Robinson
(*pro hac vice* admission to be requested)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215-6197
(614) 365-2700
tjrobinson@ssd.com

Attorneys for Plaintiff
Genworth Life Insurance Company of New
York f/k/a American Mayflower Life
Insurance Company of New York

# Exhibit 1

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy. Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery. To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased. Immediately upon delivery or mailing, this Policy will be deemed void from the beginning. Any premium paid will be returned.

Signed at the home office at 125 Park Avenue, New York, New York, on the Date of Issue.

President                                        Secretary

NOT AN ORIGINAL!

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

| | | |
|---|---|---|
| Insured | HERMAN A COOPER | |
| | | M227250 | Policy Number |
| Initial Specified Amount | $1,600,000 | |
| | | FEBRUARY 10, 1997 | Policy Date |
| Initial Premium | $145,037.00 | |
| | | FEBRUARY 10, 1997 | Date of Issue |

Form No. AM-ONE-99

This Policy is a legal contract between the Owner and American Mayflower Life Insurance Company of New York.

READ YOUR POLICY CAREFULLY.

## TABLE OF CONTENTS

Page

**SCHEDULE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

**GENERAL PROVISIONS**
The Contract . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Policy Date . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Owner and Beneficiary . . . . . . . . . . . . . . . . . . . .  5
Change of Owner and Beneficiary . . . . . . . . . . . .  5
Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Incontestability . . . . . . . . . . . . . . . . . . . . . . . .  6
Misstatement . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Suicide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Payment of Proceeds . . . . . . . . . . . . . . . . . . . .  7
Annual Report . . . . . . . . . . . . . . . . . . . . . . . . .  7
Projection of Benefits
and Values . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Nonparticipating . . . . . . . . . . . . . . . . . . . . . . .  7

**PREMIUM PROVISIONS**
Premium Payments . . . . . . . . . . . . . . . . . . . . . .  7
Minimum Monthly Premiums . . . . . . . . . . . . . .  7
Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . .  8
Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . .  8

**INSURANCE PROVISIONS**
Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . 9,10
Amount of the Death Proceeds . . . . . . . . . . . . .  10
Changes in Specified Amount . . . . . . . . . . . . 10,11

**NONFORFEITURE PROVISIONS**
Policy Value . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Adjusted Policy Value . . . . . . . . . . . . . . . . . . .  12

Page

Monthly Deduction . . . . . . . . . . . . . . . . . . . . .  12
Cost of Insurance . . . . . . . . . . . . . . . . . . . . . .  12
Cost of Insurance Rate . . . . . . . . . . . . . . . . . .  12
Interest Rate . . . . . . . . . . . . . . . . . . . . . . . . . .  12
Termination of Insurance . . . . . . . . . . . . . . . .  13
Cash Surrender Value . . . . . . . . . . . . . . . . . . .  13
Surrender Charge . . . . . . . . . . . . . . . . . . . . . .  13
Surrender and Net Cash
Surrender Value . . . . . . . . . . . . . . . . . . . . . .  13
Partial Withdrawal . . . . . . . . . . . . . . . . . . . . 13,14
Paid-Up Insurance . . . . . . . . . . . . . . . . . . . . .  14
Basis of Computations . . . . . . . . . . . . . . . . . .  14

**POLICY LOANS**
Cash Loan . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
Deferral . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
Interest and Repayment . . . . . . . . . . . . . . . . . .  15

**SETTLEMENT OPTIONS**
General Provisions . . . . . . . . . . . . . . . . . . . . .  17
Death of Payee . . . . . . . . . . . . . . . . . . . . . . . .  17
First Installment . . . . . . . . . . . . . . . . . . . . . . .  17
Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
Option 1 — Fixed Period . . . . . . . . . . . . . . . . .  17
Option 2 — Life Income with
Installments Certain . . . . . . . . . . . . . . . . . . .  17
Option 3 — Interest . . . . . . . . . . . . . . . . . . . . .  17
Option 4 — Fixed Installments . . . . . . . . . . . . .  17
Option 5 — Single Premium Annuity . . . . . . . . .  17
Other Settlement Options . . . . . . . . . . . . . . . . .  17
Option 1 Table . . . . . . . . . . . . . . . . . . . . . . . .  18
Option 2 Table . . . . . . . . . . . . . . . . . . . . . . . .  18

2

## ● S C H E D U L E ●

### BENEFITS AND PREMIUMS

### FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE

First Year Premium(s)   – $145,037.00  Annually
Minimum Monthly Premium – $4,299.67     Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

### INTEREST RATES

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value – On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables – Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

| | | |
|---|---|---|
| Death Benefit Option | OPTION 1 | |
| Beneficiary | AS SPECIFIED IN THE APPLICA-TION OR CHANGE OF BENEFICIARY FORM | PREFERRED  Premium (NONSMOKER)  Class |
| Owner | CHLOE MARIELLE COOPER IRREV TRUST DTD 3/17/90 & LOLA LEIGH COOPER IRREV TRUST DTD 3/17/90 EQUALLY | 77M  Age Nearest Birthday |

The Beneficiary and Owner are subject to change as provided herein.

| | | | |
|---|---|---|---|
| Insured | HERMAN A COOPER | M227,250 | Policy Number |
| Initial Specified Amount | $1,600,000 | FEBRUARY 10, 1997 | Policy Date |
| Initial Premium | $145,037.00 | FEBRUARY 10, 1997 | Date of Issue |

Form No. AM-ONE-99-S                    3

Pol No M227250

S C H E D U L E  *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | $75072.00 |
| 2 | 72624.00 |
| 3 | 69040.00 |
| 4 | 65552.00 |
| 5 | 62144.00 |
| 6 | 58848.00 |
| 7 | 55696.00 |
| 8 | 52704.00 |
| 9 | 49840.00 |
| 10 | 47120.00 |
| 11 | 44464.00 |
| 12 | 41824.00 |
| 13 | 39136.00 |
| 14 | 36288.00 |
| 15 | 33168.00 |
| 16 | 29568.00 |
| 17 | 25200.00 |
| 18 | 19600.00 |
| 19 | 11920.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a policy year and equal to the charge shown for the end of the year. The surrender charge is deducted from the policy value in order to determine the cash surrender value.

3A

Pol No M227250

S C H E D U L E  *CONTINUED*

Table of Guaranteed
Maximum Mortality Rates

This Table shows the guaranteed maximum mortality rates applicable to this
Policy.  The rates shown are for the Insured's attained age and sex and the
Premium Class of this Policy.

| Attained Age | Monthly Rate Per $1,000 Of Net Amount At Risk |
|---|---|
| 77 | 6.18 |
| 78 | 6.79 |
| 79 | 7.44 |
| 80 | 8.16 |
| 81 | 8.97 |
| 82 | 9.90 |
| 83 | 10.95 |
| 84 | 12.12 |
| 85 | 13.37 |
| 86 | 14.70 |
| 87 | 16.08 |
| 88 | 17.50 |
| 89 | 18.97 |
| 90 | 20.51 |
| 91 | 22.17 |
| 92 | 23.99 |
| 93 | 26.07 |
| 94 | 28.78 |
| 95 | 32.82 |
| 96 | 39.64 |
| 97 | 53.07 |
| 98 | 83.33 |
| 99 and up | 83.33 |

3B

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:
- this Policy, including any applicable endorsements and riders;
- the original application, a copy of which was attached at issue;
- any supplemental application for a requested increase in specified amount;
- any application for reinstatement; and
- any other forms considered to be part of an application.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application. Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner. The designation of Contingent Owner is as shown in the original application or as subsequently elected by the Owner by filing written notice at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any then existing designation of Contingent Owner is revoked.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**(Continued)**

## GENERAL PROVISIONS (Continued)

**INCONTESTABILITY**

With respect to statements made in the original application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the Date of Issue. The Date of Issue is shown in the Schedule. With respect to statements made in a supplemental application, a requested increase in specified amount is not contestable after it has been in force during the Insured's lifetime for a period of two years after the effective date of such increase. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**MISSTATEMENT**

If the Insured's age or sex is misstated, the Company will adjust the proceeds.

If misstatement is discovered prior to the Insured's death, the Company will base future calculations of the policy value, the cash surrender value, and the minimum monthly premiums on the correct information. However, if the Insured's death occurs after misstatement is discovered but before the Company has taken a cost of insurance based on the correct information, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

If misstatement is discovered after the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

**SUICIDE**

If the Insured dies by suicide within two years after the Date of Issue, the death proceeds under this Policy will be an amount equal to:
- the premiums paid; less
- any loan against this Policy; less
- any reductions in policy value for partial withdrawals of this Policy. Reduction in policy value is defined in the Partial Withdrawal section.

If the Insured dies by suicide:
- within two years after the effective date of a requested increase in specified amount; but
- more than two years after the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:
- the monthly deductions that were deducted from the policy value; and
- the monthly deductions that would have been deducted from the policy value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the policy value. In this case, the death proceeds will be an amount equal to:
- the death benefit as defined above; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the second paragraph of the Amount of the Death Proceeds section.

6

**PAYMENT OF PROCEEDS**

Proceeds means:
- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**ANNUAL REPORT**

An annual report will be sent to the Owner. It will show:
- the policy value at the end of the preceding report period and at the end of the current report period;
- the kind and amount of the credits to, and the deductions from, the policy value during the period covered by the report;
- the expense charges deducted from any premiums received during the period covered by the report;
- the cash surrender and net cash surrender values at the end of the current report period;
- the amount of any existing policy loan at the end of the current report period; and
- the death benefit at the end of the current report period.

The report will also include other information as required by state law and regulation.

**PROJECTION OF BENEFITS AND VALUES**

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A reasonable fee may be charged for this service; however, a fee will not be charged for the first projection requested during a policy year.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Each premium after the first is payable in advance at the home office. Payment may also be made to a Company agent in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance during the Insured's lifetime.

The Owner may change the mode of premium payment with the Company's consent. Written request must be filed at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

If the death benefit is the amount provided by item b) of either Option 1 or Option 2, the Company may limit the amount of premium it will accept in excess of the amount required to keep this Policy in force.

**MINIMUM MONTHLY PREMIUMS**

The minimum monthly premium in effect on the Policy Date is shown in the Schedule. The minimum monthly premium in effect will be changed after:
- a requested increase or a requested decrease in the specified amount of this Policy;
- a change in any rating applicable to this Policy;
- a change in the cost of any rider attached to this Policy; or
- the addition or deletion of any rider.

The new monthly premium will be effective from the effective date of any of the above changes. The Owner will be notified of the new premium. The new premium will remain in effect until changed again as a result of any of the above changes.

**(Continued)**

## PREMIUM PROVISIONS (Continued)

**GRACE PERIOD**

Except as provided below, this Policy will enter the grace period if the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of a requested increase in specified amount to the fifth policy anniversary following that effective date.

When this special grace period provision applies, this Policy will enter the grace period if:
- the policy value at the beginning of a policy month is less than the monthly deduction for that month;

**or if**

- the policy value at the beginning of a policy month is at least equal to the monthly deduction for that month; but
- the net cash surrender value at the beginning of that month is less than such monthly deduction; and
- the sum of the premiums paid since the measuring date, less any reductions in policy value for partial withdrawals made since that date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If no requested increases have been made, the measuring date is the Policy Date; otherwise, the measuring date is the effective date of the most recent requested increase.

After the first policy month, a grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:
- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

**REINSTATEMENT**

If this Policy has terminated as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination:
- evidence of insurability satisfactory to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest from the date of reinstatement to the next policy anniversary at the rate(s) in effect for that period.

After the application for reinstatement has been approved by the Company, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

The surrender charge on the date of reinstatement will be an amount not greater than that which existed at the time this Policy terminated as provided in the Grace Period section. The Owner will be notified of the surrender charges to be applicable upon reinstatement.

8

## INSURANCE PROVISIONS

**DEATH BENEFIT**

The death benefit depends on the option in effect on the date of death. The Schedule shows the option elected in the original application. The death benefit as defined below complies with the applicable sections of the Internal Revenue Code. The Company reserves the right to change the death benefit in order for this Policy to comply with any change in federal law.

### OPTION 1

The death benefit under this option is the greater of the following amounts.

a) The specified amount on the date of death.

b) An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

### OPTION 2

The death benefit under this option is the greater of the following amounts.

a) An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; plus
- the specified amount on the date of death.

b) An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75-90 | 105% |
| 48 | 197% | 62 | 126% | 91 | 104% |
| 49 | 191% | 63 | 124% | 92 | 103% |
| 50 | 185% | 64 | 122% | 93 | 102% |
| 51 | 178% | 65 | 120% | 94 | 101% |
| 52 | 171% | 66 | 119% | 95 and above | 100% |
| 53 | 164% | 67 | 118% | | |

**(Continued)**

Form No. AM-ONE-99.3                    9

## INSURANCE PROVISIONS (Continued)

Subject to the Company's requirements and approval, the Owner may change the death benefit option. The option may be changed if on the date the change is to become effective the death benefit is the amount provided by item a) under either Option 1 or Option 2. Written request for the change must be filed at the home office in a form acceptable to the Company. If the change is from Option 1 to Option 2, evidence of insurability satisfactory to the Company showing that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy is also required. If on the date the change is to become effective the death benefit is the amount provided by item b) under either Option 1 or Option 2, the option may not be changed.

The change will become effective at the beginning of the policy month following Company approval. The Company will notify the Owner that the change has been made. If the change is from Option 2 to Option 1, the specified amount after the change will be equal to the specified amount before the change plus the policy value on the effective date of the change. If the change is from Option 1 to Option 2, the specified amount after the change will be equal to the specified amount before the change less the policy value on the effective date of the change. These automatic adjustments to the specified amount due to option changes are not considered to be requested increases or requested decreases in specified amount.

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
- the death benefit as defined in the Death Benefit section; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- the amount of any policy loan.

The amount paid will also be adjusted due to:
- misstatement as explained in the Misstatement section;
- a successful contest of this Policy; and/or
- death during the grace period.

If the Insured dies by suicide, the amount of the death proceeds may be determined in accordance with the Suicide section.

**CHANGES IN SPECIFIED AMOUNT**

The Owner may request a change in specified amount at any time after the first policy year. Written request for change must be:
- filed at the home office; and
- in a form acceptable to the Company.
Only changes in specified amount made in accordance with this section are considered to be requested increases or requested decreases in specified amount.

A requested decrease in specified amount will be effective at the beginning of the policy month following Company approval. A requested decrease is applied:
- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the Initial Specified Amount.
A surrender charge for the requested decrease will be deducted from the policy value on the effective date of such decrease. After the decrease, the specified amount cannot be less than the minimum required by Company rules.

**(Continued)**

10

To request an increase in specified amount, the Owner must:
- submit a supplemental application; and
- provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy.

A requested increase will be effective at the beginning of the policy month following Company approval.

A requested increase in specified amount will not be made effective within 12 months after the effective date of the most recent requested increase.

## NONFORFEITURE PROVISIONS

**POLICY VALUE**

The policy value on the Policy Date is equal to the net premium, if any, credited on the Policy Date. Net premium is the premium paid less the Expense Charge shown in the Schedule.

At the beginning of a policy month, other than the first policy month, the policy value is equal to:
- the policy value at the beginning of the preceding policy month; less
- the monthly deduction for the preceding policy month; plus
- one month's interest on the difference; plus
- the net premiums credited to this Policy since the beginning of the preceding policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the beginning of the current policy month; less
- the reductions in policy value for all partial withdrawals made since the beginning of the preceding policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the beginning of the current policy month; less
- the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the policy value is equal to:
- the policy value at the beginning of the policy month; less
- the monthly deduction for the policy month; plus
- interest on the difference from the beginning of the policy month to the day on which the policy value is being determined; plus
- the net premiums credited to this Policy since the beginning of the policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the day on which the policy value is being determined; less
- the reductions in policy value for all partial withdrawals made since the beginning of the policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the day on which the policy value is being determined.

**(Continued)**

## NONFORFEITURE PROVISIONS (Continued)

**ADJUSTED POLICY VALUE**

The adjusted policy value at the beginning of a policy month is equal to:
- the policy value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:
- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:
- the monthly cost of insurance rate per thousand; times
- the number of thousands of net amount at risk for that policy month.

The monthly cost of insurance rate per thousand is equal to:
- the monthly mortality rate per thousand; divided by
- the product of 1 plus the decimal equivalent of the interest rate and 1,000 minus such mortality rate.

The net amount at risk for a policy month is equal to:
- the death benefit for that policy month; less
- the adjusted policy value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The guaranteed maximum mortality rates applicable to this Policy are shown in the Schedule.

The rates for this plan will be reviewed at least once every five years to determine whether a change should be made. Any change in rate will be in accordance with procedures and standards on file with the insurance department.

**INTEREST RATE**

The guaranteed interest rates used in the calculation of the policy value are shown in the Schedule. Interest in excess of the guaranteed rates may be applied as determined by the Company, but will be credited at least once a year.

**TERMINATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the policy value; less
- any applicable surrender charges.

The cash surrender value will not be less than zero.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken with a requested decrease in specified amount. The policy value will be reduced by the amount of this charge as of the effective date of the change. The policy value will not, however, be reduced below zero. The Company will notify the Owner of the amount of the charge taken.

The surrender charge will be adjusted following a requested increase or a requested decrease in specified amount. The Owner will be notified of the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning it to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The unearned loan interest is the interest charged on the policy loan for the period after the date of surrender.

Payment may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in policy value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

**PARTIAL WITHDRAWAL**

The Owner may request a partial withdrawal provided:
- the Insured is then living; and
- this Policy is not then being continued as paid-up insurance.

Written request in a form acceptable to the Company must be filed at the home office. The minimum amount that the Owner may request as a partial withdrawal is $500.00.

The maximum amount that may be paid to the Owner is equal to the lesser of (1) and (2) below.

(1) An amount equal to the net cash surrender value on the date the partial withdrawal is made less $275.00.

(2) An amount such that the death benefit after the partial withdrawal is $25,000.

If this maximum amount is less than $500.00, a partial withdrawal will not be made.

**(Continued)**

Form No. AM-ONE-99.5                    13

## NONFORFEITURE PROVISIONS (Continued)

Payment to the Owner may be deferred up to six months after request is received at the home office; however, a partial withdrawal to pay premiums to the Company will not be deferred.

The policy value is reduced on the date the partial withdrawal is made by an amount referred to as the reduction in policy value. The amount of this reduction is equal to:
- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

If the death benefit option on the date the partial withdrawal is made is Option 1, the speci-fied amount is decreased on such date by an amount not to exceed the amount of the re-duction in policy value. Such decrease will be applied:
- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

A decrease in specified amount due to a partial withdrawal is not considered to be a re-quested decrease in specified amount.

**PAID-UP INSURANCE**

If this Policy has a positive net cash surrender value, the Owner may elect to continue it as a level amount of paid-up insurance. Written request in a form acceptable to the Company must be received at the home office. The effective date of the paid-up insurance will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount of this paid-up insurance will be that which the net cash surrender value on the effective date of the paid-up insurance will provide when applied as a net single premium at the Insured's attained age, sex, and premium class. The death benefit under this paid-up in-surance will not, however, exceed:
- the amount of the death benefit under this Policy on the effective date of the paid-up insurance; plus
- the amount of the net cash surrender value applied to purchase the paid-up insurance; less
- the policy value on the effective date of the paid-up insurance.

Any net cash surrender value not used to purchase the paid-up insurance plus any unearned loan interest will be paid to the Owner in a single sum. This paid-up insurance will be pay-able at the same time as the insurance under this Policy and will be subject to the applicable provisions of this Policy.

This paid-up insurance may be surrendered at any time. The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash sur-render value is the net single premium at the Insured's attained age, sex, and premium class for any benefits remaining under such insurance, less any policy loan made after the effective date of the paid-up insurance. If surrender is requested within 30 days after a policy anni-versary, the net cash surrender value will not be less than the net cash surrender value on the anniversary, less any policy loan made since the anniversary.

**BASIS OF COMPUTATIONS**

The mortality tables and rates of interest used in calculating minimum policy values and net single premiums are shown in the Schedule.

Values are at least equal to those required by statute in the state in which this Policy was is-sued. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

14

## POLICY LOANS

**CASH LOAN**

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan while this Policy is in force.

The loan value is equal to the projected cash surrender value as of the next policy anniversary assuming a maximum loan is made. This projection assumes that no premiums are paid from the date the loan value is being determined to the next policy anniversary. For paid-up insurance, the loan value is the cash surrender value on the next policy anniversary. The amount advanced as a policy loan may not exceed:
- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the current policy year.

The first policy loan requested in a policy year and any existing policy loan may be considered as a preferred policy loan. The maximum amount of policy loan that will be considered preferred in a policy year is:
- the policy value at the beginning of that year; less
- the projected net single premium as of the beginning of that year; plus
- interest on this difference for that year at the rate applicable to preferred loans.

The net amount of preferred loan at any time during a policy year is equal to:
- the amount of preferred loan in that year; less
- the loan interest charged for the preferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of preferred loan.

The net amount of nonpreferred loan at any time during a policy year is equal to:
- the amount of nonpreferred loan in that year; less
- the loan interest charged for the nonpreferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of nonpreferred loan.

As used in this section, "projected net single premium" means the present value of projected future benefits and charges for the Policy as calculated each year based on:
- interest at a rate determined by the Company for this purpose; and
- the ultimate mortality rates then being used by the Company for this Policy.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request is received at the home office; however, a loan for payment of premiums to the Company will not be deferred.

**INTEREST AND REPAYMENT**

Interest on a loan is payable annually in advance on each policy anniversary. The Maximum Policy Loan Interest Rate is shown in the Schedule. Interest not paid when due is added to the loan and bears interest at the applicable rate(s).

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime; however, a loan that is in existence at the end of the grace period may not be repaid until this Policy is reinstated.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

**PERSONAL INFORMATION REMOVED DUE TO HIPAA CONCERNS**

## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form satisfactory to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

**(Continued)**

Form No. AM-ONE-99.7                          17

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | $506.17 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Age | | No. of Months Certain | | | | Age | | No. of Months Certain | | | | Age | | No. of Months Certain | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Male | Female | 60 | 120 | 180 | 240 | Male | Female | 60 | 120 | 180 | 240 | Male | Female | 60 | 120 | 180 | 240 |
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.63 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
Adjustable Death Benefit Payable on Insured's Death
Premiums Payable During Insured's Lifetime
Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
Nonparticipating - No Dividends

# Exhibit 2

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy. Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery. To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased. Immediately upon delivery or mailing, this Policy will be deemed void from the beginning. Any premium paid will be returned.

Signed at the home office at 125 Park Avenue, New York, New York, on the Date of Issue.

President          **NOT AN ORIGINAL**          Secretary

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

| | | |
|---|---|---|
| Insured | HERMAN A COOPER | |
| | M227251 | Policy Number |
| Initial Specified Amount | $7,400,000 | |
| | NOVEMBER 21, 1996 | Policy Date |
| Initial Premium | $1,220,000.00 | |
| | FEBRUARY 10, 1997 | Date of Issue |

Form No. AM-ONE-99

This Policy is a legal contract between the Owner and American Mayflower Life Insurance Company of New York.

READ YOUR POLICY CAREFULLY.

## TABLE OF CONTENTS

Page

**SCHEDULE** . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**GENERAL PROVISIONS**
The Contract . . . . . . . . . . . . . . . . . . . . . . . 5
Policy Date . . . . . . . . . . . . . . . . . . . . . . . . 5
Owner and Beneficiary . . . . . . . . . . . . . . . . . 5
Change of Owner and Beneficiary . . . . . . . . . . 5
Assignment . . . . . . . . . . . . . . . . . . . . . . . . 5
Incontestability . . . . . . . . . . . . . . . . . . . . . 6
Misstatement . . . . . . . . . . . . . . . . . . . . . . . 6
Suicide . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Payment of Proceeds . . . . . . . . . . . . . . . . . . 7
Annual Report . . . . . . . . . . . . . . . . . . . . . . 7
Projection of Benefits
and Values . . . . . . . . . . . . . . . . . . . . . 7
Nonparticipating . . . . . . . . . . . . . . . . . . . . 7

**PREMIUM PROVISIONS**
Premium Payments . . . . . . . . . . . . . . . . . . . 7
Minimum Monthly Premiums . . . . . . . . . . . . 7
Grace Period . . . . . . . . . . . . . . . . . . . . . . . 8
Reinstatement . . . . . . . . . . . . . . . . . . . . . . 8

**INSURANCE PROVISIONS**
Death Benefit . . . . . . . . . . . . . . . . . . . . . 9,10
Amount of the Death Proceeds . . . . . . . . . . . 10
Changes in Specified Amount . . . . . . . . . . 10,11

**NONFORFEITURE PROVISIONS**
Policy Value . . . . . . . . . . . . . . . . . . . . . . . 11
Adjusted Policy Value . . . . . . . . . . . . . . . . . 12

Page

Monthly Deduction . . . . . . . . . . . . . . . . . . 12
Cost of Insurance . . . . . . . . . . . . . . . . . . . 12
Cost of Insurance Rate . . . . . . . . . . . . . . . . 12
Interest Rate . . . . . . . . . . . . . . . . . . . . . . 12
Termination of Insurance . . . . . . . . . . . . . . 13
Cash Surrender Value . . . . . . . . . . . . . . . . 13
Surrender Charge . . . . . . . . . . . . . . . . . . . 13
Surrender and Net Cash
Surrender Value . . . . . . . . . . . . . . . . 13
Partial Withdrawal . . . . . . . . . . . . . . . . 13,14
Paid-Up Insurance . . . . . . . . . . . . . . . . . . 14
Basis of Computations . . . . . . . . . . . . . . . . 14

**POLICY LOANS**
Cash Loan . . . . . . . . . . . . . . . . . . . . . . . . 15
Deferral . . . . . . . . . . . . . . . . . . . . . . . . . 15
Interest and Repayment . . . . . . . . . . . . . . . 15

**SETTLEMENT OPTIONS**
General Provisions . . . . . . . . . . . . . . . . . . 17
Death of Payee . . . . . . . . . . . . . . . . . . . . . 17
First Installment . . . . . . . . . . . . . . . . . . . . 17
Interest . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Option 1 — Fixed Period . . . . . . . . . . . . . . 17
Option 2 — Life Income with
Installments Certain . . . . . . . . . . . . . . 17
Option 3 — Interest . . . . . . . . . . . . . . . . . . 17
Option 4 — Fixed Installments . . . . . . . . . . . 17
Option 5 — Single Premium Annuity . . . . . . . 17
Other Settlement Options . . . . . . . . . . . . . . 17
Option 1 Table . . . . . . . . . . . . . . . . . . . . . 18
Option 2 Table . . . . . . . . . . . . . . . . . . . . . 18

 S C H E D U L E 

BENEFITS AND PREMIUMS

FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE

First Year Premium(s)  - $629,460.00  Annually
Minimum Monthly Premium - $18,634.50    Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

INTEREST RATES

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value - On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables - Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

|  | Death | |
| Benefit Option | OPTION 1 | |

Beneficiary  AS SPECIFIED IN THE APPLICA-      PREFERRED  Premium
             TION OR CHANGE OF BENEFICIARY     (NONSMOKER) Class
             FORM

                                              Age Nearest
Owner  MICHELE GLASSBERG, ANDREW D GLASSBERG,   76M  Birthday
       LAUREN D GLASSBERG, LAWRENCE GLASSBERG
       & BRIAN COOPER IRREV TRUSTS DTD3/17/90

The Beneficiary and Owner are subject to change as provided herein.

Insured  HERMAN A COOPER                       M227,251  Policy Number

Initial
Specified Amount  $7,400,000          NOVEMBER 21, 1996  Policy Date

Initial Premium  $1,220,000.          FEBRUARY 10, 1997  Date of Issue

Form No. AM-ONE-99-S              3

Pol No M227251

# S C H E D U L E  *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | $338846.00 |
| 2 | 336404.00 |
| 3 | 320198.00 |
| 4 | 304288.00 |
| 5 | 288674.00 |
| 6 | 273430.00 |
| 7 | 258704.00 |
| 8 | 244496.00 |
| 9 | 230954.00 |
| 10 | 217930.00 |
| 11 | 205202.00 |
| 12 | 192696.00 |
| 13 | 179968.00 |
| 14 | 166574.00 |
| 15 | 151922.00 |
| 16 | 135050.00 |
| 17 | 114552.00 |
| 18 | 88356.00 |
| 19 | 52688.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a policy year and equal to the charge shown for the end of the year.  The surrender charge is deducted from the policy value in order to determine the cash surrender value.

3A

Pol No M227251

S C H E D U L E  *CONTINUED*

Table of Guaranteed
Maximum Mortality Rates

This Table shows the guaranteed maximum mortality rates applicable to this
Policy.  The rates shown are for the Insured's attained age and sex and the
Premium Class of this Policy.

| Attained Age | Monthly Rate Per $1,000 Of Net Amount At Risk |
|---|---|
| 76 | 5.59 |
| 77 | 6.18 |
| 78 | 6.79 |
| 79 | 7.44 |
| 80 | 8.16 |
| 81 | 8.97 |
| 82 | 9.90 |
| 83 | 10.95 |
| 84 | 12.12 |
| 85 | 13.37 |
| 86 | 14.70 |
| 87 | 16.08 |
| 88 | 17.50 |
| 89 | 18.97 |
| 90 | 20.51 |
| 91 | 22.17 |
| 92 | 23.99 |
| 93 | 26.07 |
| 94 | 28.78 |
| 95 | 32.82 |
| 96 | 39.64 |
| 97 | 53.07 |
| 98 | 83.33 |
| 99 and up | 83.33 |

3B

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:

- this Policy, including any applicable endorsements and riders;
- the original application, a copy of which was attached at issue;
- any supplemental application for a requested increase in specified amount;
- any application for reinstatement; and
- any other forms considered to be part of an application.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application. Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner. The designation of Contingent Owner is as shown in the original application or as subsequently elected by the Owner by filing written notice at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any then existing designation of Contingent Owner is revoked.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**(Continued)**

**GENERAL PROVISIONS (Continued)**

**INCONTESTABILITY**

With respect to statements made in the original application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the Date of Issue. The Date of Issue is shown in the Schedule. With respect to statements made in a supplemental application, a requested increase in specified amount is not contestable after it has been in force during the Insured's lifetime for a period of two years after the effective date of such increase. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**MISSTATEMENT**

If the Insured's age or sex is misstated, the Company will adjust the proceeds.

If misstatement is discovered prior to the Insured's death, the Company will base future calculations of the policy value, the cash surrender value, and the minimum monthly premiums on the correct information. However, if the Insured's death occurs after misstatement is discovered but before the Company has taken a cost of insurance based on the correct information, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

If misstatement is discovered after the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

**SUICIDE**

If the Insured dies by suicide within two years after the Date of Issue, the death proceeds under this Policy will be an amount equal to:
- the premiums paid; less
- any loan against this Policy; less
- any reductions in policy value for partial withdrawals of this Policy. Reduction in policy value is defined in the Partial Withdrawal section.

If the Insured dies by suicide:
- within two years after the effective date of a requested increase in specified amount; but
- more than two years after the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:
- the monthly deductions that were deducted from the policy value; and
- the monthly deductions that would have been deducted from the policy value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the policy value. In this case, the death proceeds will be an amount equal to:
- the death benefit as defined above; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the second paragraph of the Amount of the Death Proceeds section.

6

**PAYMENT OF PROCEEDS**

Proceeds means:
- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**ANNUAL REPORT**

An annual report will be sent to the Owner. It will show:
- the policy value at the end of the preceding report period and at the end of the current report period;
- the kind and amount of the credits to, and the deductions from, the policy value during the period covered by the report;
- the expense charges deducted from any premiums received during the period covered by the report;
- the cash surrender and net cash surrender values at the end of the current report period;
- the amount of any existing policy loan at the end of the current report period; and
- the death benefit at the end of the current report period.

The report will also include other information as required by state law and regulation.

**PROJECTION OF BENEFITS AND VALUES**

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A reasonable fee may be charged for this service; however, a fee will not be charged for the first projection requested during a policy year.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Each premium after the first is payable in advance at the home office. Payment may also be made to a Company agent in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance during the Insured's lifetime.

The Owner may change the mode of premium payment with the Company's consent. Written request must be filed at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

If the death benefit is the amount provided by item b) of either Option 1 or Option 2, the Company may limit the amount of premium it will accept in excess of the amount required to keep this Policy in force.

**MINIMUM MONTHLY PREMIUMS**

The minimum monthly premium in effect on the Policy Date is shown in the Schedule. The minimum monthly premium in effect will be changed after:
- a requested increase or a requested decrease in the specified amount of this Policy;
- a change in any rating applicable to this Policy;
- a change in the cost of any rider attached to this Policy; or
- the addition or deletion of any rider.

The new monthly premium will be effective from the effective date of any of the above changes. The Owner will be notified of the new premium. The new premium will remain in effect until changed again as a result of any of the above changes.

**(Continued)**

## PREMIUM PROVISIONS (Continued)

**GRACE PERIOD**

Except as provided below, this Policy will enter the grace period if the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of a requested increase in specified amount to the fifth policy anniversary following that effective date.

When this special grace period provision applies, this Policy will enter the grace period if:
- the policy value at the beginning of a policy month is less than the monthly deduction for that month;

**or if**
- the policy value at the beginning of a policy month is at least equal to the monthly deduction for that month; but
- the net cash surrender value at the beginning of that month is less than such monthly deduction; and
- the sum of the premiums paid since the measuring date, less any reductions in policy value for partial withdrawals made since that date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If no requested increases have been made, the measuring date is the Policy Date; otherwise, the measuring date is the effective date of the most recent requested increase.

After the first policy month, a grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:
- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

**REINSTATEMENT**

If this Policy has terminated as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination:
- evidence of insurability satisfactory to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest from the date of reinstatement to the next policy anniversary at the rate(s) in effect for that period.

After the application for reinstatement has been approved by the Company, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

The surrender charge on the date of reinstatement will be an amount not greater than that which existed at the time this Policy terminated as provided in the Grace Period section. The Owner will be notified of the surrender charges to be applicable upon reinstatement.

8

## INSURANCE PROVISIONS

**DEATH BENEFIT**  The death benefit depends on the option in effect on the date of death.  The Schedule shows the option elected in the original application.  The death benefit as defined below complies with the applicable sections of the Internal Revenue Code.  The Company reserves the right to change the death benefit in order for this Policy to comply with any change in federal law.

### OPTION 1

The death benefit under this option is the greater of the following amounts.

a)  The specified amount on the date of death.

b)  An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

### OPTION 2

The death benefit under this option is the greater of the following amounts.

a)  An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; plus
- the specified amount on the date of death.

b)  An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75-90 | 105% |
| 48 | 197% | 62 | 126% | 91 | 104% |
| 49 | 191% | 63 | 124% | 92 | 103% |
| 50 | 185% | 64 | 122% | 93 | 102% |
| 51 | 178% | 65 | 120% | 94 | 101% |
| 52 | 171% | 66 | 119% | 95 and | 100% |
| 53 | 164% | 67 | 118% | above | |

**(Continued)**

## INSURANCE PROVISIONS (Continued)

Subject to the Company's requirements and approval, the Owner may change the death benefit option. The option may be changed if on the date the change is to become effective the death benefit is the amount provided by item a) under either Option 1 or Option 2. Written request for the change must be filed at the home office in a form acceptable to the Company. If the change is from Option 1 to Option 2, evidence of insurability satisfactory to the Company showing that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy is also required. If on the date the change is to become effective the death benefit is the amount provided by item b) under either Option 1 or Option 2, the option may not be changed.

The change will become effective at the beginning of the policy month following Company approval. The Company will notify the Owner that the change has been made. If the change is from Option 2 to Option 1, the specified amount after the change will be equal to the specified amount before the change plus the policy value on the effective date of the change. If the change is from Option 1 to Option 2, the specified amount after the change will be equal to the specified amount before the change less the policy value on the effective date of the change. These automatic adjustments to the specified amount due to option changes are not considered to be requested increases or requested decreases in specified amount.

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
- the death benefit as defined in the Death Benefit section; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- the amount of any policy loan.

The amount paid will also be adjusted due to:
- misstatement as explained in the Misstatement section;
- a successful contest of this Policy; and/or
- death during the grace period.

If the Insured dies by suicide, the amount of the death proceeds may be determined in accordance with the Suicide section.

**CHANGES IN SPECIFIED AMOUNT**

The Owner may request a change in specified amount at any time after the first policy year. Written request for change must be:
- filed at the home office; and
- in a form acceptable to the Company.

Only changes in specified amount made in accordance with this section are considered to be requested increases or requested decreases in specified amount.

A requested decrease in specified amount will be effective at the beginning of the policy month following Company approval. A requested decrease is applied:
- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the Initial Specified Amount.

A surrender charge for the requested decrease will be deducted from the policy value on the effective date of such decrease. After the decrease, the specified amount cannot be less than the minimum required by Company rules.

(Continued)

10

To request an increase in specified amount, the Owner must:
* submit a supplemental application; and
* provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy.

A requested increase will be effective at the beginning of the policy month following Company approval.

A requested increase in specified amount will not be made effective within 12 months after the effective date of the most recent requested increase.

## NONFORFEITURE PROVISIONS

**POLICY VALUE**

The policy value on the Policy Date is equal to the net premium, if any, credited on the Policy Date. Net premium is the premium paid less the Expense Charge shown in the Schedule.

At the beginning of a policy month, other than the first policy month, the policy value is equal to:
* the policy value at the beginning of the preceding policy month; less
* the monthly deduction for the preceding policy month; plus
* one month's interest on the difference; plus
* the net premiums credited to this Policy since the beginning of the preceding policy month; plus
* interest on each of these net premiums from the day each was credited to this Policy to the beginning of the current policy month; less
* the reductions in policy value for all partial withdrawals made since the beginning of the preceding policy month; less
* interest on each reduction from the date each of these partial withdrawals was made to the beginning of the current policy month; less
* the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the policy value is equal to:
* the policy value at the beginning of the policy month; less
* the monthly deduction for the policy month; plus
* interest on the difference from the beginning of the policy month to the day on which the policy value is being determined; plus
* the net premiums credited to this Policy since the beginning of the policy month; plus
* interest on each of these net premiums from the day each was credited to this Policy to the day on which the policy value is being determined; less
* the reductions in policy value for all partial withdrawals made since the beginning of the policy month; less
* interest on each reduction from the date each of these partial withdrawals was made to the day on which the policy value is being determined.

**(Continued)**

NONFORFEITURE PROVISIONS (Continued)

**ADJUSTED POLICY VALUE**

The adjusted policy value at the beginning of a policy month is equal to:
- the policy value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:
- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:
- the monthly cost of insurance rate per thousand; times
- the number of thousands of net amount at risk for that policy month.

The monthly cost of insurance rate per thousand is equal to:
- the monthly mortality rate per thousand; divided by
- the product of 1 plus the decimal equivalent of the interest rate and 1,000 minus such mortality rate.

The net amount at risk for a policy month is equal to:
- the death benefit for that policy month; less
- the adjusted policy value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The guaranteed maximum mortality rates applicable to this Policy are shown in the Schedule.

The rates for this plan will be reviewed at least once every five years to determine whether a change should be made. Any change in rate will be in accordance with procedures and standards on file with the insurance department.

**INTEREST RATE**

The guaranteed interest rates used in the calculation of the policy value are shown in the Schedule. Interest in excess of the guaranteed rates may be applied as determined by the Company, but will be credited at least once a year.

**TERMINATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the policy value; less
- any applicable surrender charges.

The cash surrender value will not be less than zero.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken with a requested decrease in specified amount. The policy value will be reduced by the amount of this charge as of the effective date of the change. The policy value will not, however, be reduced below zero. The Company will notify the Owner of the amount of the charge taken.

The surrender charge will be adjusted following a requested increase or a requested decrease in specified amount. The Owner will be notified of the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning it to the home office; or
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The unearned loan interest is the interest charged on the policy loan for the period after the date of surrender.

Payment may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in policy value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

**PARTIAL WITHDRAWAL**

The Owner may request a partial withdrawal provided:
- the Insured is then living; and
- this Policy is not then being continued as paid-up insurance.

Written request in a form acceptable to the Company must be filed at the home office. The minimum amount that the Owner may request as a partial withdrawal is $500.00.

The maximum amount that may be paid to the Owner is equal to the lesser of (1) and (2) below.

(1)  An amount equal to the net cash surrender value on the date the partial withdrawal is made less $275.00.

(2)  An amount such that the death benefit after the partial withdrawal is $25,000.

If this maximum amount is less than $500.00, a partial withdrawal will not be made.

**(Continued)**

## NONFORFEITURE PROVISIONS (Continued)

Payment to the Owner may be deferred up to six months after request is received at the home office; however, a partial withdrawal to pay premiums to the Company will not be deferred.

The policy value is reduced on the date the partial withdrawal is made by an amount referred to as the reduction in policy value. The amount of this reduction is equal to:
- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

If the death benefit option on the date the partial withdrawal is made is Option 1, the specified amount is decreased on such date by an amount not to exceed the amount of the reduction in policy value. Such decrease will be applied:
- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

A decrease in specified amount due to a partial withdrawal is not considered to be a requested decrease in specified amount.

**PAID-UP INSURANCE**

If this Policy has a positive net cash surrender value, the Owner may elect to continue it as a level amount of paid-up insurance. Written request in a form acceptable to the Company must be received at the home office. The effective date of the paid-up insurance will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount of this paid-up insurance will be that which the net cash surrender value on the effective date of the paid-up insurance will provide when applied as a net single premium at the Insured's attained age, sex, and premium class. The death benefit under this paid-up insurance will not, however, exceed:
- the amount of the death benefit under this Policy on the effective date of the paid-up insurance; plus
- the amount of the net cash surrender value applied to purchase the paid-up insurance; less
- the policy value on the effective date of the paid-up insurance.

Any net cash surrender value not used to purchase the paid-up insurance plus any unearned loan interest will be paid to the Owner in a single sum. This paid-up insurance will be payable at the same time as the insurance under this Policy and will be subject to the applicable provisions of this Policy.

This paid-up insurance may be surrendered at any time. The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is the net single premium at the Insured's attained age, sex, and premium class for any benefits remaining under such insurance, less any policy loan made after the effective date of the paid-up insurance. If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than the net cash surrender value on the anniversary, less any policy loan made since the anniversary.

**BASIS OF COMPUTATIONS**

The mortality tables and rates of interest used in calculating minimum policy values and net single premiums are shown in the Schedule.

Values are at least equal to those required by statute in the state in which this Policy was issued. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

14

## POLICY LOANS

**CASH LOAN**

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan while this Policy is in force.

The loan value is equal to the projected cash surrender value as of the next policy anniversary assuming a maximum loan is made. This projection assumes that no premiums are paid from the date the loan value is being determined to the next policy anniversary. For paid-up insurance, the loan value is the cash surrender value on the next policy anniversary. The amount advanced as a policy loan may not exceed:
- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the current policy year.

The first policy loan requested in a policy year and any existing policy loan may be considered as a preferred policy loan. The maximum amount of policy loan that will be considered preferred in a policy year is:
- the policy value at the beginning of that year; less
- the projected net single premium as of the beginning of that year; plus
- interest on this difference for that year at the rate applicable to preferred loans.

The net amount of preferred loan at any time during a policy year is equal to:
- the amount of preferred loan in that year; less
- the loan interest charged for the preferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of preferred loan.

The net amount of nonpreferred loan at any time during a policy year is equal to:
- the amount of nonpreferred loan in that year; less
- the loan interest charged for the nonpreferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of nonpreferred loan.

As used in this section, "projected net single premium" means the present value of projected future benefits and charges for the Policy as calculated each year based on:
- interest at a rate determined by the Company for this purpose; and
- the ultimate mortality rates then being used by the Company for this Policy.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request is received at the home office; however, a loan for payment of premiums to the Company will not be deferred.

**INTEREST AND REPAYMENT**

Interest on a loan is payable annually in advance on each policy anniversary. The Maximum Policy Loan Interest Rate is shown in the Schedule. Interest not paid when due is added to the loan and bears interest at the applicable rate(s).

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime; however, a loan that is in existence at the end of the grace period may not be repaid until this Policy is reinstated.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

**PERSONAL INFORMATION REMOVED DUE TO HIPAA CONCERNS**

## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form satisfactory to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

**(Continued)**

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | $506.17 | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | 341.60 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 259.33 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 | Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 | Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
Adjustable Death Benefit Payable on Insured's Death
Premiums Payable During Insured's Lifetime
Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
Nonparticipating - No Dividends

# Exhibit 4

AUG-30-2005  16:07        US BANK TRUST                    651 495 8093    P.02/06

**U S bank**
_Five Star Service Guaranteed_ ⊕

Corporate Trust Services
EP-MN-WS3D
60 Livingston Avenue
St. Paul, MN 55107-2292

*[handwritten:]*
ATTN: Abbey Bailey
FAX: 434-948-5880
Attn: Sarah Luther
Fax: 434-948-5528

VIA FEDERAL EXPRESS
8520 7043 1083

American Mayflower Life Insurance Company
Attention: Policy Services/Title Department
3100 Albert Lankford Drive
Lynchburg, VA 24506-0720

Re: Herman Cooper, Policy Number M227250

Dear Sir or Madam:

Enclosed for processing are change of ownership and beneficiary forms on behalf of the above-referenced policy.

Please record the changes and fax a copy of the written confirmation to 415-402-8364.

As the new owner, we wish all original correspondence, including annual notices and anniversary reports, to be sent to:

    U.S. Bank NA, as Securities Intermediary
    c/o Coventry First LLC
    Contract Services Department
    7111 Valley Green Road
    Fort Washington, PA 19034-2209

Please note that U.S. Bank NA will also be the payor.

Enclosed is a letter authorizing Coventry First LLC to make inquiries on our behalf and obtain certain information about this policy on an ongoing basis.

Sincerely,

*[signature]*

Jill Stephenson
Trust Officer

U.S. Bank NA, as Securities Intermediary

Dated: 8/30/05

**Policy Service Request: Part I**

*Mark the box for each change or service you are requesting.*
*If more space is needed, use Number 7 or attach additional page(s).*

Please type or print.

Insured: HERMAN A. Cooper

Policy Number: M 227250

**1. Policy Loans**

In consideration of the amount advanced by American Mayflower Life Insurance Company as sole security for repayment of the loan with interest, subject to the provisions of this policy, the undersigned declare(s) that no bankruptcy proceedings are now pending.

O Maximum amount available's

O $_____ cash or maximum available, if less.

O Maximum deposit. The Company will make maximum loans on each policy anniversary in partial payment of annual premiums. A new policy loan request is not required if loans are made consecutively.

**2. Surrender For Cash Value**

O The attached policy for all claims thereunder is surrendered for payment of the net cash value. The undersigned declare(s) that no bankruptcy proceedings are now pending.

NOTE: This policy must be returned.

O This policy was lost or destroyed. No insurance is surrendered for payment of the net cash value. The undersigned declare(s) that no bankruptcy proceedings are now pending.

**3. Change of Beneficiary**

All previous beneficiary designations and settlement option elections are hereby revoked. The following are designated as beneficiaries under this policy. (Give full name, date of birth and relationship to insured. Businesses should include address.)

Primary: U.S. Bank, N.A., as Securities Intermediary
c/o Country First LLC, Contract Services Dept.
7111 Valley Green Rd
Fort Washington, PA 19054

Contingent:

_____

The right to change the beneficiary is reserved to the owner, unless otherwise indicated.

**4. Change of Owner**

O Insured     O Beneficiary     O Other _____

From:              To:

Reason:

NOTE: If reason is other than marriage, divorce, or correction of spelling, attach copy of legal evidence.

**5. Change of Nonforfeiture Options**

O Add Automatic Premium Loan Provision     O Elect Extended Term Insurance Option

O Delete Automatic Premium Loan Provision     O Elect Reduced Paid-Up Insurance Option

**6. Other Requests**

AUG-30-2005  16:07     US BANK TRUST                    651 495 6093    P.04/06
12/15/2004 09:48AM     FAXCOM                           PAGE 4  OF 5

**2. Change of Owner**

All incidents of ownership in this policy are absolutely assigned to the new owner. The undersigned declare(s) that no bankruptcy proceedings are now pending. New Owner (Give full name, address, relationship to insured, and tax identification number if more than one owner, specify which owner is to receive premium notices.)

U.S. Bank NA, as Securities Intermediary
a/o Country First LLC
Contract Services Dept
7112 Valley Green Road
Fort Washington, PA 19034

Business Associate of insured

Tax ID: 31-0891368

New Owner is

○ Individual     ○ Sole proprietorship     ○ Partnership     ☑ Corporation

○ Trustee (Give name of trust and date of trust agreement.)

NOTE: A.  The new owner is the beneficiary. The new owner may change such beneficiary designation by completing a separate Policy Service Request form. The request for change of beneficiary must be dated at least one day later than the request for change of owner

B.  The new owner does not sign below. This request is to be signed by the present owner.

(See sample beneficiary and owner designations on page 4.)

┌─────────────────────────────────────────────────────────────────────┐
│ If your original contract has been lost or destroyed, please contact the Home Office │
│ for a Lost Policy Affidavit form to obtain a copy of the contract.          │
└─────────────────────────────────────────────────────────────────────┘

Insured  Herman A. Cooper                          Policy Number  M 222256

I represent that statements and answers given in this request form are true, complete, and correctly recorded to the best of my knowledge and belief

Signed at  New York NY          the  16th      day of  April      20 05

Witness                 Flax??            Signature of Owner                Kenneth I. Weinberg, Trustee (KIW)

Owner's Address  1736 Broadway 2C New York, NY 10023

Witness                                   Other Required Signature

Witness                                   Other Required Signature

Change of beneficiary or owner acknowledged  American Mayflower Life Insurance Company of New York

Date:              By:

Form No AM-180                                                    8/2003
                                                                 Page 3

AUG-30-2005  16:08        US BANK TRUST                    651 495 8093      P.05/06



Corporate Trust Services
EP-MN-WS3D
60 Livingston Avenue
St. Paul, MN 55107-2292

Dated: _8/29/05_

Re: Authorization of requests of information

To Whom It May Concern:

Please accept this letter as authorization for Coventry First, LLC, as our agent, to request information relating to life insurance policy number(s) _M227850_____. The requested information may include, but is not limited to, requests for verification of policy values, premium payments and illustrations.

Please note that this letter does NOT authorize Coventry First, LLC to make any changes relating to the policy, such as change of ownership, change of beneficiary, or any other assignment or lien against the policy.

Authorized personnel at Coventry First include:

| | | |
|---|---|---|
| Reid S. Buerger | Executive Vice President | Nolan Smith | Associate, Finance |
| Krista Lake | Executive Vice President | Chrissy Remley | Associate, Finance |
| Antonio Muniz | Chief Financial Officer | Peggy Lyon | Director, Contract Services |
| Alex Lempiner | Senior Counsel | Cheryl Kidron | Coordinator, Contract Services |
| Amy Oelman | Associate Counsel | Kristin Wertz | Coordinator, Contract Services |
| Felicity Peiser | Senior Contract Analyst | Katrina Poe | Coordinator, Contract Services |
| Conan Patten | Contract Analyst | Sean Gregg | Coordinator, Contract Services |
| Katie Taggart | Contract Analyst | Beth Hanan | Coordinator, Contract Services |
| Amy Murphy | Director, Finance & HR | Dan Smith | Coordinator, Contract Services |
| Meredith McMahon | Senior Associate, Finance | Tony Capponi | Coordinator, Contract Services |
| Michael Rodriguez | Senior Associate, Finance | Julie Tague | Coordinator, Contract Services |
| Stephanie Remley | Associate, Finance & HR | Jessica Brasiok | Coordinator, Contract Services |
| Elizabeth Bosey | Associate, Finance | | |

Let me know if there are any questions  651-495-3885.

Sincerely,

Judith Kozak
Assistant Vice President



## U.S. BANK NATIONAL ASSOCIATION
### ASSISTANT SECRETARY CERTIFICATE

I, Jeanne M. Escobedo, an Assistant Secretary of U.S. Bank National Association, hereby certify that the following is a true and exact extract from the Bylaws of U.S. Bank National Association, a national banking association organized under the laws of the United States.

### ARTICLE VI.
### CONVEYANCES, CONTRACTS, ETC.

All transfers and conveyances of real estate, mortgages, and transfers, endorsements or assignments of stock, bonds, notes, debentures or other negotiable instruments, securities or personal property shall be signed by any elected or appointed officer.

All checks, drafts, certificates of deposit and all funds of the Association held in its own or in a fiduciary capacity may be paid out by an order, draft or check bearing the manual or facsimile signature of any elected or appointed officer of the Association.

All mortgage satisfactions, releases, all types of loan agreements, all routine transactional documents of the Association, and all other instruments not specifically provided for, whether to be executed in a fiduciary capacity or otherwise, may be signed on behalf of the Association by any elected or appointed officer thereof.

The Secretary or any Assistant Secretary of the Association or other proper officer may execute and certify that required action or authority has been given or has taken place by resolution of the Board under this Bylaw without the necessity of further action by the Board.

I further certify the following officers of U.S. Bank National Association have been duly appointed and qualified officers of the Association authorized to act under Article VI of the Bylaws of the Association.

| | | |
|---|---|---|
| Nancie J. Arvin, Vice President | Michelle Moeller, Asst. Vice President | Kristy Frickem, Trust Officer |
| Patricia M. Child, Vice President | Toby L. Robillard, Asst. Vice President | Brian D. Giel, Trust Officer |
| Sheryl Christopherson, Vice President | Judith M. Zurek, Asst. Vice President | Dawn Gihon, Trust Officer |
| Jeffrey J. Emerson, Vice President | Becky Warren, Asst. Vice President | Jaqueline K. Lee, Trust Officer |
| Eva D. Kaplan, Vice President | Max K. Weiss, Asst. Vice President | Antonio Sanchez, Trust Officer |
| Charles F. Pedersen, Vice President | Tanveer Ashraf, Trust Officer | Sanal Sengal, Trust Officer |
| Shannan Banks, Vice President | Michael Bangston, Trust Officer | Michael Spehr, Trust Officer |
| Melessa Rozal, Vice President | John Berezhnaya, Trust Officer | Jill S. Stephenson, Trust Officer |
| Tamara Sabotka-Pugh, Vice President | Susan Burdick, Trust Officer | |
| Jeffrey P. Tupper, Vice President | Shana Foss, Trust Officer | |

IN WITNESS WHEREOF, I have set my hand this April 12, 2005

(No Corporate Seal)

_Jeanne M. Escobedo_
Jeanne M. Escobedo, Assistant
Secretary

S:\officers\certupper.doc

TOTAL P.06

08/01/2003  08 13 FAX 2152533400                                         ☒004

# COVENTRY

**VERBAL VERIFICATION OF COVERAGE** DoB  5/23/1920
SSN  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

| | | | |
|---|---|---|---|
| Policy Information | | | |
| Name of Insured(s) | Herman Cooper | Policy Number | M287860 |
| | 930 Lower Fifth Tower 2 | | |
| | Edgewater, NJ 07020 | | |
| Legal Carrier Name | American Mayflower | Policy Date | 2/10/97 |
| Type of Policy | UL | Values as of | 8/22/05 |
| Max Death Benefit | 1,600,000 | 5YR RI Acc Amount | |
| Cash Surrender Value | 558.20 | Account Value | 50,390.70 |
| Date of Last Premium Payment | 8/11/05 | Amount X | 7,500 |
| Date Next Premium is Due | 10/10/05 | Amount in | 7,500 |
| Total Premium Paid to Date | 735,030.12 | Mode of Payment | Monthly |
| Rating Class at Issue | (Preferred) | Smoke/Non Smoke at Issue | Non |
| Monthly Cost of Insurance (COI) | 6,751.27 | Current Interest Rate | 4% |
| Table Rating or Flat Extra | Yes  (No) | Rating Y/N + Flat Extra | |
| Is Policy a Survivorship | Yes  (No) | Prem at 1 each (#) | |
| Post Convertibility & Saleable | (Yes)  No | Max at A 1 role Prem (#) | |
| Liens or Collateral Assignments | Yes  (No) | Avail x y | |
| Loans on the Policy | Yes  (No) | Amount | |
| Is Policy Convertible (if non Convertible, Until) | Yes  (No) | Rating Class for Conversion | |
| Dividends Payable | Yes  (No) | Dividend Option | |
| Owner Information | | | |
| Owner's Name | Joseph Greenberger, Trustee; Eva 575 E. General Trinity The Herman A. Cooper & Beatrice Cooper Irrevocable Family Trust dtd 6-27-1990 | | |
| Beneficiary's Name | TIN: 136081653 136277037 136295649 136297643 136951052 136295161 136295640 409979197 | | |
| Carrier Contact Information | | | |
| Name of Contact & Phone No. | American Mayflower  881-325-0433 | | |
| | X [signature] | | |
| | KENNETH GISSBERG | | |
| Coordinator, Customer Service | | | |

08/01/2008 08:15 FAX 2152333400 005

08/31/2006 14:50 FAX 2152333400 002

-250

COVENTRY
FIRST

AUTHORIZATION

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

# Exhibit 3

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy.  Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery.  To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased.  Immediately upon delivery or mailing, this Policy will be deemed void from the beginning.  Any premium paid will be returned.

Signed at the home office at 125 Park Avenue, New York, New York, on the Date of Issue.

**NOT AN ORIGINAL**

President                                    Secretary

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

| | | | |
|---|---|---|---|
| Insured | HERMAN A COOPER | M235733 | Policy Number |
| Initial Specified Amount | $3,000,000 | NOVEMBER 1, 1997 | Policy Date |
| Initial Premium | $300,000.00 | NOVEMBER 13, 1997 | Date of Issue |

Form No. AM-ONE-99

This Policy is a legal contract between the Owner and American Mayflower Life Insurance Company of New York.

READ YOUR POLICY CAREFULLY.

## TABLE OF CONTENTS

Page

SCHEDULE ............................. 3

GENERAL PROVISIONS
The Contract ........................ 5
Policy Date ......................... 5
Owner and Beneficiary ............... 5
Change of Owner and Beneficiary ..... 5
Assignment ......................... 5
Incontestability .................... 6
Misstatement ....................... 6
Suicide ............................. 6
Payment of Proceeds ................. 7
Annual Report ...................... 7
Projection of Benefits
and Values ....................... 7
Nonparticipating ................... 7

PREMIUM PROVISIONS
Premium Payments ................... 7
Minimum Monthly Premiums ........... 7
Grace Period ....................... 8
Reinstatement ...................... 8

INSURANCE PROVISIONS
Death Benefit ..................... 9,10
Amount of the Death Proceeds ........ 10
Changes in Specified Amount ...... 10,11

NONFORFEITURE PROVISIONS
Policy Value ....................... 11
Adjusted Policy Value .............. 12

Page

Monthly Deduction .................. 12
Cost of Insurance .................. 12
Cost of Insurance Rate ............. 12
Interest Rate ...................... 12
Termination of Insurance ........... 13
Cash Surrender Value ............... 13
Surrender Charge ................... 13
Surrender and Net Cash
Surrender Value ................. 13
Partial Withdrawal ............. 13,14
Paid-Up Insurance ................. 14
Basis of Computations ............. 14

POLICY LOANS
Cash Loan ......................... 15
Deferral .......................... 15
Interest and Repayment ............ 15

SETTLEMENT OPTIONS
General Provisions ................ 17
Death of Payee .................... 17
First Installment ................. 17
Interest .......................... 17
Option 1 — Fixed Period ........... 17
Option 2 — Life Income with
Installments Certain ........... 17
Option 3 — Interest ............... 17
Option 4 — Fixed Installments ..... 17
Option 5 — Single Premium Annuity .. 17
Other Settlement Options .......... 17
Option 1 Table .................... 18
Option 2 Table .................... 18



# S C H E D U L E

### BENEFITS AND PREMIUMS

### FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE

First Year Premium(s) - $300,000.00  Annually
Minimum Monthly Premium - $10,417.50    Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

### INTEREST RATES

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value - On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables - Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

Death
Benefit Option    OPTION 1
                                            STANDARD    Premium
Beneficiary    AS SPECIFIED IN THE APPLICA-  (NONSMOKER) Class
               TION OR CHANGE OF BENEFICIARY
               FORM
                                                        Age Nearest
Owner    IRREVOCABLE FAMILY TRUSTS(6 TRUSTS)      77M   Birthday
         OF HERMAN A COOPER DATED 3/17/90

The Beneficiary and Owner are subject to change as provided herein.

Insured    HERMAN A COOPER                M235,733    Policy Number

Initial
Specified Amount  $3,000,000           NOVEMBER 1, 1997   Policy Date

Initial Premium  $300,000.00          NOVEMBER 13, 1997  Date of Issue

Form No. AM-ONE-99-S              3

Pol No M235733

S C H E D U L E   *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | *143010.00 |
| 2 | 136170.00 |
| 3 | 129450.00 |
| 4 | 122910.00 |
| 5 | 116520.00 |
| 6 | 110340.00 |
| 7 | 104430.00 |
| 8 | 98820.00 |
| 9 | 93450.00 |
| 10 | 88350.00 |
| 11 | 83370.00 |
| 12 | 78420.00 |
| 13 | 73380.00 |
| 14 | 68040.00 |
| 15 | 62190.00 |
| 16 | 55440.00 |
| 17 | 47250.00 |
| 18 | 36750.00 |
| 19 | 22350.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a
policy year and equal to the charge shown for the end of the year.  The
surrender charge is deducted from the policy value in order to determine
the cash surrender value.

3A

Pol No M235733

S C H E D U L E  *CONTINUED*

Table of Guaranteed
Maximum Mortality Rates

This Table shows the guaranteed maximum mortality rates applicable to this
Policy.  The rates shown are for the Insured's attained age and sex and the
Premium Class of this Policy.

| Attained Age | Monthly Rate Per $1,000 Of Net Amount At Risk |
|---|---|
| 77 | 6.18 |
| 78 | 6.79 |
| 79 | 7.44 |
| 80 | 8.16 |
| 81 | 8.97 |
| 82 | 9.90 |
| 83 | 10.95 |
| 84 | 12.12 |
| 85 | 13.37 |
| 86 | 14.70 |
| 87 | 16.08 |
| 88 | 17.50 |
| 89 | 18.97 |
| 90 | 20.51 |
| 91 | 22.17 |
| 92 | 23.99 |
| 93 | 26.07 |
| 94 | 28.78 |
| 95 | 32.82 |
| 96 | 39.64 |
| 97 | 53.07 |
| 98 | 83.33 |
| 99 and up | 83.33 |

3B

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:
- this Policy, including any applicable endorsements and riders;
- the original application, a copy of which was attached at issue;
- any supplemental application for a requested increase in specified amount;
- any application for reinstatement; and
- any other forms considered to be part of an application.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application. Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner. The designation of Contingent Owner is as shown in the original application or as subsequently elected by the Owner by filing written notice at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any then existing designation of Contingent Owner is revoked.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

(Continued)

## GENERAL PROVISIONS (Continued)

**INCONTESTABILITY**

With respect to statements made in the original application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the Date of Issue. The Date of Issue is shown in the Schedule. With respect to statements made in a supplemental application, a requested increase in specified amount is not contestable after it has been in force during the Insured's lifetime for a period of two years after the effective date of such increase. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**MISSTATEMENT**

If the Insured's age or sex is misstated, the Company will adjust the proceeds.

If misstatement is discovered prior to the Insured's death, the Company will base future calculations of the policy value, the cash surrender value, and the minimum monthly premiums on the correct information. However, if the Insured's death occurs after misstatement is discovered but before the Company has taken a cost of insurance based on the correct information, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

If misstatement is discovered after the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

**SUICIDE**

If the Insured dies by suicide within two years after the Date of Issue, the death proceeds under this Policy will be an amount equal to:
- the premiums paid; less
- any loan against this Policy; less
- any reductions in policy value for partial withdrawals of this Policy. Reduction in policy value is defined in the Partial Withdrawal section.

If the Insured dies by suicide:
- within two years after the effective date of a requested increase in specified amount; but
- more than two years after the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:
- the monthly deductions that were deducted from the policy value; and
- the monthly deductions that would have been deducted from the policy value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the policy value. In this case, the death proceeds will be an amount equal to:
- the death benefit as defined above; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the second paragraph of the Amount of the Death Proceeds section.

6

**PAYMENT OF PROCEEDS**

Proceeds means:
- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**ANNUAL REPORT**

An annual report will be sent to the Owner. It will show:
- the policy value at the end of the preceding report period and at the end of the current report period;
- the kind and amount of the credits to, and the deductions from, the policy value during the period covered by the report;
- the expense charges deducted from any premiums received during the period covered by the report;
- the cash surrender and net cash surrender values at the end of the current report period;
- the amount of any existing policy loan at the end of the current report period; and
- the death benefit at the end of the current report period.

The report will also include other information as required by state law and regulation.

**PROJECTION OF BENEFITS AND VALUES**

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A reasonable fee may be charged for this service; however, a fee will not be charged for the first projection requested during a policy year.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Each premium after the first is payable in advance at the home office. Payment may also be made to a Company agent in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance during the Insured's lifetime.

The Owner may change the mode of premium payment with the Company's consent. Written request must be filed at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

If the death benefit is the amount provided by item b) of either Option 1 or Option 2, the Company may limit the amount of premium it will accept in excess of the amount required to keep this Policy in force.

**MINIMUM MONTHLY PREMIUMS**

The minimum monthly premium in effect on the Policy Date is shown in the Schedule. The minimum monthly premium in effect will be changed after:
- a requested increase or a requested decrease in the specified amount of this Policy;
- a change in any rating applicable to this Policy;
- a change in the cost of any rider attached to this Policy; or
- the addition or deletion of any rider.

The new monthly premium will be effective from the effective date of any of the above changes. The Owner will be notified of the new premium. The new premium will remain in effect until changed again as a result of any of the above changes.

**(Continued)**

## PREMIUM PROVISIONS (Continued)

**GRACE PERIOD**

Except as provided below, this Policy will enter the grace period if the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of a requested increase in specified amount to the fifth policy anniversary following that effective date.

When this special grace period provision applies, this Policy will enter the grace period if:
- the policy value at the beginning of a policy month is less than the monthly deduction for that month;

or if

- the policy value at the beginning of a policy month is at least equal to the monthly deduction for that month; but
- the net cash surrender value at the beginning of that month is less than such monthly deduction; and
- the sum of the premiums paid since the measuring date, less any reductions in policy value for partial withdrawals made since that date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If no requested increases have been made, the measuring date is the Policy Date; otherwise, the measuring date is the effective date of the most recent requested increase.

After the first policy month, a grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:
- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

**REINSTATEMENT**

If this Policy has terminated as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination:
- evidence of insurability satisfactory to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest from the date of reinstatement to the next policy anniversary at the rate(s) in effect for that period.

After the application for reinstatement has been approved by the Company, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

The surrender charge on the date of reinstatement will be an amount not greater than that which existed at the time this Policy terminated as provided in the Grace Period section. The Owner will be notified of the surrender charges to be applicable upon reinstatement.

8

## INSURANCE PROVISIONS

**DEATH BENEFIT**   The death benefit depends on the option in effect on the date of death. The Schedule shows the option elected in the original application. The death benefit as defined below complies with the applicable sections of the Internal Revenue Code. The Company reserves the right to change the death benefit in order for this Policy to comply with any change in federal law.

### OPTION 1

The death benefit under this option is the greater of the following amounts.

a)  The specified amount on the date of death.

b)  An amount equal to:
  - the adjusted policy value at the beginning of the policy month of death; less
  - the cost of insurance for that month; plus
  - interest on the difference from the beginning of that month to the end of that month; times
  - the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

### OPTION 2

The death benefit under this option is the greater of the following amounts.

a)  An amount equal to:
  - the adjusted policy value at the beginning of the policy month of death; less
  - the cost of insurance for that month; plus
  - interest on the difference from the beginning of that month to the end of that month; plus
  - the specified amount on the date of death.

b)  An amount equal to:
  - the adjusted policy value at the beginning of the policy month of death; less
  - the cost of insurance for that month; plus
  - interest on the difference from the beginning of that month to the end of that month; times
  - the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75-90 | 105% |
| 48 | 197% | 62 | 126% | 91 | 104% |
| 49 | 191% | 63 | 124% | 92 | 103% |
| 50 | 185% | 64 | 122% | 93 | 102% |
| 51 | 178% | 65 | 120% | 94 | 101% |
| 52 | 171% | 66 | 119% | 95 and above | 100% |
| 53 | 164% | 67 | 118% | | |

**(Continued)**

**INSURANCE PROVISIONS (Continued)**

Subject to the Company's requirements and approval, the Owner may change the death benefit option. The option may be changed if on the date the change is to become effective the death benefit is the amount provided by item a) under either Option 1 or Option 2. Written request for the change must be filed at the home office in a form acceptable to the Company. If the change is from Option 1 to Option 2, evidence of insurability satisfactory to the Company showing that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy is also required. If on the date the change is to become effective the death benefit is the amount provided by item b) under either Option 1 or Option 2, the option may not be changed.

The change will become effective at the beginning of the policy month following Company approval. The Company will notify the Owner that the change has been made. If the change is from Option 2 to Option 1, the specified amount after the change will be equal to the specified amount before the change plus the policy value on the effective date of the change. If the change is from Option 1 to Option 2, the specified amount after the change will be equal to the specified amount before the change less the policy value on the effective date of the change. These automatic adjustments to the specified amount due to option changes are not considered to be requested increases or requested decreases in specified amount.

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
- the death benefit as defined in the Death Benefit section; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- the amount of any policy loan.

The amount paid will also be adjusted due to:
- misstatement as explained in the Misstatement section;
- a successful contest of this Policy; and/or
- death during the grace period.

If the Insured dies by suicide, the amount of the death proceeds may be determined in accordance with the Suicide section.

**CHANGES IN SPECIFIED AMOUNT**

The Owner may request a change in specified amount at any time after the first policy year. Written request for change must be:
- filed at the home office; and
- in a form acceptable to the Company.

Only changes in specified amount made in accordance with this section are considered to be requested increases or requested decreases in specified amount.

A requested decrease in specified amount will be effective at the beginning of the policy month following Company approval. A requested decrease is applied:
- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the Initial Specified Amount.

A surrender charge for the requested decrease will be deducted from the policy value on the effective date of such decrease. After the decrease, the specified amount cannot be less than the minimum required by Company rules.

**(Continued)**

To request an increase in specified amount, the Owner must:
- submit a supplemental application; and
- provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy.

A requested increase will be effective at the beginning of the policy month following Company approval.

A requested increase in specified amount will not be made effective within 12 months after the effective date of the most recent requested increase.

## NONFORFEITURE PROVISIONS

**POLICY VALUE**

The policy value on the Policy Date is equal to the net premium, if any, credited on the Policy Date. Net premium is the premium paid less the Expense Charge shown in the Schedule.

At the beginning of a policy month, other than the first policy month, the policy value is equal to:
- the policy value at the beginning of the preceding policy month; less
- the monthly deduction for the preceding policy month; plus
- one month's interest on the difference; plus
- the net premiums credited to this Policy since the beginning of the preceding policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the beginning of the current policy month; less
- the reductions in policy value for all partial withdrawals made since the beginning of the preceding policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the beginning of the current policy month; less
- the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the policy value is equal to:
- the policy value at the beginning of the policy month; less
- the monthly deduction for the policy month; plus
- interest on the difference from the beginning of the policy month to the day on which the policy value is being determined; plus
- the net premiums credited to this Policy since the beginning of the policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the day on which the policy value is being determined; less
- the reductions in policy value for all partial withdrawals made since the beginning of the policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the day on which the policy value is being determined.

(Continued)

## NONFORFEITURE PROVISIONS (Continued)

**ADJUSTED POLICY VALUE**

The adjusted policy value at the beginning of a policy month is equal to:
- the policy value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:
- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:
- the monthly cost of insurance rate per thousand; times
- the number of thousands of net amount at risk for that policy month.

The monthly cost of insurance rate per thousand is equal to:
- the monthly mortality rate per thousand; divided by
- the product of 1 plus the decimal equivalent of the interest rate and 1,000 minus such mortality rate.

The net amount at risk for a policy month is equal to:
- the death benefit for that policy month; less
- the adjusted policy value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The guaranteed maximum mortality rates applicable to this Policy are shown in the Schedule.

The rates for this plan will be reviewed at least once every five years to determine whether a change should be made. Any change in rate will be in accordance with procedures and standards on file with the insurance department.

**INTEREST RATE**

The guaranteed interest rates used in the calculation of the policy value are shown in the Schedule. Interest in excess of the guaranteed rates may be applied as determined by the Company, but will be credited at least once a year.

**TERMINATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the policy value; less
- any applicable surrender charges.

The cash surrender value will not be less than zero.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken with a requested decrease in specified amount. The policy value will be reduced by the amount of this charge as of the effective date of the change. The policy value will not, however, be reduced below zero. The Company will notify the Owner of the amount of the charge taken.

The surrender charge will be adjusted following a requested increase or a requested decrease in specified amount. The Owner will be notified of the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning it to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The unearned loan interest is the interest charged on the policy loan for the period after the date of surrender.

Payment may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in policy value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

**PARTIAL WITHDRAWAL**

The Owner may request a partial withdrawal provided:
- the Insured is then living; and
- this Policy is not then being continued as paid-up insurance.

Written request in a form acceptable to the Company must be filed at the home office. The minimum amount that the Owner may request as a partial withdrawal is $500.00.

The maximum amount that may be paid to the Owner is equal to the lesser of (1) and (2) below.

(1) An amount equal to the net cash surrender value on the date the partial withdrawal is made less $275.00.

(2) An amount such that the death benefit after the partial withdrawal is $25,000.

If this maximum amount is less than $500.00, a partial withdrawal will not be made.

**(Continued)**

Form No. AM-ONE-99.5                    13

**NONFORFEITURE PROVISIONS (Continued)**

Payment to the Owner may be deferred up to six months after request is received at the home office; however, a partial withdrawal to pay premiums to the Company will not be deferred.

The policy value is reduced on the date the partial withdrawal is made by an amount referred to as the reduction in policy value. The amount of this reduction is equal to:
- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

If the death benefit option on the date the partial withdrawal is made is Option 1, the specified amount is decreased on such date by an amount not to exceed the amount of the reduction in policy value. Such decrease will be applied:
- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

A decrease in specified amount due to a partial withdrawal is not considered to be a requested decrease in specified amount.

**PAID-UP INSURANCE**

If this Policy has a positive net cash surrender value, the Owner may elect to continue it as a level amount of paid-up insurance. Written request in a form acceptable to the Company must be received at the home office. The effective date of the paid-up insurance will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount of this paid-up insurance will be that which the net cash surrender value on the effective date of the paid-up insurance will provide when applied as a net single premium at the Insured's attained age, sex, and premium class. The death benefit under this paid-up insurance will not, however, exceed:
- the amount of the death benefit under this Policy on the effective date of the paid-up insurance; plus
- the amount of the net cash surrender value applied to purchase the paid-up insurance; less
- the policy value on the effective date of the paid-up insurance.

Any net cash surrender value not used to purchase the paid-up insurance plus any unearned loan interest will be paid to the Owner in a single sum. This paid-up insurance will be payable at the same time as the insurance under this Policy and will be subject to the applicable provisions of this Policy.

This paid-up insurance may be surrendered at any time. The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is the net single premium at the Insured's attained age, sex, and premium class for any benefits remaining under such insurance, less any policy loan made after the effective date of the paid-up insurance. If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than the net cash surrender value on the anniversary, less any policy loan made since the anniversary.

**BASIS OF COMPUTATIONS**

The mortality tables and rates of interest used in calculating minimum policy values and net single premiums are shown in the Schedule.

Values are at least equal to those required by statute in the state in which this Policy was issued. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

14

## POLICY LOANS

**CASH LOAN**

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan while this Policy is in force.

The loan value is equal to the projected cash surrender value as of the next policy anniversary assuming a maximum loan is made. This projection assumes that no premiums are paid from the date the loan value is being determined to the next policy anniversary. For paid-up insurance, the loan value is the cash surrender value on the next policy anniversary. The amount advanced as a policy loan may not exceed:
- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the current policy year.

The first policy loan requested in a policy year and any existing policy loan may be considered as a preferred policy loan. The maximum amount of policy loan that will be considered preferred in a policy year is:
- the policy value at the beginning of that year; less
- the projected net single premium as of the beginning of that year; plus
- interest on this difference for that year at the rate applicable to preferred loans.

The net amount of preferred loan at any time during a policy year is equal to:
- the amount of preferred loan in that year; less
- the loan interest charged for the preferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of preferred loan.

The net amount of nonpreferred loan at any time during a policy year is equal to:
- the amount of nonpreferred loan in that year; less
- the loan interest charged for the nonpreferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of nonpreferred loan.

As used in this section, "projected net single premium" means the present value of projected future benefits and charges for the Policy as calculated each year based on:
- interest at a rate determined by the Company for this purpose; and
- the ultimate mortality rates then being used by the Company for this Policy.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request is received at the home office; however, a loan for payment of premiums to the Company will not be deferred.

**INTEREST AND REPAYMENT**

Interest on a loan is payable annually in advance on each policy anniversary. The Maximum Policy Loan Interest Rate is shown in the Schedule. Interest not paid when due is added to the loan and bears interest at the applicable rate(s).

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime; however, a loan that is in existence at the end of the grace period may not be repaid until this Policy is reinstated.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

**PERSONAL INFORMATION REMOVED DUE TO HIPAA CONCERNS**

## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form satisfactory to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

(Continued)

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments (Years) | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments (Years) | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments (Years) | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $506.17 | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | 341.60 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 259.33 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | | 130.47 | 65.64 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 | Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 | Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10* | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| 11 | 13 | 2.64 | 2.64 | 2.63 | 2.61 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.23 | 5.87 | 5.39 | 4.85 |
| 12 | 14 | 2.66 | 2.66 | 2.65 | 2.63 | 37 | 42 | 3.50 | 3.48 | 3.41 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 13 | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 14 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 15 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 16 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 17 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 18 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 19 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 20 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 21 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 22 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 23 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 24 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 25 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 26 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 27 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 28 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 29 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 30 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 31 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 32 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 33 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 34 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
Adjustable Death Benefit Payable on Insured's Death
Premiums Payable During Insured's Lifetime
Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
Nonparticipating - No Dividends

# Exhibit 5

08/31/2005 09:20 FAX                                                    @001/015

AUG-31-2005  09:10       US BANK TRUST              651 495 8093   P.01



Corporate Trust Services
EP-MN-W83D
60 Livingston Avenue
St. Paul, MN 55107-2292

Attn: Abbey Bailey
Fax: 434-948-5880
Attn: Sarah Luther
Fax: 434-948-5528

American Mayflower Life Insurance Company
Attention: Policy Services/Title Department
3100 Albert Lankford Drive
Lynchburg, VA 24506-0720

Re: Herman Cooper, Policy Number M227251

Dear Sir or Madam:

Enclosed for processing are change of ownership and beneficiary forms on behalf of the above-referenced policy.

Please record the changes and fax a copy of the written confirmation to 215-402-83

As the new owner, we wish all original correspondence, including billing notices and anniversary reports, to be sent to:

    U.S. Bank, N.A. as Securities Intermediary
    c/o Coventry First LLC
    Contract Services Department
    7111 Valley Green Road
    Fort Washington, PA 19034-2209

Please note that U.S. Bank NA will also be the payor.

Enclosed is a letter authorizing Coventry First LLC to make inquiries on our behalf and obtain certain information about this policy on an ongoing basis.

Sincerely,

Jill Stephen
Trust Officer

U S Bank NA, as Securities Intermediary

Dated: 8/31/05

08/31/2005 09 20 FAX                                                                    ☑002/015

AUG-31-2005  09:10      US BANK TRUST              651 495 8093    P.02
12/14/2004 09:48AM      FAXCOM                     PAGE 3  OF 5

**Policy Service Request - Part I**
Mark the box for each change or service you are requesting.
If more space is needed, use Number 7 or attach additional page(s).                    Please type or print.

| Insured | Policy Number |
|---------|---------------|
| *Herman Cooper* | *M8A7251* |

**1. Policy Loans**

In consideration of the amount advanced by American Mayflower Life Insurance Company as sole security for repayment of the loan with interest, subject to the provisions of this policy, the undersigned declare(s) that no bankruptcy proceedings are now pending.

○ Maximum amount available

○ $_____ cash or maximum available, if less.

○ Minimum deposit. The Company will make maximum loans on each policy anniversary in partial payment of annual premiums.
  A new policy loan request is not required if loans are made consecutively.

**2. Surrender For Cash Value**

○ The attached policy for all claims thereunder is surrendered for payment of the net cash value. The undersigned declare(s) that no bankruptcy proceedings are now pending.

  **NOTE: This policy must be returned.**

○ This policy was lost or destroyed. The insurance is surrendered for payment of the net cash value. The undersigned declare(s) that no bankruptcy proceedings are now pending.

**3. Change of Beneficiary**

All previous beneficiary designations and settlement option elections are hereby revoked. The following are designated as beneficiaries under this policy. (Give full name, date of birth and relationship to insured. Businesses should include address.)

Primary: *U.S. Bank N.A. as Securities Intermediary*     *Relationship:*
                                                          *Business Associate*
*Address: c/o Coventry First, Contract Services Dept.*
*7111 Valley Green Road, Fort Washington, PA 19034.*

Contingent:

The right to change the beneficiary is reserved to the owner, unless otherwise indicated.

**4. Change Name of**

○ Insured     ○ Beneficiary     ○ Other _____

From: _____     To: _____

Reason: _____

  **NOTE: If reason is other than marriage, divorce, or correction of spelling, attach copy of legal evidence.**

**5. Change of Non-Forfeiture Options**

○ Add Automatic Premium Loan Provision     ○ Elect Extended Term Insurance Option

○ Delete Automatic Premium Loan Provision     ○ Elect Reduced Paid Up Insurance Option

**6. Other Request**

Form No. AM-160                                          6/2003
                                                         Page 2

08/31/2005 09 20 FAX                                                    ☒003/015

AUG-31-2005  09:11      US BANK TRUST               651 495 8093    P.03
12/16/2004  09:46AM     FAXCOM                      PAGE 4   OF 5

**7. Change of Owner**

All incidents of ownership in the policy are absolutely assigned to the new owner. The undersigned declare(s) that no bankruptcy proceedings are now pending. New Owner: (Give full name, address, relationship to insured, and tax identification number. If more than one owner, specify which owner is to receive premium notices.)

U.S. Bank NA, as Securities Intermediary

Address: c/o Coventry First, Contract Services Dept

7111 Valley Green Road

Fort Washington, PA 19034.

Relationship: Business Associate.

Tax ID#: 31-0841368

New Owner is

○ Individual    ○ Sole proprietorship    ○ Partnership    ☒ Corporation

○ Trustee (Give name of trust and date of trust agreement.)

NOTE: A. The new owner is the beneficiary. The new owner may change such beneficiary designation by completing a separate Policy Service Request form. The request for change of beneficiary must be dated at least one day later than the request for change of owner.

B. The new owner does not sign below. This request is to be signed by the present owner.

(See sample beneficiary and owner designations on page 4.)

---

If your original contract has been lost or destroyed, please contact the Home Office for a Lost Policy Affidavit form to obtain a copy of the contract.

---

| Insured | Policy Number |
|---|---|
| Herman R. Cooper | 1H 227251 |

I represent that statements and answers given in this request form are true, complete, and correctly recorded to the best of my knowledge and belief.

Signed at NEW YORK N         this 16ᵗʰ day of Augu  20__

Witness     Hartleys Watson  Trustee     Kenneth J. Glassberg, Trustee

Owner's Address 830 Broadway 3C NEW YORK NY 10023

Witness                    Other Required Signature

Witness                    Other Required Signature

Change of beneficiary or owner acknowledged. American Mayflower Life Insurance Company of New York.

Date _____ By _____

Form No AM-180                           8/2003
                                         Page 3

08/31/2005 09:21 FAX                                                    ⓐ004/015

AUG-31-2005  09:11     US BANK TRUST                 651 495 8093    P.04



**Corporate Trust Services**
EP-MN-WS3D
60 Livingston Avenue
St. Paul, MN 55107-2292

Dated: 8/30/05

Re: Authorization of requests of information

To Whom It May Concern:

Please accept this letter as authorization for Coventry First, LLC, as our agent, to request information relating to life insurance policy number(s) _____. The requested information may include, but is not limited to, requests for verification of policy values, premium payments and illustrations.

Please note that this letter does NOT authorize Coventry First, LLC to make any changes relating to the policy, such as change of ownership, change of beneficiary, or any other assignment or lien against the policy.

Authorized personnel at Coventry First include:

| | | | |
|---|---|---|---|
| Reid S. Buerger | Executive Vice President | Nolan Smith | Associate, Finance |
| Krista Lake | Executive Vice President | Chrissy Remley | Associate, Finance |
| Antonio Muniz | Chief Financial Officer | Peggy Lynn | Director, Contract Services |
| Alex Lempiner | Senior Counsel | Cheryl Kidron | Coordinator, Contract Services |
| Amy Oshman | Associate Counsel | Kristin Wertz | Coordinator, Contract Services |
| Felicity Feiser | Senior Contract Analyst | Katrina Poe | Coordinator, Contract Services |
| Conni Potten | Contract Analyst | Sean Gregg | Coordinator, Contract Services |
| Katie Taggart | Contract Analyst | Beth Hassan | Coordinator, Contract Services |
| Amy Murphy | Director, Finance & HR | Dan Smith | Coordinator, Contract Services |
| Meredith McMahon | Senior Associate, Finance | Tony Cappoci | Coordinator, Contract Services |
| Michael Rodriguez | Senior Associate, Finance | Julie Tague | Coordinator, Contract Services |
| Stephanie Remley | Associate, Finance & HR | Jessica Bunsick | Coordinator, Contract Services |
| Elizabeth Boney | Associate, Finance | | |

Let me know if there are any questions: 651-495-3885.

Sincerely,

Judith Kluzek
Assistant Vice President

AUG-31-2005  09:11      US BANK TRUST                    651 495 8093    P.05



### U.S. BANK NATIONAL ASSOCIATION
### ASSISTANT SECRETARY CERTIFICATE

I, Jeanne M. Escobedo, an Assistant Secretary of U.S. Bank National Association, hereby certify that the following is a true and exact extract from the Bylaws of U.S. Bank National Association, a national banking association organized under the laws of the United States.

### ARTICLE VI.
### CONVEYANCES, CONTRACTS, ETC.

All transfers and conveyances of real estate, mortgages, and transfers, endorsements or assignments of stock, bonds, notes, debentures or other negotiable instruments, securities or personal property shall be signed by any elected or appointed officer.

All checks, drafts, certificates of deposit and all funds of the Association held in its own or in a fiduciary capacity may be paid out by an order, draft or check bearing the manual or facsimile signature of any elected or appointed officer of the Association.

All mortgage satisfactions, releases, all types of loan agreements, all routine transactional documents of the Association, and all other instruments not specifically provided for, whether to be executed in a fiduciary capacity or otherwise, may be signed on behalf of the Association by any elected or appointed officer thereof.

The Secretary or any Assistant Secretary of the Association or other proper officer may execute and certify that required action or authority has been given or has taken place by resolution of the Board under this Bylaw without the necessity of further action by the Board.

I further certify the following officers of U.S. Bank National Association have been duly appointed and qualified officers of the Association authorized to act under Article VI of the Bylaws of the Association.

| | | |
|---|---|---|
| Nancie J. Arvin, Vice President | Michelle Moefler, Asst. Vice President | Kristy Drideres, Trust Officer |
| Patricia M. Child, Vice President | Toby L. Robillard, Asst. Vice President | Brian D. Gael, Trust Officer |
| Sheryl Christopherson, Vice President | Judith M. Zezak, Asst. Vice President | Dawn Gilson, Trust Officer |
| Jeffrey J. Emerson, Vice President | Becky Warren, Asst. Vice President | Jaqueline K. Lee, Trust Officer |
| Eve D. Kaplan, Vice President | Mari K. Wenz, Asst. Vice President | Antonio Sanchez, Trust Officer |
| Charles F. Pedersen, Vice President | Tanveer Ashraf, Trust Officer | Sandi Sengil, Trust Officer |
| Shannon Rantz, Vice President | Michael Bengtson, Trust Officer | Michael Spilde, Trust Officer |
| Melissa Rosal, Vice President | John Berezhnaya, Trust Officer | Jill S Stephenson, Trust Officer |
| Tamara Schultz-Pugh, Vice President | Susan Burdick, Trust Officer | |
| Jeffrey P. Tapper, Vice President | Shann Foltz, Trust Officer | |

IN WITNESS WHEREOF, I have set my hand this April 12, 2005.

(No Corporate Seal)

Jeanne M. Escobedo, Assistant
Secretary

S:\certificates\assec-certshapper.doc

TOTAL P.05

# Exhibit 6

08/30/2005 16 30 FAX                                                    Ø001/005

AUG-30-2005  16 05      US BANK TRUST                    651 495 8093    P 02/06

**US bank.**
New Star Services Guaranteed

Attn: Abbey Bailey
Fax: 434-948-5880

Corporate Trust Services
EP-MN-WS3D
60 Livingston Avenue
St. Paul, MN 55107-2292

VIA FEDERAL EXPRESS
8520 7043 0672

American Mayflower Life Insurance Company
Attention. Policy Services/Title Department
3100 Albert Lankford Drive
Lynchburg, VA  24506-0720

Re.  Herman Cooper, Policy Number M235733

Dear Sir or Madam:

Enclosed for processing are change of ownership and beneficiary forms on behalf of the above referenced policy.

Please record the changes and fax a copy of the written confirmation to 215 402 8364.

As the new owner, we want all original correspondence, including renewal notices and anniversary reports, to be sent to:

U.S. Bank NA, as Securities Intermediary
c/o Coventry First LLC
Contract Services Department
7111 Valley Green Road
Fort Washington, PA  19034-2209

Please note that U.S. Bank NA will also be the payor.

Enclosed is a letter authorizing Coventry First LLC to make inquiries on our behalf and obtain certain information about this policy on an ongoing basis.

Sincerely,

Jill Stephenson
Trust Officer

U.S. Bank NA, as Securities Intermediary

Dated·  8/30/05

08/30/2005 16 30 FAX                                                    ☒002/005

AUG-30-2005  16:05      US BANK TRUST                    651 495 8893   P.03/06
12/14/2004 09:48AM      FAXCOM                           PAGE 3  OF 5

**Policy Service Request - Paid**

*Mark the box for each change or service you are requesting.*
*If more space is needed, see Number 7 or attach additional page(s).*          Please type or print.

Insured
Thomas A. Cooper                                        Policy Number
                                                        M235733

**1. Policy Loan**
In consideration of the amount advanced by American Mayflower Life Insurance Company as sole security for repayment of the loan with interest, subject to the provisions of this policy, the undersigned declare(s) that no bankruptcy proceedings are now pending.

○ Maximum amount available

○ $_____ cash or maximum available, if less.

○ Maximum deposit. The Company will make maximum loans on each policy anniversary in partial payment of annual premiums.
   A new policy loan request is not required if loans are made consecutively.

**2. Surrender For Cash Value**

○ The attached policy for all claims thereunder is surrendered for payment of the net cash value. The undersigned declare(s) that no bankruptcy proceedings are now pending.

NOTE: This policy must be returned.

○ This policy was lost or destroyed. The insurance is surrendered for payment of the net cash value. The undersigned declare(s) that no bankruptcy proceedings are now pending.

**3. Change of Beneficiary**
All previous beneficiary designations and settlement option elections are hereby revoked. The following are designated as beneficiaries under this policy. (Give full name, date of birth and relationship to insured. Businesses should include address.)

Primary U.S. Bank NA, as Securities Intermediary
c/o Coventry First LLC, Contract Services Dept.
7111 Valley Green Rd., Fort Washington, PA 19034

Contingent

The right to change the beneficiary is reserved to the owner, unless otherwise indicated.

**4. Change Name of**

○ Insured          ○ Beneficiary          ○ Other_____

From

                              To

Reason

NOTE: If reason is other than marriage, divorce, or correction of spelling, attach copy of legal evidence.

**5. Change of Non-Forfeiture Options**

○ Add Automatic Premium Loan Provision          ○ Elect Extended Term Insurance Option

○ Delete Automatic Premium Loan Provision       ○ Elect Reduced Paid Up Insurance Option

**6. Other Requests**

Issue A Duplicate Policy Which is Lost.

Form No AM-160                                          6/2003
                                                        Page 2

08/30/2005 18:31 FAX                                                                                              ☒003/005

AUG-30-2005  16:05        US BANK TRUST                                        6S1 495 8093    P.04/06
12/12/2005 09:40AM              FAXCOM                                          PAGE 4 OF 5

**7. Change of Owner**

All incidents of ownership in this policy are absolutely assigned to the new owner. The undersigned declare(s) that no bankruptcy proceedings are now pending New Owner (Give full name, address, relationship to insured, and tax identification number. If more than one owner, specify which owner is to receive premium notices.)

U.S. Bank NA, as Securities Intermediary
c/o Coventry First LLC, Contract Services Dept.
7111 Valley Green Rd.
Fort Washington, PA 19034

Business Associate of the insured

Tax ID#: 31-0841368

New Owner is

○ Individual     ○ Sole proprietorship     ○ Partnership     ☒ Corporation
○ Trustee (Give name of trust and date of trust agreement)

NOTE: A.  The new owner is the beneficiary. The new owner may change such beneficiary designation by completing a separate Policy Service Request form. The request for change of beneficiary must be dated at least one day later than the request for change of owner.

B.  The new owner does not sign below. This request is to be signed by the present owner.

(See sample beneficiary and owner designations on page 4.)

┌─────────────────────────────────────────────────────────────────────────┐
│ If your original contract has been lost or destroyed, please contact the Home Office │
│ for a Lost Policy Affidavit form to obtain a copy of the contract.        │
└─────────────────────────────────────────────────────────────────────────┘

Insured                                                     Policy Number
HERMAN A. COOPER                                            M235733
I represent that statements and answers given in this request form are true, complete, and correctly recorded to the best of my knowledge and belief

Signed at  NEW YORK, NY              this  16th  day of  August     20 05

Witness                              Signature of Owner                    Kenneth E. Harding Trust
                                                                             (KTE)
Owner's Address
101 A Broadway 7C, New York, NY  10023
Witness                              Other Required Signature

Witness                              Other Required Signature

Change of beneficiary or owner acknowledged: American Mayflower Life Insurance Company of New York

Date _____ or _____

Form No. AM-180                                                             8/2003
                                                                            Page 3



**Usbank** ®

Corporate Trust Services
EP-MN-W83D
60 Livingston Avenue
St. Paul, MN 55107-2292

Dated: 8/29/05

Re. Authorization of requests of information

To Whom It May Concern:

Please accept this letter as authorization for Coventry First, LLC, as our agent, to request information relating to life insurance policy number(s) M235733 _____. The requested information may include, but is not limited to, requests for verification of policy values, premium payments and illustrations.

Please note that this letter does NOT authorize Coventry First, LLC to make any changes relating to the policy, such as change of ownership, change of beneficiary, or any other assignment or lien against the policy.

Authorized personnel at Coventry First include:

| | | | |
|---|---|---|---|
| Reid S. Buerger | Executive Vice President | Nolan Smith | Associate, Finance |
| Krista Lake | Executive Vice President | Chrissy Remley | Associate, Finance |
| Antonio Muniz | Chief Financial Officer | Peggy Lyon | Director, Contract Services |
| Alex Lempiner | Senior Counsel | Cheryl Kidron | Coordinator, Contract Services |
| Amy Oshman | Associate Counsel | Kristin Wertz | Coordinator, Contract Services |
| Felicity Felsor | Senior Contract Analyst | Katrina Poe | Coordinator, Contract Services |
| Conai Potica | Contract Analyst | Sean Gregg | Coordinator, Contract Services |
| Katie Taggert | Contract Analyst | Beth Haznan | Coordinator, Contract Services |
| Amy Murphy | Director, Finance & HR | Dan Smith | Coordinator, Contract Services |
| Meredith McMahon | Senior Associate, Finance | Tony Capponi | Coordinator, Contract Services |
| Michael Rodriguez | Senior Associate, Finance | Julie Tagno | Coordinator, Contract Services |
| Stephanie Remley | Associate, Finance & HR | Jessica Bunsick | Coordinator, Contract Services |
| Elizabeth Booey | Associate, Finance | | |

Let me know if there are any questions: 651-495-3885.

Sincerely,

Judith Kazek
Assistant Vice President

08/30/2005 16 31 FAX                                                      ⬛005/005

AUG-30-2005  16:06        US BANK TRUST                  651 495 8093    P 06/06



### U.S. BANK NATIONAL ASSOCIATION
### ASSISTANT SECRETARY CERTIFICATE

I, Jeanne M Escobedo, an Assistant Secretary of U.S. Bank National Association, hereby certify that the following is a true and exact extract from the Bylaws of U.S. Bank National Association, a national banking association organized under the laws of the United States

### ARTICLE VI.
### CONVEYANCES, CONTRACTS, ETC.

All transfers and conveyances of real estate, mortgages, and transfers, endorsements or assignments of stock, bonds, notes, debentures or other negotiable instruments, securities or personal property shall be signed by any elected or appointed officer.

All checks, drafts, certificates of deposit and all funds of the Association held in its own or in a fiduciary capacity may be paid out by an order, draft or check bearing the manual or facsimile signature of any elected or appointed officer of the Association.

All mortgage satisfactions, releases, all types of loan agreements, all routine transactional documents of the Association, and all other instruments not specifically provided for, whether to be executed in a fiduciary capacity or otherwise, may be signed on behalf of the Association by any elected or appointed officer thereof

The Secretary or any Assistant Secretary of the Association or other proper officer may execute and certify that required action or authority has been given or has taken place by resolution of the Board under this Bylaw without the necessity of further action by the Board.

I further certify the following officers of U.S. Bank National Association have been duly appointed and qualified officers of the Association authorized to act under Article VI of the Bylaws of the Association

| | | |
|---|---|---|
| Nance J Arvin, Vice President | Michelle Moeller, Asst. Vice President | Kristy Fredous, Trust Officer |
| Patricia M. Child, Vice President | Toby L. Robillard, Asst. Vice President | Brian D. Geil, Trust Officer |
| Sheryl Christopherson, Vice President | Judith M. Zarek, Asst. Vice President | Dawn Gilson, Trust Officer |
| Jeffrey J Emerson, Vice President | Becky Warren, Asst. Vice President | Jaqueline K. Lee, Trust Officer |
| Eve D. Kaplan, Vice President | Mari K. Weun, Asst. Vice President | Aukano Sanchez, Trust Officer |
| Charles F. Pedersen, Vice President | Tanveer Ashraf, Trust Officer | Sandi Seagal, Trust Officer |
| Shannon Rantz, Vice President | Michael Bengtson, Trust Officer | Michael Spohr, Trust Officer |
| Mahasa Rosal, Vice President | Julie Berezhneya, Trust Officer | Jill S. Stephenson, Trust Officer |
| Tamara Schultz-Fugh, Vice President | Senan Burdick, Trust Officer | |
| Jeffrey P Tupper, Vice President | Shana Fonts, Trust Officer | |

IN WITNESS WHEREOF, I have set my hand this April 12, 2005.

(No Corporate Seal)

Jeanne M. Escobedo, Assistant
Secretary

S:\aff\Bds w\Asso-sect\tupper doc

                                                                TOTAL P.06

# Exhibit 7

(Page 1 of 1)



**American Mayflower Life**
*A GE Financial company*

American Mayflower Life Insurance Company of New York
3700 Asbury London Drive, P.O. Box 10420
Lynchburg VA 24506-0720

00349
Us Bank Na, As Securities Intermediary
C/O Coventry First, Contract Services
7111 Valley Green Rd
Fort Washington, PA 19034

September 1, 2005

Us Bank Na, As Securities Intermediary
C/O Coventry First, Contract Services
7111 Valley Green Rd
Fort Washington, PA 19034

Policy Number:    M227250
Insured:          Herman A Cooper

Dear Policy Owner,

The following change has been recorded in our records.

    Change of Ownership and Beneficiary
        Us Bank Na, As Securities Intermediary
        C/O Coventry First, Contract Services
        7111 Valley Green Rd
        Fort Washington, PA 19034

Please place this form with your policy in order to maintain a complete record of your coverage.

If you have any questions, or if we may be of further assistance, please do not hesitate to contact us toll-free at 1-888-265-5433 and our fax number is 1-888-325-3299.

Sincerely,

VICKY QUARLES
Customer Service

CC    00499  National.Brokerage,    Harvey Stewart Wittson

# Exhibit 8

(Page 1 of 1)



**American Mayflower Life**
*A GE Financial company*

American Mayflower Life Insurance Company of New York
3100 Albert Lankford Dr • P.O. Box 10720
Lynchburg, VA 24506-0720

00348
Us Bank Na, As Securities Intermediary
C/O Coventry First, Contract Services
711 Valley Green Rd
Fort Washington, PA 19034

September 1, 2005

Us Bank Na, As Securities Intermediary
C/O Coventry First, Contract Services
711 Valley Green Rd
Fort Washington, PA 19034

Policy Number:    M227251
Insured:          Herman A Cooper

Dear Policy Owner,

The following change has been recorded in our records.

Change of Ownership and Beneficiary
    Us Bank Na, As Securities Intermediary
    C/O Coventry First, Contract Services
    711 Valley Green Rd
    Fort Washington, PA 19034

Please place this form with your policy in order to maintain a complete record of your coverage.

If you have any questions, or if we may be of further assistance, please do not hesitate to contact us toll-free at 1-888-265-5433 and our fax number is 1-888-325-3299.

Sincerely,

VICKY QUARLES
Customer Service

CC    00499  National,Brokerage,    Harvey Stewart Wittson

# Exhibit 9



**American Mayflower Life**
*A GE Financial company*

American Mayflower Life Insurance Company of New York
3100 Albert Lankford Drive / P. O. Box 12920
Lynchburg, VA 24506-0720

September 1, 2005

00382
Us Bank Na, As Securities Intermediary
C/O Coventry First Llc, Contract Services
7111 Valley Green Rd                    C
Fort Washington, PA 19034

Us Bank Na, As Securities Intermediary
C/O Coventry First Llc, Contract Services
7111 Valley Green Rd
Fort Washington, PA 19034

Policy Number:    M235733
Insured:          Herman A Cooper

Dear Policy Owner,

The following change has been recorded in our records.

    Change of Ownership and Beneficiary
        Us Bank Na, As Securities Intermediary
        C/O Coventry First Llc, Contract Services
        7111 Valley Green Rd
        Fort Washington, PA 19034

Please place this form with your policy in order to maintain a complete record of your coverage.

If you have any questions, or if we may be of further assistance, please do not hesitate to contact us toll-free at 1-888-265-5433 and our fax number is 1-888-325-3299.

Sincerely,

VICKY QUARLES
Customer Service

CC      00681  U S Brokerage Services Ltd,      Wittson,Assoc

# Exhibit 10

The document to which this is
attached appears to be certified





# Exhibit 11

LEITNER & GETZ LLP

ATTORNEYS AT LAW

65 BROADWAY

SUITE 2101

NEW YORK, NEW YORK 10006

212-635-0400

TELECOPIER: (212) 635-0449

December 13, 2007

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

CLIENT SERVICES

DEC 1 7 2007

REC'D. EXPRESS

American Mayflower Life Insurance
    Company of New York
3100 Albert Lankford Drive
P.O. Box 10720
Lynchburg, VA 24506-0720

Re:   Herman Cooper Life Insurance Policies:
      M235733; M227250; M227251; U20437

Dear American Mayflower Life Representative:

        This office represents the Michelle Glassberg Irrevocable
Trust, dated 3/27/90, the Andrew D. Glassberg Irrevocable Trust,
dated 3/17/90, the Lauren D. Glassberg Irrevocable Trust, dated
3/27/90, the Brian L. Cooper Irrevocable Trust, dated 3/27/90, and
the Dr. Kenneth I. Glassberg Irrevocable Trust, dated 10/1/97
(hereinafter the "Herman A. Cooper Irrevocable Family Trusts").

        In approximately August, 2005, The Herman A. Cooper
Irrevocable Family Trusts entered into a "Life Insurance Policy
Purchase Agreement" conveying its interests in the above referenced
life insurance policies on the life of Herman A. Cooper to Coventry
First LLC, a Delaware limited liability company.

        Herman A. Cooper recently died, activating American
Mayflower Life's obligations pursuant to the above-referenced
policies. The Herman A. Cooper Irrevocable Family Trusts, however,
have conducted an investigation into the facts and circumstances

LEITNER & GETZ LLP

American Mayflower Life Insurance
  Company of New York
December 13, 2007
Page -2-

surrounding the negotiation and execution of the Life Insurance
Policy Purchase Agreement and concluded that the trusts have
various legal claims and causes of action against First Conventry,
LLC, including without limitation various claims for recision of
the Life Insurance Policy Purchase Agreement in the entirety.

        For these reasons, the Herman A. Cooper Irrevocable
Family Trusts hereby demands that American Mayflower Life cease and
desist from making any payout of any proceeds of the above
referenced policies on the life of Herman A. Cooper to any person
or entity until such time as the claims against First Coventry LLC
can be instituted.   At that time we anticipate that American
Mayflower Life will intervene in any such action as stakeholder and
deposit the proceeds of said policies into Court pendente lite.

        Any disposition or distribution of the proceeds of the
above referenced policies on the life of Herman A. Cooper that is
inconsistent with the foregoing demand will be undertaken at the
sole peril of American Mayflower Life.

        Thank you for your kind attention and anticipated
cooperation.

                            Very truly yours,

                            Jerome M. Leitner

JML/db

CERTIFIED MAIL

7006 3450 0001 4622 7731

American Mayflower I
Company of New Yo
3100 Albert Lankford
P.O. Box 10720
Lynchburg, VA 24506-0

MONEY CENTER
PHS
12/17/07
12:58:22
PHS
MONEY CENTER

UNITED STATES POSTAGE
PITNEY BOWES
005.21⁰
EC 13 2007
CODE 10006

2450680720 B006

# Exhibit 12



**Corporate Trust Services**
EP-MN-WS1D
60 Livingston Avenue
St. Paul, MN 55107-2292

American Mayflower Life Insurance Company
Attention: Death Claims
3100 Albert Lankford Drive
Lynchburg, VA 24506-0720

Re:    Herman Cooper, Policy Numbers M235733, M227250, M227251

Dear Sir/Madam:

Enclosed is the following documentation regarding the above-referenced claim:

- American Mayflower's Claimant's Statement
- One Certified Death Certificate for Herman Cooper
- Original Policies

If you require any additional information, please call our servicing department at
(215) 836-8362.

Please overnight a check for the proceeds to:

U.S. Bank NA, as Securities Intermediary
c/o Coventry First LLC
Attn: Peggy Lyon
7111 Valley Green Road
Fort Washington, PA 19034-2209

*Please also mail us a Form 712.*

Thank you for your prompt attention to this request.

Sincerely,

Russell D. Mosley
Vice President
U.S. Bank NA, as Securities Intermediary

Enclosures

2-8-08



Proof of loss claimant statement - life insurance

Page 2 of 10

## Decedent information  *The person who has died*

Name *First, Middle, Last*
*Herman Cooper*

Maiden name *If applicable*          Other names by which the deceased was known

Address *Residence at time of death*
*190 River Road*

City *Edgewater*          State *NJ*    Zip *07020*

If manner of death was other than "Natural," please describe circumstances on a separate sheet and attach any relevant newspaper clippings.

Date of birth *5/23/20*          Date of death *12/4/07*

Manner of death *Select one*
◉ Natural    ○ Accidental    ○ Suicide    ○ Homicide

## Nicotine use

In the five years prior to the Date of Death, did the Deceased use any form of nicotine?
○ Yes    ○ No

## Policy information

List all policies under which you (the claimant) are making a claim.

Attach a separate sheet if more space is required for additional policy information.

Policy number *MA35733*          Amount of insurance $

Policy number *M227250*          Amount of insurance $

Policy number *M227251*          Amount of insurance $

## Claimant information

If claimant is not an individual, refer to Special claimant information and signing in capacity instructions on page 1.

If claimant is a trust, also complete the Trustee information below.

Federal Income Tax withholding is optional unless subject to backup withholding. If no amount is indicated, the percentage will be 0.

IRS Form 712 is an attachment to insured's Estate Tax Return.

Name *First, Middle, Last* *Securities*
*US Bank NA as intermediary*    Social security/Tax ID number *31-0841368*

Address *c/ Coventry*
*7111 Valleygreen Rd*    Phone number *800-380-8196*

City *Port Washington*          State *PA*    Zip *19034*

Date of birth          Age          Relationship to deceased *Business Associate*

Amount or percent claimed *Fill in one*
$ ____ or *100* %          Citizenship *Select one and provide country if "Other"*
◉ US    ○ Other

Amount to be withheld for Federal Income Tax purposes from any interest payable
$ ____ or *0* %

Do you require an IRS Form 712?    ◉ Yes    ○ No

## Payment mailing address

Provide the address to which payment(s) should be sent if different from the claimant address provided above.

Address *same as above claimant address*

City          State          Zip

## Trustee information

Complete this section only if the claimant is a trust.

List all current trustees.

Attach a separate sheet if more space is required for additional trustee names.

Indicate capacity of each trustee: Sole Current Trustee or Co-Trustee as appropriate and have each current trustee sign on page 6 unless the trust document confers on one trustee the authority to act alone.

Trust name

Date of trust agreement

State in which trust was established

Current trustee name(s) *Do not list any former trustees*

Tax Identification Number (TIN)

Amendment dates *if any*

FEB 11 2008

44118CL 111607

# Proof of loss claimant statement - life insurance

Page 3 of 10

## Settlement options  *Choose and complete one of the settlement options below and on page 4*

| | |
|---|---|
| The claimant is referred to as "you" and "your" in this Proof of loss claimant statement. | As a named beneficiary, you may choose from a variety of options. Before selecting a settlement option, however, we strongly recommend that you consult a tax advisor to discuss potential tax consequences. If you have specific questions about any of these options, you may contact our product specialists at 888 882.2276. |

### 1. Interest settlement option - Secure Access Account

| | |
|---|---|
| Residents of FL, KS, MI, NV, NC, ND, NY and VA must positively elect a SAA in order to receive it. | The Secure Access Account (SAA) program is available to residents of all states except Vermont. If your actual lump sum distribution equals or exceeds $10,000, we will automatically credit your distribution to a SAA unless you specifically chose the Annuity income option or Lump sum option, or if applicable state law first requires a positive election.<br><br>○ **Yes, credit my distribution to a SAA** *Check here to positively elect a SAA* |

### 2. Annuity income option

These options provide a series of fixed payments. Once payments begin, they cannot be changed.

| | Payment options *Select one* | Payment option details |
|---|---|---|
| Select appropriate payment option, annuity payment details and broker selection. | ○ **2a.** Payments for _____ years* *Indicate number of years, minimum five years / maximum 30 years* | **2a:** You will receive payments for the number of years you select, not to exceed your life expectancy. Payments are guaranteed even if you die before the designated period ends. At your death, any remaining payments will be made to your designated beneficiary. Make your beneficiary designation(s) in the Beneficiary information section on page 4. |
| * Complete the Beneficiary information on page 4 if you choose Payment options 2a or 2b. | ○ **2b.** Payments for as long as you live, guaranteed for _____ years* *Indicate number of years, minimum five years / maximum 30 years* | **2b:** You will receive payments for as long as you live with payments guaranteed for the number of years you select, not to exceed your life expectancy. If you die before the Guarantee Period ends, any remaining payments will be made to your designated beneficiary. Make your beneficiary designation(s) in the Beneficiary information section on page 4 and attach a copy of your birth certificate or valid driver's license to the claim form. |
| | ○ **2c.** Payments for as long as you live  *Payments stop at time of your death* | **2c:** You will receive payments for as long as you live. Payments will end at your death with no provision for beneficiaries. Attach a copy of your birth certificate or valid driver's license to the claim form. |
| | ○ **2d.** Equal monthly payments made to two payees (the claimant and the additional payee indicated below) while either is living for a guaranteed minimum of five years | **2d:** Under this option, equal monthly payments will be made to two payees while either is living for a guaranteed minimum of five years. Be sure to provide the name, relationship, date of birth, social security number and address of the second payee. |

Additional payee name | | Relationship to claimant

Date of birth | | Social Security number

Address

City | | State | Zip



# Proof of loss claimant statement - life insurance

## Settlement options  *Continued*

### 2. Annuity income option  *Continued*

For Payment frequency,

- Monthly = 12 per year
- Quarterly = 4 per year
- Semi-annually = 2 per year
- Annually = 1 per year

EFT payment requests require completion of the EFT section on page 5.

Payments can begin as early as 30 days after the claim is deemed payable. If we receive your request less than 30 days before your scheduled start date, payments will begin the following month.

**Annuity payment details**  *Payment to the claimant*

Payment frequency  *Select one*
○ Monthly    ○ Quarterly    ○ Semi-annually    ○ Annually

Payment method  *Select one*
○ Check    ○ Electronic funds transfer (EFT)

Requested payment start date
*Must be 1st or 15th of month and within one year of deceased's death* •  ___/___/___

**Broker selection**  *Select one of the following to service your settlement option*
○ Current broker for this contract  *Provide name* • _____
○ Another broker  *Provide name* • _____
○ You do not want a broker to be allowed to service this option

### 3. Lump sum option

☑ Check here to request settlement of the entire amount available in a check format

*Please send lump sum check.*

## Beneficiary designation

Complete this section only if you selected Payment options 2a or 2b on page 3.

Designation percentages must total 100% for each beneficiary type. If no percentage is provided, proceeds will be divided equally among all surviving beneficiaries.

Attach a separate signed and dated sheet that includes all required information if more space is needed for additional beneficiaries.

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| • | ☑ Primary | • % |
| Social Security/Tax ID number | Date of birth | Relationship to claimant |
| • | • | • |
| Address | | |
| • | | |
| City | State | Zip |
| • | • | • |

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| • | ○ Primary    ○ Contingent | • % |
| Social Security/Tax ID number | Date of birth | Relationship to claimant |
| • | • | • |
| Address | | |
| • | | |
| City | State | Zip |
| • | • | • |

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| • | ○ Primary    ○ Contingent | • % |
| Social Security/Tax ID number | Date of birth | Relationship to claimant |
| • | • | • |
| Address | | |
| • | | |
| City | State | Zip |
| • | • | • |

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| • | ○ Primary    ○ Contingent | • % |
| Social Security/Tax ID number | Date of birth | Relationship to claimant |
| • | • | • |
| Address | | |
| • | | |
| City | State | Zip |
| • | • | • |

CLAIMS DEPARTMENT

FEB 1 1 2008

44119CL 111607

## Proof of loss claimant statement - life insurance

Page 5 of 10

**Electronic Funds Transfer (EFT) information**

*Complete this section and attach a voided check to authorize EFT payments.*

Account owner name                                    Institution name for deposit

Routing number                    Type of account *Select one*
. | | | | | | | | |                ○ Checking       ○ Savings       ○ Brokerage
Account number for deposit
. | | | | | | | | | | | | | | |

**If brokerage account, provide additional information below**

Brokerage firm                                        Brokerage account number

Brokerage name                                        Brokerage phone number

This is an example of a personal check. A business check may be different.

For checks with an ACH RT (Automated Clearing House Routing) number, please use this number.

For all other checks, use the nine-character bank routing number, which appears between the :| symbols, usually at the bottom left corner of the check.



The account number is up to 17 characters long and appears next to the ⑈ symbol at the bottom of the check and usually to the right of the bank routing number.

If you are a Trustee, Attorney-in-Fact, Guardian, Conservator or other fiduciary or representative, you must sign in capacity or with title (e.g., Jane Doe, Trustee) and attach relevant legal documentation.

Beneficiary must be account owner.

By signing below, you authorize us to automatically transfer payments into your account, and make any necessary adjustments to your account, with the understanding that you or your agent will be notified. This authorization will remain in effect until we receive written notification from you to do otherwise.

Beneficiary signature                                 Date

X

CLAIMS DEPARTMENT
FEB 11 2008

## Proof of loss claimant statement - life insurance

Page 6 of 10

### Declaration and signature(s)

The Genworth Financial companies listed at the top of page 1 are referred to as "us," "our" and "we" in this section.

The claimant is referred to as "you" and "your" in this section.

**By signing below, you**

- Make claim to the proceeds and declare that you have the authority to claim in the capacity you have indicated
- Declare that all answers recorded in this proof of loss claimant's statement are true and complete
- Declare the original and any duplicates or certificates of each policy listed in the Policy information section on page 2 to be lost or otherwise unavailable unless sent to us with this proof of loss claimant's statement
- Agree that our furnishing of this proof of loss statement and any supplemental forms is not an admission that insurance was in force on the Deceased's life nor a waiver of our rights or defenses

**Current trustee certification**

If signing as a current trustee, you additionally

- Declare that the named trust is in full force and effect, without change, except as noted
- Declare that you are a current Trustee of the named trust and have not resigned or been replaced
- Declare that you are acting within the scope of the authority conferred on you by the named trust
- Agree that we have no obligation to verify that the named trust is in effect or that you are acting within the scope of your authority



Please see the "State fraud notices" section on pages 7 and 8 for additional information.

If you are signing as a fiduciary or representative, you must sign in capacity with title in which you are claiming.

See Special claimant information and signing in capacity instructions on page 1 for details.

Laws in your state may make it a crime to fill out this form with information you know is false or to omit important facts. Criminal and/or civil penalties can result.

For your protection, the state of **New York** laws require that we provide you with the following statement:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

| Claimant signature | | Date |
|---|---|---|
| X~~By:~~ _(signature)_ Title: | Russell D. Mosley Vice President | 2-8-08 |

Capacity *Select one*

○ Individual   ○ Sole trustee   ○ Co-trustee   ○ Executor/executrix
○ Personal representative   ○ Administrator
○ Custodian   ○ Other _Corporation_

| Claimant signature | | |
|---|---|---|
| X~~By:~~ _(signature)_ Title: | Thomas S. Maple III Vice President | 2-8-08 |

Capacity *Select one*

○ Individual   ○ Sole trustee   ○ Co-trustee   ○ Executor/executrix
○ Personal representative   ○ Administrator
○ Custodian   ○ Other _Corporation_

44119CL 111607





## U.S. BANK NATIONAL ASSOCIATION
### ASSISTANT SECRETARY CERTIFICATE

I, Cara L. Seeley, an Assistant Secretary of U.S. Bank National Association, hereby certify that the following is a true and exact extract from the Bylaws of U.S. Bank National Association, a national banking association organized under the laws of the United States.

### ARTICLE VI.
### CONVEYANCES, CONTRACTS, ETC.

All transfers and conveyances of real estate, mortgages, and transfers, endorsements or assignments of stock, bonds, notes, debentures or other negotiable instruments, securities or personal property shall be signed by any elected or appointed officer.

All checks, drafts, certificates of deposit and all funds of the Association held in its own or in a fiduciary capacity may be paid out by an order, draft or check bearing the manual or facsimile signature of any elected or appointed officer of the Association.

All mortgage satisfactions, releases, all types of loan agreements, all routine transactional documents of the Association, and all other instruments not specifically provided for, whether to be executed in a fiduciary capacity or otherwise, may be signed on behalf of the Association by any elected or appointed officer thereof.

The Secretary or any Assistant Secretary of the Association or other proper officer may execute and certify that required action or authority has been given or has taken place by resolution of the Board under this Bylaw without the necessity of further action by the Board.

I further certify the following officers of U.S. Bank National Association have been duly appointed and qualified officers of the Association authorized to act under Article VI of the Bylaws of the Association.

| | | |
|---|---|---|
| Eve D. Kaplan, Senior Vice President | Melissa A. Rosal, Vice President | Michael D. Bengtson, Asst. Vice President |
| Nancie J. Arvin, Vice President | Jason Ross, Vice President | Kari Anderson, Trust Officer |
| Patricia M. Child, Vice President | Tamara Schultz-Fugh, Vice President | Tanveer Ashraf, Trust Officer |
| Sheryl Christopherson, Vice President | Becky Warren, Vice President | Susan Burdick, Trust Officer |
| Jeffrey J. Emerson, Vice President | Judith M. Zuzek, Vice President | Erika Forshtay, Trust Officer |
| Beth A. Gloppen, Vice President | Brian Giel, Asst. Vice President | Alex Fuentes, Trust Officer |
| Thomas S. Maple III, Vice President | Jacqueline Kellen Lee, Asst. Vice President | Samil Sengil, Trust Officer |
| Russell D. Mosley, Vice President | Derek Klein, Asst. Vice President | Michael P. Speltz, Trust Officer |
| Charles F. Pedersen, Vice President | Rendena R. Larsen, Asst. Vice President | Joseph P. Wagner, Trust Officer |
| Shannon M. Rantz, Vice President | Julia Linian, Asst. Vice President | |
| Diane L. Reynolds, Vice President | Michelle Moeller, Asst. Vice President | |
| Toby Robillard, Vice President | | |

IN WITNESS WHEREOF, I have set my hand this 26th day of September, 2007.

(No Corporate Seal)

Cara L. Seeley, Assistant Secretary

s:\...#5\days\thses\certs\bnpmy.doc

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy.  Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery.  To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased.  Immediately upon delivery or mailing, this Policy will be deemed void from the beginning.  Any premium paid will be returned.

Signed at the home office at 125 Park Avenue, New York, New York, on the Date of Issue.

President                                    Secretary

NOT AN ORIGINAL!

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

| | | |
|---|---|---|
| Insured | HERMAN A COOPER | |
| | M227250 | Policy Number |
| Initial Specified Amount | $1,600,000 | |
| | FEBRUARY 10, 1997 | Policy Date |
| Initial Premium | $145,037.00 | |
| | FEBRUARY 10, 1997 | Date of Issue |

Form No. AM-ONE-99

This Policy is a legal contract between the Owner and American Mayflower Life Insurance Company of New York.

READ YOUR POLICY CAREFULLY.

## TABLE OF CONTENTS

Page

**SCHEDULE** ........................... 3

**GENERAL PROVISIONS**
The Contract ........................ 5
Policy Date ......................... 5
Owner and Beneficiary ................. 5
Change of Owner and Beneficiary ......... 5
Assignment .: ....................... 5
Incontestability ..................... 6
Misstatement ....................... 6
Suicide ............................ 6
Payment of Proceeds ................. 7
Annual Report ...................... 7
Projection of Benefits
and Values ........................ 7
Nonparticipating .................... 7

**PREMIUM PROVISIONS**
Premium Payments ................... 7
Minimum Monthly Premiums ........... 7
Grace Period ....................... 8
Reinstatement ...................... 8

**INSURANCE PROVISIONS**
Death Benefit ..................... 9,10
Amount of the Death Proceeds ......... 10
Changes in Specified Amount ........ 10,11

**NONFORFEITURE PROVISIONS**
Policy Value ....................... 11
Adjusted Policy Value ............... 12

Page

Monthly Deduction .................. 12
Cost of Insurance .................. 12
Cost of Insurance Rate .............. 12
Interest Rate ...................... 12
Termination of Insurance ............ 13
Cash Surrender Value ............... 13
Surrender Charge .................. 13
Surrender and Net Cash
Surrender Value ................... 13
Partial Withdrawal ............... 13,14
Paid-Up Insurance ................. 14
Basis of Computations .............. 14

**POLICY LOANS**
Cash Loan ........................ 15
Deferral .......................... 15
Interest and Repayment ............. 15

**SETTLEMENT OPTIONS**
General Provisions ................. 17
Death of Payee .................... 17
First Installment .................. 17
Interest .......................... 17
Option 1 — Fixed Period ............ 17
Option 2 — Life Income with
Installments Certain ............... 17
Option 3 — Interest ................ 17
Option 4 — Fixed Installments ........ 17
Option 5 — Single Premium Annuity ..... 17
Other Settlement Options ............ 17
Option 1 Table .................... 18
Option 2 Table .................... 18

2

 S C H E D U L E

BENEFITS AND PREMIUMS

FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE

First Year Premium(s)  - $145,037.00  Annually
Minimum Monthly Premium - $4,299.67    Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

INTEREST RATES

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value - On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables - Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

|  |  |  |  |
|---|---|---|---|
| Death Benefit Option | OPTION 1 | | |
| Beneficiary | AS SPECIFIED IN THE APPLICA-TION OR CHANGE OF BENEFICIARY FORM | PREFERRED (NONSMOKER) | Premium Class |
| Owner | CHLOE MARIELLE COOPER IRREV TRUST DTD 3/17/90 & LOLA LEIGH COOPER IRREV TRUST DTD 3/17/90 EQUALLY | 77M | Age Nearest Birthday |

The Beneficiary and Owner are subject to change as provided herein.

| | | | |
|---|---|---|---|
| Insured | HERMAN A COOPER | M227,250 | Policy Number |
| Initial Specified Amount | $1,600,000 | FEBRUARY 10, 1997 | Policy Date |
| Initial Premium | $145,037.00 | FEBRUARY 10, 1997 | Date of Issue |

Form No. AM-ONE-99-S                    3

Pol No M227250

S C H E D U L E   *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | $75072.00 |
| 2 | 72624.00 |
| 3 | 69040.00 |
| 4 | 65552.00 |
| 5 | 62144.00 |
| 6 | 58848.00 |
| 7 | 55696.00 |
| 8 | 52704.00 |
| 9 | 49840.00 |
| 10 | 47120.00 |
| 11 | 44464.00 |
| 12 | 41824.00 |
| 13 | 39136.00 |
| 14 | 36288.00 |
| 15 | 33168.00 |
| 16 | 29568.00 |
| 17 | 25200.00 |
| 18 | 19600.00 |
| 19 | 11920.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a
policy year and equal to the charge shown for the end of the year.  The
surrender charge is deducted from the policy value in order to determine
the cash surrender value.

3A

Pol No M227250

S C H E D U L E  *CONTINUED*

Table of Guaranteed
Maximum Mortality Rates

This Table shows the guaranteed maximum mortality rates applicable to this
Policy.  The rates shown are for the Insured's attained age and sex and the
Premium Class of this Policy.

| Attained Age | Monthly Rate Per $1,000 Of Net Amount At Risk |
|---|---|
| 77 | 6.18 |
| 78 | 6.79 |
| 79 | 7.44 |
| 80 | 8.16 |
| 81 | 8.97 |
| 82 | 9.90 |
| 83 | 10.95 |
| 84 | 12.12 |
| 85 | 13.37 |
| 86 | 14.70 |
| 87 | 16.08 |
| 88 | 17.50 |
| 89 | 18.97 |
| 90 | 20.51 |
| 91 | 22.17 |
| 92 | 23.99 |
| 93 | 26.07 |
| 94 | 28.78 |
| 95 | 32.82 |
| 96 | 39.64 |
| 97 | 53.07 |
| 98 | 83.33 |
| 99 and up | 83.33 |

3B

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:
- this Policy, including any applicable endorsements and riders;
- the original application, a copy of which was attached at issue;
- any supplemental application for a requested increase in specified amount;
- any application for reinstatement; and
- any other forms considered to be part of an application.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application. Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner. The designation of Contingent Owner is as shown in the original application or as subsequently elected by the Owner by filing written notice at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any then existing designation of Contingent Owner is revoked.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**(Continued)**

Form No. AM-ONE-99.1                    5

## GENERAL PROVISIONS (Continued)

**INCONTESTABILITY**

With respect to statements made in the original application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the Date of Issue. The Date of Issue is shown in the Schedule. With respect to statements made in a supplemental application, a requested increase in specified amount is not contestable after it has been in force during the Insured's lifetime for a period of two years after the effective date of such increase. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**MISSTATEMENT**

If the Insured's age or sex is misstated, the Company will adjust the proceeds.

If misstatement is discovered prior to the Insured's death, the Company will base future calculations of the policy value, the cash surrender value, and the minimum monthly premiums on the correct information. However, if the Insured's death occurs after misstatement is discovered but before the Company has taken a cost of insurance based on the correct information, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

If misstatement is discovered after the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

**SUICIDE**

If the Insured dies by suicide within two years after the Date of Issue, the death proceeds under this Policy will be an amount equal to:
- the premiums paid; less
- any loan against this Policy; less
- any reductions in policy value for partial withdrawals of this Policy. Reduction in policy value is defined in the Partial Withdrawal section.

If the Insured dies by suicide:
- within two years after the effective date of a requested increase in specified amount; but
- more than two years after the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:
- the monthly deductions that were deducted from the policy value; and
- the monthly deductions that would have been deducted from the policy value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the policy value. In this case, the death proceeds will be an amount equal to:
- the death benefit as defined above; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the second paragraph of the Amount of the Death Proceeds section.

6

| | |
|---|---|
| **PAYMENT OF PROCEEDS** | Proceeds means: |

Proceeds means:
- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**ANNUAL REPORT**

An annual report will be sent to the Owner. It will show:
- the policy value at the end of the preceding report period and at the end of the current report period;
- the kind and amount of the credits to, and the deductions from, the policy value during the period covered by the report;
- the expense charges deducted from any premiums received during the period covered by the report;
- the cash surrender and net cash surrender values at the end of the current report period;
- the amount of any existing policy loan at the end of the current report period; and
- the death benefit at the end of the current report period.

The report will also include other information as required by state law and regulation.

**PROJECTION OF BENEFITS AND VALUES**

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A reasonable fee may be charged for this service; however, a fee will not be charged for the first projection requested during a policy year.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Each premium after the first is payable in advance at the home office. Payment may also be made to a Company agent in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance during the Insured's lifetime.

The Owner may change the mode of premium payment with the Company's consent. Written request must be filed at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

If the death benefit is the amount provided by item b) of either Option 1 or Option 2, the Company may limit the amount of premium it will accept in excess of the amount required to keep this Policy in force.

**MINIMUM MONTHLY PREMIUMS**

The minimum monthly premium in effect on the Policy Date is shown in the Schedule. The minimum monthly premium in effect will be changed after:
- a requested increase or a requested decrease in the specified amount of this Policy;
- a change in any rating applicable to this Policy;
- a change in the cost of any rider attached to this Policy; or
- the addition or deletion of any rider.

The new monthly premium will be effective from the effective date of any of the above changes. The Owner will be notified of the new premium. The new premium will remain in effect until changed again as a result of any of the above changes.

**(Continued)**

## PREMIUM PROVISIONS (Continued)

**GRACE PERIOD**

Except as provided below, this Policy will enter the grace period if the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of a requested increase in specified amount to the fifth policy anniversary following that effective date.

When this special grace period provision applies, this Policy will enter the grace period if:
- the policy value at the beginning of a policy month is less than the monthly deduction for that month;

<div align="center">or if</div>

- the policy value at the beginning of a policy month is at least equal to the monthly deduction for that month; but
- the net cash surrender value at the beginning of that month is less than such monthly deduction; and
- the sum of the premiums paid since the measuring date, less any reductions in policy value for partial withdrawals made since that date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If no requested increases have been made, the measuring date is the Policy Date; otherwise, the measuring date is the effective date of the most recent requested increase.

After the first policy month, a grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:
- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

**REINSTATEMENT**

If this Policy has terminated as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination:
- evidence of insurability satisfactory to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest from the date of reinstatement to the next policy anniversary at the rate(s) in effect for that period.

After the application for reinstatement has been approved by the Company, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

The surrender charge on the date of reinstatement will be an amount not greater than that which existed at the time this Policy terminated as provided in the Grace Period section. The Owner will be notified of the surrender charges to be applicable upon reinstatement.

## INSURANCE PROVISIONS

**DEATH BENEFIT**  The death benefit depends on the option in effect on the date of death. The Schedule shows the option elected in the original application. The death benefit as defined below complies with the applicable sections of the Internal Revenue Code. The Company reserves the right to change the death benefit in order for this Policy to comply with any change in federal law.

### OPTION 1

The death benefit under this option is the greater of the following amounts.

    a)   The specified amount on the date of death.

    b)   An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

### OPTION 2

The death benefit under this option is the greater of the following amounts.

    a)   An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; plus
- the specified amount on the date of death.

    b)   An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75-90 | 105% |
| 48 | 197% | 62 | 126% | 91 | 104% |
| 49 | 191% | 63 | 124% | 92 | 103% |
| 50 | 185% | 64 | 122% | 93 | 102% |
| 51 | 178% | 65 | 120% | 94 | 101% |
| 52 | 171% | 66 | 119% | 95 and above | 100% |
| 53 | 164% | 67 | 118% | | |

(Continued)

To request an increase in specified amount, the Owner must:
- submit a supplemental application; and
- provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy.

A requested increase will be effective at the beginning of the policy month following Company approval.

A requested increase in specified amount will not be made effective within 12 months after the effective date of the most recent requested increase.

## NONFORFEITURE PROVISIONS

**POLICY VALUE**

The policy value on the Policy Date is equal to the net premium, if any, credited on the Policy Date. Net premium is the premium paid less the Expense Charge shown in the Schedule.

At the beginning of a policy month, other than the first policy month, the policy value is equal to:
- the policy value at the beginning of the preceding policy month; less
- the monthly deduction for the preceding policy month; plus
- one month's interest on the difference; plus
- the net premiums credited to this Policy since the beginning of the preceding policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the beginning of the current policy month; less
- the reductions in policy value for all partial withdrawals made since the beginning of the preceding policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the beginning of the current policy month; less
- the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the policy value is equal to:
- the policy value at the beginning of the policy month; less
- the monthly deduction for the policy month; plus
- interest on the difference from the beginning of the policy month to the day on which the policy value is being determined; plus
- the net premiums credited to this Policy since the beginning of the policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the day on which the policy value is being determined; less
- the reductions in policy value for all partial withdrawals made since the beginning of the policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the day on which the policy value is being determined.

**(Continued)**

## NONFORFEITURE PROVISIONS (Continued)

**ADJUSTED POLICY VALUE**

The adjusted policy value at the beginning of a policy month is equal to:
- the policy value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:
- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:
- the monthly cost of insurance rate per thousand; times
- the number of thousands of net amount at risk for that policy month.

The monthly cost of insurance rate per thousand is equal to:
- the monthly mortality rate per thousand; divided by
- the product of 1 plus the decimal equivalent of the interest rate and 1,000 minus such mortality rate.

The net amount at risk for a policy month is equal to:
- the death benefit for that policy month; less
- the adjusted policy value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The guaranteed maximum mortality rates applicable to this Policy are shown in the Schedule.

The rates for this plan will be reviewed at least once every five years to determine whether a change should be made. Any change in rate will be in accordance with procedures and standards on file with the insurance department.

**INTEREST RATE**

The guaranteed interest rates used in the calculation of the policy value are shown in the Schedule. Interest in excess of the guaranteed rates may be applied as determined by the Company, but will be credited at least once a year.

**TERMINATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the policy value; less
- any applicable surrender charges.

The cash surrender value will not be less than zero.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken with a requested decrease in specified amount. The policy value will be reduced by the amount of this charge as of the effective date of the change. The policy value will not, however, be reduced below zero. The Company will notify the Owner of the amount of the charge taken.

The surrender charge will be adjusted following a requested increase or a requested decrease in specified amount. The Owner will be notified of the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning it to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The unearned loan interest is the interest charged on the policy loan for the period after the date of surrender.

Payment may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in policy value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

**PARTIAL WITHDRAWAL**

The Owner may request a partial withdrawal provided:
- the Insured is then living; and
- this Policy is not then being continued as paid-up insurance.

Written request in a form acceptable to the Company must be filed at the home office. The minimum amount that the Owner may request as a partial withdrawal is $500.00.

The maximum amount that may be paid to the Owner is equal to the lesser of (1) and (2) below.

(1) An amount equal to the net cash surrender value on the date the partial withdrawal is made less $275.00.

(2) An amount such that the death benefit after the partial withdrawal is $25,000.

If this maximum amount is less than $500.00, a partial withdrawal will not be made.

**(Continued)**

## NONFORFEITURE PROVISIONS (Continued)

Payment to the Owner may be deferred up to six months after request is received at the home office; however, a partial withdrawal to pay premiums to the Company will not be deferred.

The policy value is reduced on the date the partial withdrawal is made by an amount referred to as the reduction in policy value. The amount of this reduction is equal to:

- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

If the death benefit option on the date the partial withdrawal is made is Option 1, the specified amount is decreased on such date by an amount not to exceed the amount of the reduction in policy value. Such decrease will be applied:

- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

A decrease in specified amount due to a partial withdrawal is not considered to be a requested decrease in specified amount.

**PAID-UP INSURANCE**

If this Policy has a positive net cash surrender value, the Owner may elect to continue it as a level amount of paid-up insurance. Written request in a form acceptable to the Company must be received at the home office. The effective date of the paid-up insurance will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount of this paid-up insurance will be that which the net cash surrender value on the effective date of the paid-up insurance will provide when applied as a net single premium at the Insured's attained age, sex, and premium class. The death benefit under this paid-up insurance will not, however, exceed:

- the amount of the death benefit under this Policy on the effective date of the paid-up insurance; plus
- the amount of the net cash surrender value applied to purchase the paid-up insurance; less
- the policy value on the effective date of the paid-up insurance.

Any net cash surrender value not used to purchase the paid-up insurance plus any unearned loan interest will be paid to the Owner in a single sum. This paid-up insurance will be payable at the same time as the insurance under this Policy and will be subject to the applicable provisions of this Policy.

This paid-up insurance may be surrendered at any time. The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is the net single premium at the Insured's attained age, sex, and premium class for any benefits remaining under such insurance, less any policy loan made after the effective date of the paid-up insurance. If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than the net cash surrender value on the anniversary, less any policy loan made since the anniversary.

**BASIS OF COMPUTATIONS**

The mortality tables and rates of interest used in calculating minimum policy values and net single premiums are shown in the Schedule.

Values are at least equal to those required by statute in the state in which this Policy was issued. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

## POLICY LOANS

**CASH LOAN**

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan while this Policy is in force.

The loan value is equal to the projected cash surrender value as of the next policy anniversary assuming a maximum loan is made. This projection assumes that no premiums are paid from the date the loan value is being determined to the next policy anniversary. For paid-up insurance, the loan value is the cash surrender value on the next policy anniversary. The amount advanced as a policy loan may not exceed:

- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the current policy year.

The first policy loan requested in a policy year and any existing policy loan may be considered as a preferred policy loan. The maximum amount of policy loan that will be considered preferred in a policy year is:

- the policy value at the beginning of that year; less
- the projected net single premium as of the beginning of that year; plus
- interest on this difference for that year at the rate applicable to preferred loans.

The net amount of preferred loan at any time during a policy year is equal to:

- the amount of preferred loan in that year; less
- the loan interest charged for the preferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of preferred loan.

The net amount of nonpreferred loan at any time during a policy year is equal to:

- the amount of nonpreferred loan in that year; less
- the loan interest charged for the nonpreferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of nonpreferred loan.

As used in this section, "projected net single premium" means the present value of projected future benefits and charges for the Policy as calculated each year based on:

- interest at a rate determined by the Company for this purpose; and
- the ultimate mortality rates then being used by the Company for this Policy.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request is received at the home office; however, a loan for payment of premiums to the Company will not be deferred.

**INTEREST AND REPAYMENT**

Interest on a loan is payable annually in advance on each policy anniversary. The Maximum Policy Loan Interest Rate is shown in the Schedule. Interest not paid when due is added to the loan and bears interest at the applicable rate(s).

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime; however, a loan that is in existence at the end of the grace period may not be repaid until this Policy is reinstated.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

**PERSONAL INFORMATION REMOVED DUE TO HIPAA CONCERNS**

## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form satisfactory to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

**(Continued)**

Form No. AM-ONE-99.7                         17

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | $506.17 | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | 341.60 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 259.33 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.65 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 |

| Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|
| 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 |
| 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 |
| 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 |
| 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 |
| 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 |
| 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 |
| 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 |
| 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 |
| 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 |
| 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 |
| 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 |
| 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 |
| 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 |
| 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 |
| 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 |
| 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 |
| 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 |
| 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 |
| 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 |
| 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 |
| 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 |
| 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 |
| 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 |
| 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 |
| 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 |
| 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 |
| 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 |
| 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 |

| Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|
| 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |

*Also applies to younger ages

**FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**
Adjustable Death Benefit Payable on Insured's Death
Premiums Payable During Insured's Lifetime
Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
Nonparticipating - No Dividends

18

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy.  Payment will be made after the following have been received at the home office:
- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery.  To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased.  Immediately upon delivery or mailing, this Policy will be deemed void from the beginning.  Any premium paid will be returned.

Signed at the home office at 125 Park Avenue, New York, New York, on the Date of Issue.

President          **NOT AN ORIGINAL**          Secretary

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

| | | |
|---|---|---|
| Insured | HERMAN A COOPER | |
| | M227251 | Policy Number |
| Initial Specified Amount | $7,400,000 | |
| | NOVEMBER 21, 1996 | Policy Date |
| Initial Premium | $1,220,000.00 | |
| | FEBRUARY 10, 1997 | Date of Issue |

Form No. AM-ONE-99

This Policy is a legal contract between the Owner and American Mayflower Life Insurance Company of New York.

READ YOUR POLICY CAREFULLY.

## TABLE OF CONTENTS

Page

**SCHEDULE** . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**GENERAL PROVISIONS**
The Contract . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Policy Date . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Owner and Beneficiary . . . . . . . . . . . . . . . . . . . 5
Change of Owner and Beneficiary . . . . . . . . . . . . 5
Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Incontestability . . . . . . . . . . . . . . . . . . . . . . . . 6
Misstatement . . . . . . . . . . . . . . . . . . . . . . . . . 6
Suicide . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Payment of Proceeds . . . . . . . . . . . . . . . . . . . . 7
Annual Report . . . . . . . . . . . . . . . . . . . . . . . . 7
Projection of Benefits
    and Values . . . . . . . . . . . . . . . . . . . . . . . . 7
Nonparticipating . . . . . . . . . . . . . . . . . . . . . . . 7

**PREMIUM PROVISIONS**
Premium Payments . . . . . . . . . . . . . . . . . . . . . 7
Minimum Monthly Premiums . . . . . . . . . . . . . . . 7
Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . 8
Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . 8

**INSURANCE PROVISIONS**
Death Benefit . . . . . . . . . . . . . . . . . . . . . . . 9,10
Amount of the Death Proceeds . . . . . . . . . . . . . 10
Changes in Specified Amount . . . . . . . . . . . 10,11

**NONFORFEITURE PROVISIONS**
Policy Value . . . . . . . . . . . . . . . . . . . . . . . . . 11
Adjusted Policy Value . . . . . . . . . . . . . . . . . . . 12

Page

Monthly Deduction . . . . . . . . . . . . . . . . . . . . . 12
Cost of Insurance . . . . . . . . . . . . . . . . . . . . . . 12
Cost of Insurance Rate . . . . . . . . . . . . . . . . . . 12
Interest Rate . . . . . . . . . . . . . . . . . . . . . . . . . 12
Termination of Insurance . . . . . . . . . . . . . . . . . 13
Cash Surrender Value . . . . . . . . . . . . . . . . . . . 13
Surrender Charge . . . . . . . . . . . . . . . . . . . . . . 13
Surrender and Net Cash
    Surrender Value . . . . . . . . . . . . . . . . . . . . 13
Partial Withdrawal . . . . . . . . . . . . . . . . . . . 13,14
Paid-Up Insurance . . . . . . . . . . . . . . . . . . . . . 14
Basis of Computations . . . . . . . . . . . . . . . . . . 14

**POLICY LOANS**
Cash Loan . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Deferral . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Interest and Repayment . . . . . . . . . . . . . . . . . 15

**SETTLEMENT OPTIONS**
General Provisions . . . . . . . . . . . . . . . . . . . . . 17
Death of Payee . . . . . . . . . . . . . . . . . . . . . . . 17
First Installment . . . . . . . . . . . . . . . . . . . . . . . 17
Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Option 1 — Fixed Period . . . . . . . . . . . . . . . . . 17
Option 2 — Life Income with
    Installments Certain . . . . . . . . . . . . . . . . . . 17
Option 3 — Interest . . . . . . . . . . . . . . . . . . . . 17
Option 4 — Fixed Installments . . . . . . . . . . . . . 17
Option 5 — Single Premium Annuity . . . . . . . . . 17
Other Settlement Options . . . . . . . . . . . . . . . . . 17
Option 1 Table . . . . . . . . . . . . . . . . . . . . . . . 18
Option 2 Table . . . . . . . . . . . . . . . . . . . . . . . 18



SCHEDULE

BENEFITS AND PREMIUMS

FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE


First Year Premium(s)  - $629,460.00  Annually
Minimum Monthly Premium - $18,634.50    Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

INTEREST RATES

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value - On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables - Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

            Death
Benefit Option  OPTION 1
                                          PREFERRED  Premium
        Beneficiary  AS SPECIFIED IN THE APPLICA-    (NONSMOKER)  Class
                     TION OR CHANGE OF BENEFICIARY
                     FORM
                                                     Age Nearest
            Owner  MICHELE GLASSBERG, ANDREW D GLASSBERG,  76M  Birthday
                   LAUREN D GLASSBERG, LAWRENCE GLASSBERG
                   & BRIAN COOPER IRREV TRUSTS DTD3/17/90

    The Beneficiary and Owner are subject to change as provided herein.

        Insured  HERMAN A COOPER                    M227,251  Policy Number

            Initial
Specified Amount  $7,400,000              NOVEMBER 21, 1996  Policy Date

    Initial Premium  $1,220,000.          FEBRUARY 10, 1997  Date of Issue

Form No. AM-ONE-99-S                3

Pol No M227251

S C H E D U L E   *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | ‡338846.00 |
| 2 | 336404.00 |
| 3 | 320198.00 |
| 4 | 304288.00 |
| 5 | 288674.00 |
| 6 | 273430.00 |
| 7 | 258704.00 |
| 8 | 244496.00 |
| 9 | 230954.00 |
| 10 | 217930.00 |
| 11 | 205202.00 |
| 12 | 192696.00 |
| 13 | 179968.00 |
| 14 | 166574.00 |
| 15 | 151922.00 |
| 16 | 135050.00 |
| 17 | 114552.00 |
| 18 | 88356.00 |
| 19 | 52688.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a
policy year and equal to the charge shown for the end of the year.  The
surrender charge is deducted from the policy value in order to determine
the cash surrender value.

3A

Pol No M227251

S C H E D U L E   *CONTINUED*

Table of Guaranteed
Maximum Mortality Rates

This Table shows the guaranteed maximum mortality rates applicable to this
Policy.  The rates shown are for the Insured's attained age and sex and the
Premium Class of this Policy.

| Attained Age | Monthly Rate Per $1,000 Of Net Amount At Risk |
|---|---|
| 76 | 5.59 |
| 77 | 6.18 |
| 78 | 6.79 |
| 79 | 7.44 |
| 80 | 8.16 |
| 81 | 8.97 |
| 82 | 9.90 |
| 83 | 10.95 |
| 84 | 12.12 |
| 85 | 13.37 |
| 86 | 14.70 |
| 87 | 16.08 |
| 88 | 17.50 |
| 89 | 18.97 |
| 90 | 20.51 |
| 91 | 22.17 |
| 92 | 23.99 |
| 93 | 26.07 |
| 94 | 28.78 |
| 95 | 32.82 |
| 96 | 39.64 |
| 97 | 53.07 |
| 98 | 83.33 |
| 99 and up | 83.33 |

3B

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:
- this Policy, including any applicable endorsements and riders;
- the original application, a copy of which was attached at issue;
- any supplemental application for a requested increase in specified amount;
- any application for reinstatement; and
- any other forms considered to be part of an application.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application. Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner. The designation of Contingent Owner is as shown in the original application or as subsequently elected by the Owner by filing written notice at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any then existing designation of Contingent Owner is revoked.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**(Continued)**

Form No. AM-ONE-99.1                5

### GENERAL PROVISIONS (Continued)

**INCONTESTABILITY**

With respect to statements made in the original application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the Date of Issue. The Date of Issue is shown in the Schedule. With respect to statements made in a supplemental application, a requested increase in specified amount is not contestable after it has been in force during the Insured's lifetime for a period of two years after the effective date of such increase. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**MISSTATEMENT**

If the Insured's age or sex is misstated, the Company will adjust the proceeds.

If misstatement is discovered prior to the Insured's death, the Company will base future calculations of the policy value, the cash surrender value, and the minimum monthly premiums on the correct information. However, if the Insured's death occurs after misstatement is discovered but before the Company has taken a cost of insurance based on the correct information, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

If misstatement is discovered after the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

**SUICIDE**

If the Insured dies by suicide within two years after the Date of Issue, the death proceeds under this Policy will be an amount equal to:
- the premiums paid; less
- any loan against this Policy; less
- any reductions in policy value for partial withdrawals of this Policy. Reduction in policy value is defined in the Partial Withdrawal section.

If the Insured dies by suicide:
- within two years after the effective date of a requested increase in specified amount; but
- more than two years after the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:
- the monthly deductions that were deducted from the policy value; and
- the monthly deductions that would have been deducted from the policy value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the policy value. In this case, the death proceeds will be an amount equal to:
- the death benefit as defined above; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the second paragraph of the Amount of the Death Proceeds section.

6

**PAYMENT OF PROCEEDS**

Proceeds means:
- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**ANNUAL REPORT**

An annual report will be sent to the Owner. It will show:
- the policy value at the end of the preceding report period and at the end of the current report period;
- the kind and amount of the credits to, and the deductions from, the policy value during the period covered by the report;
- the expense charges deducted from any premiums received during the period covered by the report;
- the cash surrender and net cash surrender values at the end of the current report period;
- the amount of any existing policy loan at the end of the current report period; and
- the death benefit at the end of the current report period.

The report will also include other information as required by state law and regulation.

**PROJECTION OF BENEFITS AND VALUES**

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A reasonable fee may be charged for this service; however, a fee will not be charged for the first projection requested during a policy year.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Each premium after the first is payable in advance at the home office. Payment may also be made to a Company agent in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance during the Insured's lifetime.

The Owner may change the mode of premium payment with the Company's consent. Written request must be filed at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

If the death benefit is the amount provided by item b) of either Option 1 or Option 2, the Company may limit the amount of premium it will accept in excess of the amount required to keep this Policy in force.

**MINIMUM MONTHLY PREMIUMS**

The minimum monthly premium in effect on the Policy Date is shown in the Schedule. The minimum monthly premium in effect will be changed after:
- a requested increase or a requested decrease in the specified amount of this Policy;
- a change in any rating applicable to this Policy;
- a change in the cost of any rider attached to this Policy; or
- the addition or deletion of any rider.

The new monthly premium will be effective from the effective date of any of the above changes. The Owner will be notified of the new premium. The new premium will remain in effect until changed again as a result of any of the above changes.

**(Continued)**

## PREMIUM PROVISIONS (Continued)

**GRACE PERIOD**

Except as provided below, this Policy will enter the grace period if the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of a requested increase in specified amount to the fifth policy anniversary following that effective date.

When this special grace period provision applies, this Policy will enter the grace period if:
- the policy value at the beginning of a policy month is less than the monthly deduction for that month;

**or if**

- the policy value at the beginning of a policy month is at least equal to the monthly deduction for that month; but
- the net cash surrender value at the beginning of that month is less than such monthly deduction; and
- the sum of the premiums paid since the measuring date, less any reductions in policy value for partial withdrawals made since that date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If no requested increases have been made, the measuring date is the Policy Date; otherwise, the measuring date is the effective date of the most recent requested increase.

After the first policy month, a grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:
- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

**REINSTATEMENT**

If this Policy has terminated as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination:
- evidence of insurability satisfactory to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest from the date of reinstatement to the next policy anniversary at the rate(s) in effect for that period.

After the application for reinstatement has been approved by the Company, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

The surrender charge on the date of reinstatement will be an amount not greater than that which existed at the time this Policy terminated as provided in the Grace Period section. The Owner will be notified of the surrender charges to be applicable upon reinstatement.

8

## INSURANCE PROVISIONS

**DEATH BENEFIT**  The death benefit depends on the option in effect on the date of death.  The Schedule shows the option elected in the original application.  The death benefit as defined below complies with the applicable sections of the Internal Revenue Code.  The Company reserves the right to change the death benefit in order for this Policy to comply with any change in federal law.

### OPTION 1

The death benefit under this option is the greater of the following amounts.

a)  The specified amount on the date of death.

b)  An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

### OPTION 2

The death benefit under this option is the greater of the following amounts.

a)  An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; plus
- the specified amount on the date of death.

b)  An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75-90 | 105% |
| 48 | 197% | 62 | 126% | 91 | 104% |
| 49 | 191% | 63 | 124% | 92 | 103% |
| 50 | 185% | 64 | 122% | 93 | 102% |
| 51 | 178% | 65 | 120% | 94 | 101% |
| 52 | 171% | 66 | 119% | 95 and | 100% |
| 53 | 164% | 67 | 118% | above | |

**(Continued)**

## INSURANCE PROVISIONS (Continued)

Subject to the Company's requirements and approval, the Owner may change the death benefit option. The option may be changed if on the date the change is to become effective the death benefit is the amount provided by item a) under either Option 1 or Option 2. Written request for the change must be filed at the home office in a form acceptable to the Company. If the change is from Option 1 to Option 2, evidence of insurability satisfactory to the Company showing that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy is also required. If on the date the change is to become effective the death benefit is the amount provided by item b) under either Option 1 or Option 2, the option may not be changed.

The change will become effective at the beginning of the policy month following Company approval. The Company will notify the Owner that the change has been made. If the change is from Option 2 to Option 1, the specified amount after the change will be equal to the specified amount before the change plus the policy value on the effective date of the change. If the change is from Option 1 to Option 2, the specified amount after the change will be equal to the specified amount before the change less the policy value on the effective date of the change. These automatic adjustments to the specified amount due to option changes are not considered to be requested increases or requested decreases in specified amount.

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
* the death benefit as defined in the Death Benefit section; plus
* any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
* the amount of any policy loan.

The amount paid will also be adjusted due to:
* misstatement as explained in the Misstatement section;
* a successful contest of this Policy; and/or
* death during the grace period.

If the Insured dies by suicide, the amount of the death proceeds may be determined in accordance with the Suicide section.

**CHANGES IN SPECIFIED AMOUNT**

The Owner may request a change in specified amount at any time after the first policy year. Written request for change must be:
* filed at the home office; and
* in a form acceptable to the Company.
Only changes in specified amount made in accordance with this section are considered to be requested increases or requested decreases in specified amount.

A requested decrease in specified amount will be effective at the beginning of the policy month following Company approval. A requested decrease is applied:
* first, to reduce the amount provided by the most recent increase;
* next, to reduce the next most recent increases successively;
* finally, to reduce the Initial Specified Amount.
A surrender charge for the requested decrease will be deducted from the policy value on the effective date of such decrease. After the decrease, the specified amount cannot be less than the minimum required by Company rules.

(Continued)

To request an increase in specified amount, the Owner must:
- submit a supplemental application; and
- provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy.

A requested increase will be effective at the beginning of the policy month following Company approval.

A requested increase in specified amount will not be made effective within 12 months after the effective date of the most recent requested increase.

## NONFORFEITURE PROVISIONS

**POLICY VALUE**

The policy value on the Policy Date is equal to the net premium, if any, credited on the Policy Date. Net premium is the premium paid less the Expense Charge shown in the Schedule.

At the beginning of a policy month, other than the first policy month, the policy value is equal to:
- the policy value at the beginning of the preceding policy month; less
- the monthly deduction for the preceding policy month; plus
- one month's interest on the difference; plus
- the net premiums credited to this Policy since the beginning of the preceding policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the beginning of the current policy month; less
- the reductions in policy value for all partial withdrawals made since the beginning of the preceding policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the beginning of the current policy month; less
- the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the policy value is equal to:
- the policy value at the beginning of the policy month; less
- the monthly deduction for the policy month; plus
- interest on the difference from the beginning of the policy month to the day on which the policy value is being determined; plus
- the net premiums credited to this Policy since the beginning of the policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the day on which the policy value is being determined; less
- the reductions in policy value for all partial withdrawals made since the beginning of the policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the day on which the policy value is being determined.

**(Continued)**

## NONFORFEITURE PROVISIONS (Continued)

**ADJUSTED POLICY VALUE**

The adjusted policy value at the beginning of a policy month is equal to:
- the policy value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:
- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:
- the monthly cost of insurance rate per thousand; times
- the number of thousands of net amount at risk for that policy month.

The monthly cost of insurance rate per thousand is equal to:
- the monthly mortality rate per thousand; divided by
- the product of 1 plus the decimal equivalent of the interest rate and 1,000 minus such mortality rate.

The net amount at risk for a policy month is equal to:
- the death benefit for that policy month; less
- the adjusted policy value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The guaranteed maximum mortality rates applicable to this Policy are shown in the Schedule.

The rates for this plan will be reviewed at least once every five years to determine whether a change should be made. Any change in rate will be in accordance with procedures and standards on file with the insurance department.

**INTEREST RATE**

The guaranteed interest rates used in the calculation of the policy value are shown in the Schedule. Interest in excess of the guaranteed rates may be applied as determined by the Company, but will be credited at least once a year.

**TERMINATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the policy value; less
- any applicable surrender charges.

The cash surrender value will not be less than zero.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken with a requested decrease in specified amount. The policy value will be reduced by the amount of this charge as of the effective date of the change. The policy value will not, however, be reduced below zero. The Company will notify the Owner of the amount of the charge taken.

The surrender charge will be adjusted following a requested increase or a requested decrease in specified amount. The Owner will be notified of the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning it to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The unearned loan interest is the interest charged on the policy loan for the period after the date of surrender.

Payment may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in policy value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

**PARTIAL WITHDRAWAL**

The Owner may request a partial withdrawal provided:
- the Insured is then living; and
- this Policy is not then being continued as paid-up insurance.

Written request in a form acceptable to the Company must be filed at the home office. The minimum amount that the Owner may request as a partial withdrawal is $500.00.

The maximum amount that may be paid to the Owner is equal to the lesser of (1) and (2) below.

(1) An amount equal to the net cash surrender value on the date the partial withdrawal is made less $275.00.

(2) An amount such that the death benefit after the partial withdrawal is $25,000.

If this maximum amount is less than $500.00, a partial withdrawal will not be made.

**(Continued)**

Form No. AM-ONE-99.5                    13

**NONFORFEITURE PROVISIONS (Continued)**

Payment to the Owner may be deferred up to six months after request is received at the home office; however, a partial withdrawal to pay premiums to the Company will not be deferred.

The policy value is reduced on the date the partial withdrawal is made by an amount referred to as the reduction in policy value. The amount of this reduction is equal to:
- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

If the death benefit option on the date the partial withdrawal is made is Option 1, the specified amount is decreased on such date by an amount not to exceed the amount of the reduction in policy value. Such decrease will be applied:
- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

A decrease in specified amount due to a partial withdrawal is not considered to be a requested decrease in specified amount.

**PAID-UP INSURANCE**

If this Policy has a positive net cash surrender value, the Owner may elect to continue it as a level amount of paid-up insurance. Written request in a form acceptable to the Company must be received at the home office. The effective date of the paid-up insurance will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount of this paid-up insurance will be that which the net cash surrender value on the effective date of the paid-up insurance will provide when applied as a net single premium at the Insured's attained age, sex, and premium class. The death benefit under this paid-up insurance will not, however, exceed:
- the amount of the death benefit under this Policy on the effective date of the paid-up insurance; plus
- the amount of the net cash surrender value applied to purchase the paid-up insurance; less
- the policy value on the effective date of the paid-up insurance.

Any net cash surrender value not used to purchase the paid-up insurance plus any unearned loan interest will be paid to the Owner in a single sum. This paid-up insurance will be payable at the same time as the insurance under this Policy and will be subject to the applicable provisions of this Policy.

This paid-up insurance may be surrendered at any time. The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is the net single premium at the Insured's attained age, sex, and premium class for any benefits remaining under such insurance, less any policy loan made after the effective date of the paid-up insurance. If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than the net cash surrender value on the anniversary, less any policy loan made since the anniversary.

**BASIS OF COMPUTATIONS**

The mortality tables and rates of interest used in calculating minimum policy values and net single premiums are shown in the Schedule.

Values are at least equal to those required by statute in the state in which this Policy was issued. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

14

## POLICY LOANS

**CASH LOAN**

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan while this Policy is in force.

The loan value is equal to the projected cash surrender value as of the next policy anniversary assuming a maximum loan is made. This projection assumes that no premiums are paid from the date the loan value is being determined to the next policy anniversary. For paid-up insurance, the loan value is the cash surrender value on the next policy anniversary. The amount advanced as a policy loan may not exceed:
* the loan value; less
* the amount of any existing loan; less
* loan interest to the end of the current policy year.

The first policy loan requested in a policy year and any existing policy loan may be considered as a preferred policy loan. The maximum amount of policy loan that will be considered preferred in a policy year is:
* the policy value at the beginning of that year; less
* the projected net single premium as of the beginning of that year; plus
* interest on this difference for that year at the rate applicable to preferred loans.

The net amount of preferred loan at any time during a policy year is equal to:
* the amount of preferred loan in that year; less
* the loan interest charged for the preferred loan in that year; plus
* the interest credited to the portion of the policy value equal to the net amount of preferred loan.

The net amount of nonpreferred loan at any time during a policy year is equal to:
* the amount of nonpreferred loan in that year; less
* the loan interest charged for the nonpreferred loan in that year; plus
* the interest credited to the portion of the policy value equal to the net amount of nonpreferred loan.

As used in this section, "projected net single premium" means the present value of projected future benefits and charges for the Policy as calculated each year based on:
* interest at a rate determined by the Company for this purpose; and
* the ultimate mortality rates then being used by the Company for this Policy.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request is received at the home office; however, a loan for payment of premiums to the Company will not be deferred.

**INTEREST AND REPAYMENT**

Interest on a loan is payable annually in advance on each policy anniversary. The Maximum Policy Loan Interest Rate is shown in the Schedule. Interest not paid when due is added to the loan and bears interest at the applicable rate(s).

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime; however, a loan that is in existence at the end of the grace period may not be repaid until this Policy is reinstated.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

Form No. AM-ONE-99.6                              15

**PERSONAL INFORMATION REMOVED DUE TO HIPAA CONCERNS**

## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form satisfactory to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

(Continued)

Form No. AM-ONE-99.7                    17

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | | $503.09 | $252.32 | $84.28 | 6 | $177.12 | | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | $506.17 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Male | Female | 60 | 120 | 180 | 240 | Male | Female | 60 | 120 | 180 | 240 | Male | Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10" | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.51 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

**FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY**
Adjustable Death Benefit Payable on Insured's Death
Premiums Payable During Insured's Lifetime
Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
Nonparticipating - No Dividends

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy.  Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Initial Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery.  To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased.  Immediately upon delivery or mailing, this Policy will be deemed void from the beginning.  Any premium paid will be returned.

Signed at the home office at 125 Park Avenue, New York, New York, on the Date of Issue.

*President*              **NOT AN ORIGINAL**              *Secretary*

## FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

| | | | |
|---|---|---|---|
| Insured | HERMAN A COOPER | M235733 | Policy Number |
| Initial Specified Amount | $3,000,000 | NOVEMBER  1, 1997 | Policy Date |
| Initial Premium | $300,000.00 | NOVEMBER 13, 1997 | Date of Issue |

Form No. AM-ONE-99

This Policy is a legal contract between the Owner and American Mayflower Life Insurance Company of New York.

READ YOUR POLICY CAREFULLY.

# TABLE OF CONTENTS

Page

**SCHEDULE** .............................. 3

**GENERAL PROVISIONS**
The Contract  ........................  5
Policy Date  ..........................  5
Owner and Beneficiary  ...............  5
Change of Owner and Beneficiary  ......  5
Assignment  ...........................  5
Incontestability  .....................  6
Misstatement  .........................  6
Suicide  ..............................  6
Payment of Proceeds  ..................  7
Annual Report  ........................  7
Projection of Benefits
   and Values  ........................  7
Nonparticipating  .....................  7

**PREMIUM PROVISIONS**
Premium Payments  .....................  7
Minimum Monthly Premiums  .............  7
Grace Period  .........................  8
Reinstatement  ........................  8

**INSURANCE PROVISIONS**
Death Benefit  ......................  9,10
Amount of the Death Proceeds  .........  10
Changes in Specified Amount  ........  10,11

**NONFORFEITURE PROVISIONS**
Policy Value  .........................  11
Adjusted Policy Value  ................  12

Page

Monthly Deduction  ....................  12
Cost of Insurance  ....................  12
Cost of Insurance Rate  ...............  12
Interest Rate  ........................  12
Termination of Insurance  .............  13
Cash Surrender Value  .................  13
Surrender Charge  .....................  13
Surrender and Net Cash
   Surrender Value  ...................  13
Partial Withdrawal  ................  13,14
Paid-Up Insurance  ....................  14
Basis of Computations  ................  14

**POLICY LOANS**
Cash Loan  ............................  15
Deferral  .............................  15
Interest and Repayment  ...............  15

**SETTLEMENT OPTIONS**
General Provisions  ...................  17
Death of Payee  .......................  17
First Installment  ....................  17
Interest  .............................  17
Option 1 — Fixed Period  ..............  17
Option 2 — Life Income with
   Installments Certain  ..............  17
Option 3 — Interest  ..................  17
Option 4 — Fixed Installments  ........  17
Option 5 — Single Premium Annuity  ....  17
Other Settlement Options  .............  17
Option 1 Table  .......................  18
Option 2 Table  .......................  18

2



# SCHEDULE

## BENEFITS AND PREMIUMS

### FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE

First Year Premium(s)   - $300,000.00   Annually
Minimum Monthly Premium - $10,417.50      Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

### INTEREST RATES

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value - On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables - Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

Death
Benefit Option   OPTION 1
                                                   STANDARD   Premium
      Beneficiary   AS SPECIFIED IN THE APPLICA-   (NONSMOKER)   Class
                    TION OR CHANGE OF BENEFICIARY
                    FORM
                                                            Age Nearest
         Owner   IRREVOCABLE FAMILY TRUSTS(6 TRUSTS)    77M   Birthday
                 OF HERMAN A COOPER DATED 3/17/90

The Beneficiary and Owner are subject to change as provided herein.

         Insured   HERMAN A COOPER                   N235,733   Policy Number

         Initial
Specified Amount   $3,000,000            NOVEMBER 1, 1997   Policy Date

Initial Premium   $300,000.00            NOVEMBER 13, 1997   Date of Issue

Form No. AM-ONE-99-S                    3

Pol No M235733

S C H E D U L E   *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | #143010.00 |
| 2 | 136170.00 |
| 3 | 129450.00 |
| 4 | 122910.00 |
| 5 | 116520.00 |
| 6 | 110340.00 |
| 7 | 104430.00 |
| 8 | 98820.00 |
| 9 | 93450.00 |
| 10 | 88350.00 |
| 11 | 83370.00 |
| 12 | 78420.00 |
| 13 | 73380.00 |
| 14 | 68040.00 |
| 15 | 62190.00 |
| 16 | 55440.00 |
| 17 | 47250.00 |
| 18 | 36750.00 |
| 19 | 22350.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a policy year and equal to the charge shown for the end of the year.  The surrender charge is deducted from the policy value in order to determine the cash surrender value.

3A

 **S C H E D U L E**

**BENEFITS AND PREMIUMS**

**FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE**

First Year Premium(s)   - $300,000.00  Annually
Minimum Monthly Premium - $10,417.50    Payment of this premium may not pre-
vent lapse during the first five policy years (see the Grace Period section).

Expense Charge - 7% of each premium received

Monthly Administrative Fee - $4.65 per month

Administrative Fee for Partial Withdrawal - $25.00

**INTEREST RATES**

Policy Value - On the portion of the policy value in excess of the net amount
of policy loan, 4% a year, compounded annually

Net Single Premium - 4% a year, compounded annually

Loaned Policy Value - On the portion of the policy value equal to the net
amount of preferred loan, a rate equal to the effective policy loan interest
rate for preferred loans.  On the portion of the policy value equal to the
net amount of nonpreferred loan, a rate two percentage points less than the
effective policy loan interest rate for nonpreferred loans.

Maximum Policy Loan Interest Rate - 5.66% a year, payable in advance

Mortality Tables - Commissioners 1980 Standard Ordinary Smoker or Nonsmoker
Mortality Table, Sex Distinct, Age Nearest Birthday

This Policy may terminate if premiums are paid and those premiums plus credited
interest are insufficient to continue it in force.  Current interest and cost
of insurance rates are subject to change; therefore, amounts based on these
rates are not guaranteed.  A change in these rates may require payment of
premiums higher than illustrated or result in policy values or benefits lower
than illustrated.  The guaranteed rates are shown in this Schedule.

|  |  |  |  |
|---|---|---|---|
| **Death Benefit Option** | OPTION 1 |  |  |
|  |  | **STANDARD** | **Premium** |
| **Beneficiary** | AS SPECIFIED IN THE APPLICA- | **(NONSMOKER)** | **Class** |
|  | TION OR CHANGE OF BENEFICIARY FORM |  |  |
|  |  |  | **Age Nearest** |
| **Owner** | IRREVOCABLE FAMILY TRUSTS(6 TRUSTS) | 77M | **Birthday** |
|  | OF HERMAN A COOPER DATED 3/17/90 |  |  |

The Beneficiary and Owner are subject to change as provided herein.

Insured  HERMAN A COOPER                     M235,733  Policy Number

Initial
Specified Amount  $3,000,000          NOVEMBER 1, 1997  Policy Date

Initial Premium  $300,000.00          NOVEMBER 13, 1997  Date of Issue

Form No. AM-ONE-99-S                  3

Pol No M235733

S C H E D U L E   *CONTINUED*

Surrender Charge for Initial Specified Amount

| End Of Policy Year | Surrender Charge |
|---|---|
| 1 | *143010.00 |
| 2 | 136170.00 |
| 3 | 129450.00 |
| 4 | 122910.00 |
| 5 | 116520.00 |
| 6 | 110340.00 |
| 7 | 104430.00 |
| 8 | 98820.00 |
| 9 | 93450.00 |
| 10 | 88350.00 |
| 11 | 83370.00 |
| 12 | 78420.00 |
| 13 | 73380.00 |
| 14 | 68040.00 |
| 15 | 62190.00 |
| 16 | 55440.00 |
| 17 | 47250.00 |
| 18 | 36750.00 |
| 19 | 22350.00 |
| 20 and thereafter | .00 |

The surrender charge for the Initial Specified Amount is level during a policy year and equal to the charge shown for the end of the year.  The surrender charge is deducted from the policy value in order to determine the cash surrender value.

3A

(Page 4 of 15)

(Page 5 of 15)

Pol No M235733

S C H E D U L E  *CONTINUED*

Table of Guaranteed
Maximum Mortality Rates

This Table shows the guaranteed maximum mortality rates applicable to this
Policy.  The rates shown are for the Insured's attained age and sex and the
Premium Class of this Policy.

| Attained Age | Monthly Rate Per $1,000 Of Net Amount At Risk |
|---|---|
| 77 | 6.18 |
| 78 | 6.79 |
| 79 | 7.44 |
| 80 | 8.16 |
| 81 | 8.97 |
| 82 | 9.90 |
| 83 | 10.95 |
| 84 | 12.12 |
| 85 | 13.37 |
| 86 | 14.70 |
| 87 | 16.08 |
| 88 | 17.50 |
| 89 | 18.97 |
| 90 | 20.51 |
| 91 | 22.17 |
| 92 | 23.99 |
| 93 | 26.07 |
| 94 | 28.78 |
| 95 | 32.82 |
| 96 | 39.64 |
| 97 | .53.07 |
| 98 | 83.33 |
| 99 and up | 83.33 |

3B

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of:
- this Policy, including any applicable endorsements and riders;
- the original application, a copy of which was attached at issue;
- any supplemental application for a requested increase in specified amount;
- any application for reinstatement; and
- any other forms considered to be part of an application.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application. Only the President, a Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, and policy months are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary in the Schedule remain in effect until changed by the Owner. The designation of Contingent Owner is as shown in the original application or as subsequently elected by the Owner by filing written notice at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If no beneficiary survives at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any then existing designation of Contingent Owner is revoked.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be filed at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**(Continued)**

## GENERAL PROVISIONS (Continued)

**INCONTESTABILITY**
With respect to statements made in the original application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the Date of Issue. The Date of Issue is shown in the Schedule. With respect to statements made in a supplemental application, a requested increase in specified amount is not contestable after it has been in force during the Insured's lifetime for a period of two years after the effective date of such increase. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years after the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**MISSTATEMENT**
If the Insured's age or sex is misstated, the Company will adjust the proceeds.

If misstatement is discovered prior to the Insured's death, the Company will base future calculations of the policy value, the cash surrender value, and the minimum monthly premiums on the correct information. However, if the Insured's death occurs after misstatement is discovered but before the Company has taken a cost of insurance based on the correct information, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

If misstatement is discovered after the Insured's death, the death benefit will be adjusted to the amount that the most recent cost of insurance will purchase based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

**SUICIDE**
If the Insured dies by suicide within two years after the Date of Issue, the death proceeds under this Policy will be an amount equal to:
- the premiums paid; less
- any loan against this Policy; less
- any reductions in policy value for partial withdrawals of this Policy. Reduction in policy value is defined in the Partial Withdrawal section.

If the Insured dies by suicide:
- within two years after the effective date of a requested increase in specified amount; but
- more than two years after the Date of Issue;

the death benefit will be calculated as if that increase had not occurred. It will be equal to the death benefit as defined in the Death Benefit section, plus the accumulated difference between:
- the monthly deductions that were deducted from the policy value; and
- the monthly deductions that would have been deducted from the policy value assuming the increase had not occurred.

The accumulation is made at the rates of interest credited to the policy value. In this case, the death proceeds will be an amount equal to:
- the death benefit as defined above; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- any policy loan.

These proceeds may also be adjusted as explained in the second paragraph of the Amount of the Death Proceeds section.

**PAYMENT OF PROCEEDS**

Proceeds means:
- the amount payable on the Insured's death; or
- the amount payable on surrender of this Policy.

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**ANNUAL REPORT**

An annual report will be sent to the Owner. It will show:
- the policy value at the end of the preceding report period and at the end of the current report period;
- the kind and amount of the credits to, and the deductions from, the policy value during the period covered by the report;
- the expense charges deducted from any premiums received during the period covered by the report;
- the cash surrender and net cash surrender values at the end of the current report period;
- the amount of any existing policy loan at the end of the current report period; and
- the death benefit at the end of the current report period.

The report will also include other information as required by state law and regulation.

**PROJECTION OF BENEFITS AND VALUES**

The Owner may request a projection of illustrative future death benefits and cash surrender values. The request must be in writing to the home office. A reasonable fee may be charged for this service; however, a fee will not be charged for the first projection requested during a policy year.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Each premium after the first is payable in advance at the home office. Payment may also be made to a Company agent in exchange for a receipt signed by the President or Secretary of the Company and countersigned by the agent.

Each premium after the first is payable in advance during the Insured's lifetime.

The Owner may change the mode of premium payment with the Company's consent. Written request must be filed at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

If the death benefit is the amount provided by item b) of either Option 1 or Option 2, the Company may limit the amount of premium it will accept in excess of the amount required to keep this Policy in force.

**MINIMUM MONTHLY PREMIUMS**

The minimum monthly premium in effect on the Policy Date is shown in the Schedule. The minimum monthly premium in effect will be changed after:
- a requested increase or a requested decrease in the specified amount of this Policy;
- a change in any rating applicable to this Policy;
- a change in the cost of any rider attached to this Policy; or
- the addition or deletion of any rider.

The new monthly premium will be effective from the effective date of any of the above changes. The Owner will be notified of the new premium. The new premium will remain in effect until changed again as a result of any of the above changes.

**(Continued)**

Form No. AM-ONE-99.2                                    7

## PREMIUM PROVISIONS (Continued)

**GRACE PERIOD**

Except as provided below, this Policy will enter the grace period if the net cash surrender value at the beginning of a policy month is less than the monthly deduction for that month.

A special grace period provision applies:
- during the first five policy years; and
- during the period from the effective date of a requested increase in specified amount to the fifth policy anniversary following that effective date.

When this special grace period provision applies, this Policy will enter the grace period if:
- the policy value at the beginning of a policy month is less than the monthly deduction for that month;

**or if**

- the policy value at the beginning of a policy month is at least equal to the monthly deduction for that month; but
- the net cash surrender value at the beginning of that month is less than such monthly deduction; and
- the sum of the premiums paid since the measuring date, less any reductions in policy value for partial withdrawals made since that date, is less than the sum of the minimum monthly premiums due from the measuring date to the end of the current policy month. If no requested increases have been made, the measuring date is the Policy Date; otherwise, the measuring date is the effective date of the most recent requested increase.

After the first policy month, a grace period of 62 days is provided under this Policy. This Policy and all riders will stay in force during a grace period. Notice of the premium required to continue this Policy in force will be mailed to the Owner and to any assignee of record at their last known addresses. If the premium is not paid within the grace period, this Policy will terminate without value on the later of:
- thirty-one days after the notice is mailed; and
- the end of the grace period.

If the Insured dies before this Policy terminates, the premium required to keep it in force to the end of the policy month of death will be deducted from the proceeds.

**REINSTATEMENT**

If this Policy has terminated as provided in the Grace Period section, the Owner may request reinstatement of this Policy. The following must be received at the home office within five years after the date of termination:
- evidence of insurability satisfactory to the Company;
- payment of a premium that will keep this Policy in force for at least two policy months; and
- payment or reinstatement of any policy loan including interest from the date of reinstatement to the next policy anniversary at the rate(s) in effect for that period.

After the application for reinstatement has been approved by the Company, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

The surrender charge on the date of reinstatement will be an amount not greater than that which existed at the time this Policy terminated as provided in the Grace Period section. The Owner will be notified of the surrender charges to be applicable upon reinstatement.

### INSURANCE PROVISIONS

**DEATH BENEFIT**

The death benefit depends on the option in effect on the date of death. The Schedule shows the option elected in the original application. The death benefit as defined below complies with the applicable sections of the Internal Revenue Code. The Company reserves the right to change the death benefit in order for this Policy to comply with any change in federal law.

### OPTION 1

The death benefit under this option is the greater of the following amounts.

a) The specified amount on the date of death.

b) An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

### OPTION 2

The death benefit under this option is the greater of the following amounts.

a) An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; plus
- the specified amount on the date of death.

b) An amount equal to:
- the adjusted policy value at the beginning of the policy month of death; less
- the cost of insurance for that month; plus
- interest on the difference from the beginning of that month to the end of that month; times
- the percentage shown in the Table below for the Insured's attained age on the policy anniversary on or immediately prior to the date of death.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|---|---|
| 0–40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75–90 | 105% |
| 48 | 197% | 62 | 126% | 91 | 104% |
| 49 | 191% | 63 | 124% | 92 | 103% |
| 50 | 185% | 64 | 122% | 93 | 102% |
| 51 | 178% | 65 | 120% | 94 | 101% |
| 52 | 171% | 66 | 119% | 95 and above | 100% |
| 53 | 164% | 67 | 118% | | |

**(Continued)**

**INSURANCE PROVISIONS (Continued)**

Subject to the Company's requirements and approval, the Owner may change the death benefit option. The option may be changed if on the date the change is to become effective the death benefit is the amount provided by item a) under either Option 1 or Option 2. Written request for the change must be filed at the home office in a form acceptable to the Company. If the change is from Option 1 to Option 2, evidence of insurability satisfactory to the Company showing that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy is also required. If on the date the change is to become effective the death benefit is the amount provided by item b) under either Option 1 or Option 2, the option may not be changed.

The change will become effective at the beginning of the policy month following Company approval. The Company will notify the Owner that the change has been made. If the change is from Option 2 to Option 1, the specified amount after the change will be equal to the specified amount before the change plus the policy value on the effective date of the change. If the change is from Option 1 to Option 2, the specified amount after the change will be equal to the specified amount before the change less the policy value on the effective date of the change. These automatic adjustments to the specified amount due to option changes are not considered to be requested increases or requested decreases in specified amount.

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
- the death benefit as defined in the Death Benefit section; plus
- any premiums received at the home office after the Company has taken the monthly deduction for the policy month of death; less
- the amount of any policy loan.

The amount paid will also be adjusted due to:
- misstatement as explained in the Misstatement section;
- a successful contest of this Policy; and/or
- death during the grace period.

If the Insured dies by suicide, the amount of the death proceeds may be determined in accordance with the Suicide section.

**CHANGES IN SPECIFIED AMOUNT**

The Owner may request a change in specified amount at any time after the first policy year. Written request for change must be:
- filed at the home office; and
- in a form acceptable to the Company.

Only changes in specified amount made in accordance with this section are considered to be requested increases or requested decreases in specified amount.

A requested decrease in specified amount will be effective at the beginning of the policy month following Company approval. A requested decrease is applied:
- first, to reduce the amount provided by the most recent increase;
- next, to reduce the next most recent increases successively;
- finally, to reduce the Initial Specified Amount.

A surrender charge for the requested decrease will be deducted from the policy value on the effective date of such decrease. After the decrease, the specified amount cannot be less than the minimum required by Company rules.

**(Continued)**

10

To request an increase in specified amount, the Owner must:
- submit a supplemental application; and
- provide evidence of the insurability of the Insured acceptable to the Company. Such evidence must show that the Insured is still insurable at the Premium Class and rating, if any, applicable to this Policy.

A requested increase will be effective at the beginning of the policy month following Company approval.

A requested increase in specified amount will not be made effective within 12 months after the effective date of the most recent requested increase.

## NONFORFEITURE PROVISIONS

**POLICY VALUE**

The policy value on the Policy Date is equal to the net premium, if any, credited on the Policy Date. Net premium is the premium paid less the Expense Charge shown in the Schedule.

At the beginning of a policy month, other than the first policy month, the policy value is equal to:
- the policy value at the beginning of the preceding policy month; less
- the monthly deduction for the preceding policy month; plus
- one month's interest on the difference; plus
- the net premiums credited to this Policy since the beginning of the preceding policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the beginning of the current policy month; less
- the reductions in policy value for all partial withdrawals made since the beginning of the preceding policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the beginning of the current policy month; less
- the surrender charge taken for any change which is effective at the beginning of the policy month as provided in the Surrender Charge section.

On any other day the policy value is equal to:
- the policy value at the beginning of the policy month; less
- the monthly deduction for the policy month; plus
- interest on the difference from the beginning of the policy month to the day on which the policy value is being determined; plus
- the net premiums credited to this Policy since the beginning of the policy month; plus
- interest on each of these net premiums from the day each was credited to this Policy to the day on which the policy value is being determined; less
- the reductions in policy value for all partial withdrawals made since the beginning of the policy month; less
- interest on each reduction from the date each of these partial withdrawals was made to the day on which the policy value is being determined.

**(Continued)**

Form No. AM-ONE-99.4                                    11

## NONFORFEITURE PROVISIONS (Continued)

**ADJUSTED POLICY VALUE**

The adjusted policy value at the beginning of a policy month is equal to:
- the policy value at the beginning of the policy month; less
- the cost of riders for that policy month; less
- the Monthly Administrative Fee shown in the Schedule.

**MONTHLY DEDUCTION**

The monthly deduction for a policy month includes:
- the cost of insurance for the policy month;
- the cost of riders for the policy month; and
- the Monthly Administrative Fee shown in the Schedule.

**COST OF INSURANCE**

The cost of insurance for a policy month is equal to:
- the monthly cost of insurance rate per thousand; times
- the number of thousands of net amount at risk for that policy month.

The monthly cost of insurance rate per thousand is equal to:
- the monthly mortality rate per thousand; divided by
- the product of 1 plus the decimal equivalent of the interest rate and 1,000 minus such mortality rate.

The net amount at risk for a policy month is equal to:
- the death benefit for that policy month; less
- the adjusted policy value at the beginning of the policy month accumulated with interest to the end of the month.

**COST OF INSURANCE RATE**

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The guaranteed maximum mortality rates applicable to this Policy are shown in the Schedule.

The rates for this plan will be reviewed at least once every five years to determine whether a change should be made. Any change in rate will be in accordance with procedures and standards on file with the insurance department.

**INTEREST RATE**

The guaranteed interest rates used in the calculation of the policy value are shown in the Schedule. Interest in excess of the guaranteed rates may be applied as determined by the Company, but will be credited at least once a year.

**TERMINATION OF INSURANCE**

This Policy and all riders will continue in force until the premiums paid plus credited interest are insufficient to keep them in force. This Policy and all riders will then terminate as provided in the Grace Period section.

**CASH SURRENDER VALUE**

The cash surrender value is equal to:
- the policy value; less
- any applicable surrender charges.

The cash surrender value will not be less than zero.

**SURRENDER CHARGE**

A charge will be taken upon surrender of this Policy. The surrender charge applicable for the Initial Specified Amount is shown in the Schedule.

A surrender charge will also be taken with a requested decrease in specified amount. The policy value will be reduced by the amount of this charge as of the effective date of the change. The policy value will not, however, be reduced below zero. The Company will notify the Owner of the amount of the charge taken.

The surrender charge will be adjusted following a requested increase or a requested decrease in specified amount. The Owner will be notified of the new surrender charge. The new charge will be effective as of the effective date of the change.

**SURRENDER AND NET CASH SURRENDER VALUE**

The Owner may surrender this Policy by:
- returning it to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The unearned loan interest is the interest charged on the policy loan for the period after the date of surrender.

Payment may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary; less
- the reduction in policy value for any partial withdrawal made since the anniversary.

This Policy will terminate as of the date of surrender.

**PARTIAL WITHDRAWAL**

The Owner may request a partial withdrawal provided:
- the Insured is then living; and
- this Policy is not then being continued as paid-up insurance.

Written request in a form acceptable to the Company must be filed at the home office. The minimum amount that the Owner may request as a partial withdrawal is $500.00.

The maximum amount that may be paid to the Owner is equal to the lesser of (1) and (2) below.

(1) An amount equal to the net cash surrender value on the date the partial withdrawal is made less $275.00.

(2) An amount such that the death benefit after the partial withdrawal is $25,000.

If this maximum amount is less than $500.00, a partial withdrawal will not be made.

**(Continued)**

Form No. AM-ONE-99.5                    13

## NONFORFEITURE PROVISIONS (Continued)

Payment to the Owner may be deferred up to six months after request is received at the home office; however, a partial withdrawal to pay premiums to the Company will not be deferred.

The policy value is reduced on the date the partial withdrawal is made by an amount referred to as the reduction in policy value. The amount of this reduction is equal to:
- the amount paid to the Owner; plus
- the Administrative Fee for Partial Withdrawal shown in the Schedule.

If the death benefit option on the date the partial withdrawal is made is Option 1, the specified amount is decreased on such date by an amount not to exceed the amount of the reduction in policy value. Such decrease will be applied:
- first, to reduce the Initial Specified Amount;
- next, to reduce all increases, starting with the first, in the order of such increases;
- finally, to reduce the amount provided by the most recent increase.

A decrease in specified amount due to a partial withdrawal is not considered to be a requested decrease in specified amount.

**PAID-UP INSURANCE**

If this Policy has a positive net cash surrender value, the Owner may elect to continue it as a level amount of paid-up insurance. Written request in a form acceptable to the Company must be received at the home office. The effective date of the paid-up insurance will be the beginning of the policy month following receipt of such request provided the Insured is then living.

The amount of this paid-up insurance will be that which the net cash surrender value on the effective date of the paid-up insurance will provide when applied as a net single premium at the Insured's attained age, sex, and premium class. The death benefit under this paid-up insurance will not, however, exceed:
- the amount of the death benefit under this Policy on the effective date of the paid-up insurance; plus
- the amount of the net cash surrender value applied to purchase the paid-up insurance; less
- the policy value on the effective date of the paid-up insurance.

Any net cash surrender value not used to purchase the paid-up insurance plus any unearned loan interest will be paid to the Owner in a single sum. This paid-up insurance will be payable at the same time as the insurance under this Policy and will be subject to the applicable provisions of this Policy.

This paid-up insurance may be surrendered at any time. The amount which will be paid on surrender is the net cash surrender value plus any unearned loan interest. The net cash surrender value is the net single premium at the Insured's attained age, sex, and premium class for any benefits remaining under such insurance, less any policy loan made after the effective date of the paid-up insurance. If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than the net cash surrender value on the anniversary, less any policy loan made since the anniversary.

**BASIS OF COMPUTATIONS**

The mortality tables and rates of interest used in calculating minimum policy values and net single premiums are shown in the Schedule.

Values are at least equal to those required by statute in the state in which this Policy was issued. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

14

## POLICY LOANS

**CASH LOAN**

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan while this Policy is in force.

The loan value is equal to the projected cash surrender value as of the next policy anniversary assuming a maximum loan is made. This projection assumes that no premiums are paid from the date the loan value is being determined to the next policy anniversary. For paid-up insurance, the loan value is the cash surrender value on the next policy anniversary. The amount advanced as a policy loan may not exceed:

- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the current policy year.

The first policy loan requested in a policy year and any existing policy loan may be considered as a preferred policy loan. The maximum amount of policy loan that will be considered preferred in a policy year is:

- the policy value at the beginning of that year; less
- the projected net single premium as of the beginning of that year; plus
- interest on this difference for that year at the rate applicable to preferred loans.

The net amount of preferred loan at any time during a policy year is equal to:

- the amount of preferred loan in that year; less
- the loan interest charged for the preferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of preferred loan.

The net amount of nonpreferred loan at any time during a policy year is equal to:

- the amount of nonpreferred loan in that year; less
- the loan interest charged for the nonpreferred loan in that year; plus
- the interest credited to the portion of the policy value equal to the net amount of nonpreferred loan.

As used in this section, "projected net single premium" means the present value of projected future benefits and charges for the Policy as calculated each year based on:

- interest at a rate determined by the Company for this purpose; and
- the ultimate mortality rates then being used by the Company for this Policy.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request is received at the home office; however, a loan for payment of premiums to the Company will not be deferred.

**INTEREST AND REPAYMENT**

Interest on a loan is payable annually in advance on each policy anniversary. The Maximum Policy Loan Interest Rate is shown in the Schedule. Interest not paid when due is added to the loan and bears interest at the applicable rate(s).

All or any part of a policy loan may be repaid while this Policy is in force during the Insured's lifetime; however, a loan that is in existence at the end of the grace period may not be repaid until this Policy is reinstated.

When the total loan, including interest, exceeds the cash surrender value, this Policy will terminate as provided in the Grace Period section. Notice of termination will be mailed to the Owner and to any assignee of record. Termination will be effective 31 days after the notice is mailed.

**PERSONAL INFORMATION REMOVED DUE TO HIPAA CONCERNS**

## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form satisfactory to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

(Continued)

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments (Years) | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments (Years) | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments (Years) | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | $506.17 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Age Male | Age Female | 60 | 120 | 180 | 240 | Age Male | Age Female | 60 | 120 | 180 | 240 | Age Male | Age Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| 10* | 14 | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 11 | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 12 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 13 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 14 | 18 | 2.73 | 2.73 | 2.72 | 2.72 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 15 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.44 | 6.76 | 5.90 | 5.09 |
| 16 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 17 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 18 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 19 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 20 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 21 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 22 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 23 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 24 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 25 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 and over | 85 and over | 10.39 | 8.26 | 6.47 | 5.26 |
| 26 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | | | | | | |
| 27 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 28 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 29 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 30 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 31 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 32 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 33 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 34 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

# FIVE YEAR MINIMUM PREMIUM ADJUSTABLE LIFE INSURANCE POLICY
### Adjustable Death Benefit Payable on Insured's Death
### Premiums Payable During Insured's Lifetime
### Benefits Vary with Current Cost of Insurance Rates and Current Interest Rates
### Nonparticipating - No Dividends

# Exhibit 13



**Genworth**
Financial

Genworth Life and Annuity Insurance Company
Mail Stop CSC1-110
P.O. Box 1572
Lynchburg, Virginia 24505-1572
888 325 5433
434 948 5443 (fax)

February 20, 2008

U.S. Bank NA, as Securities Intermediary
C/O Coventry First LLC
Attn: Peggy Lyon
7111 Valley Green Road
Fort Washington, PA 19034-2209

Re: Herman Cooper
Policies: M227251, M227250, M235733

Dear Mrs. Lyon:

This is to acknowledge receipt of the Proof of Loss Claimant's Statement, the certified death certificate, and the policy for the above listed policies. As we stated in our letter dated January 24, 2008, we have been put on notice of a potential claim dispute on these policies and we are conducting a review of that issue.

The claim forms are under review at this time.

Please call 888-325-5433 ext. 4959 if you have any questions.

Sincerely,
Claims Department

/btr